

LATHAM & WATKINS LLP
   David J. Schindler (Bar No. 130490)
   *david.schindler@lw.com*
   Manny A. Abascal (Bar No. 171301)
   *manny.abascal@lw.com*
   Kristen M. Tuey (Bar No. 252565)
   *kristen.tuey@lw.com*
   Brigitte E. Mills (Bar No. 281098)
   *brigitte.mills@lw.com*
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Attorneys for Plaintiff the City of Almaty

**FILED**
CLERK, U.S. DISTRICT COURT

JUNE 9 2014

**CENTRAL DISTRICT OF CALIFORNIA**
BY: _____vdr_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CITY OF ALMATY, a foreign state,

　　　　　Plaintiff,

　　　v.

VIKTOR KHRAPUNOV, an individual;
LEILA KHRAPUNOV, an individual;
ILIYAS KHRAPUNOV, an individual;
MADINA ABLYAZOVA a/k/a
MADINA KHRAPUNOVA, an
individual; ELVIRA KHRAPUNOV
a/k/a ELVIRA KUDRYASHOVA a/k/a
ELVIRA BALMADANI, an individual;
DMITRI KUDRYASHOV, an individual;
RPM USA, LLC, a New York
corporation; RPM-MARO LLC, a New
York corporation; MR. FUMIGATION
INC., a California corporation; MARO
DESIGN LLC, a California corporation;
HAUTE HUE LLC, a California
corporation; 628 HOLDINGS LLC, a
California Corporation; CANDIAN
INTERNATIONAL LTD., a British
Virgin Islands corporation; ELVIRA
KUDRYASHOVA AS TRUSTEE FOR
THE KASAN FAMILY TRUST;
DMITRI KUDRYASHOV AS
TRUSTEE FOR THE KASAN FAMILY
TRUST; and DOES 1 through 10,

　　　　　Defendants.

FMO
Case No. CV14-3650-~~CMO~~-CWx

Assigned To: Hon. Fernando M. Olguin

**FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE
RELIEF, AND OTHER
EQUITABLE RELIEF FOR:**

1) **Violations of RICO (18 U.S.C.
   §§ 1962(c), 1962(d), 1964);**
2) **Violation of and Conspiracy to
   Violate California's Unfair
   Competition Law (Cal. Bus. &
   Prof. Code §§ 17200 *et seq.*);**
3) **Breach of Fiduciary Duty;**
4) **Conversion and Conspiracy to
   Commit Conversion;**
5) **Fraud and Deceit and
   Conspiracy to Defraud; and**
6) **An Accounting, and Imposition
   of a Constructive Trust and
   Equitable Lien.**

**<u>DEMAND FOR JURY TRIAL</u>**

LATHAM&WATKINSᴸᴸᴾ  DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  Plaintiff the City of Almaty ("Almaty") hereby alleges the following claims for

2  relief against defendants Viktor Khrapunov ("Viktor"), Leila Khrapunov ("Leila"),

3  Iliyas Khrapunov ("Iliyas"), Madina Ablyazova a/k/a Madina Khrapunova

4  ("Madina"), Elvira Khrapunov a/k/a Elvira Kudryashova a/k/a Elvira Balmadani

5  ("Elvira"), Dmitri Kudryashov ("Dmitri"), RPM USA, LLC, RPM-Maro LLC, Mr.

6  Fumigation Inc., Maro Design LLC, Haute Hue LLC, 628 Holdings LLC, Candian

7  International Ltd., Elvira Kudryashova as Trustee of The Kasan Family Trust,

8  Dmitri Kudryashov as Trustee of The Kasan Family Trust, and Does 1 – 10

9  (collectively referred to as "Defendants").

10  **I.    NATURE OF THE ACTION**

11      1.     This is an action on behalf of the City of Almaty, the largest city in

12  the Republic of Kazakhstan, to recover funds that were stolen by its corrupt former

13  mayor, Viktor, and his co-conspirators, including his wife Leila, their children,

14  Iliyas and Elvira, and the children's spouses, Madina and Dmitri (collectively, the

15  "Individual Defendants"), through a scheme that involved two objectives:  (a) to

16  steal and loot money from Almaty; and (b) to transfer, launder, and hide that stolen

17  money in the United States where they believed it would be out of reach of Kazakh

18  and other governmental authorities (the "Khrapunov Racketeering Enterprise").

19      2.     From 1997 to 2004, Viktor, Leila, Iliyas, Elvira, and their co-

20  conspirators systematically stole and looted money from Almaty as a result of

21  Viktor's corrupt use of his political power.  In 2007, fearing discovery of their

22  fraud, Viktor and Leila fled to Switzerland, where Iliyas and Elvira resided at the

23  time, and attempted to launder and hide the stolen money in Switzerland.  The

24  Kazakh authorities nevertheless continued to investigate Viktor, Leila, Iliyas, and

25  Elvira, and sought the assistance of the Swiss authorities.  In May 2011, the

26  Kazakh authorities began bringing formal criminal charges against Viktor, Leila,

27  and Elvira, and in mid-2012 the Swiss authorities initiated an investigation of

28  Viktor and Leila on suspicion of money laundering.  In November 2012, the Swiss

1   authorities began freezing assets in Switzerland belonging to Viktor, Leila, Iliyas,

2   and Elvira.

3          3.      In or around 2010, understanding that they could not accomplish their

4   fraud by keeping the stolen money in Switzerland, the Individual Defendants

5   engaged in racketeering activity to launder and hide the stolen money in the United

6   States with Iliyas, Madina, Elvira, Dmitri, and various sham companies and

7   disguised entities.  Upon information and belief, the Individual Defendants

8   selected the United States as the ideal location to launder the stolen proceeds

9   because they believed it was out of reach of the Kazakh authorities.  The United

10  States does not have a mutual legal assistance treaty or extradition treaty with

11  Kazakhstan.

12         4.      The Individual Defendants engaged in racketeering activities in the

13  United States by engaging in money laundering with stolen funds in violation of 18

14  U.S.C. § 1956; transacting in property derived from unlawful activity in violation

15  of 18 U.S.C. § 1957; transporting stolen property in violation of 18 U.S.C. § 2314;

16  mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18

17  U.S.C. §1343.  They did so by acquiring property, including property in the

18  Central District of California, in the names of Iliyas, Madina, Elvira, Dmitri, and/or

19  sham companies and disguised entities in order to hide the true identity of the

20  source of the stolen funds and in order to avoid detection by Kazakh, Swiss and

21  U.S. authorities.  The activities in the United States were essential to the success of

22  the enterprise because without a perceived safe haven for the stolen funds, the

23  Individual Defendants would not have been able to complete their objective of

24  ultimately using the stolen Almaty funds for their personal benefit.

25         5.      The Individual Defendants violated United States law in order to

26  accomplish their goal of being able to secure and use their stolen and ill-gotten

27  gains.  The dual parts of the enterprise were necessarily conjoined – to steal large

28  sums of money from Almaty, and to get away with it in the United States.  The

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

2

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   Individual Defendants are trying to use the United States as a safe haven for
2   international money laundering. They are trying to do in the United States what
3   they could not do in Switzerland – keep and use money stolen and looted from
4   Almaty, and keep it out of the reach of the Kazakh authorities and the people of
5   Almaty.

6       6.      As set forth herein, Almaty seeks: (a) to hold Defendants, including
7   Viktor, Leila, Iliyas, Madina, Elvira, Dmitri, and their co-conspirators, liable for
8   their laundering and transportation of stolen funds to and within the United States;
9   (b) return of the monies stolen from Almaty and its people, or the return of
10  substitute assets acquired with funds stolen from Almaty and its people, located in
11  the United States; (c) injunctive relief to prevent Viktor, Leila, Iliyas, Madina,
12  Elvira, Dmitri, and their co-conspirators from engaging in any further laundering
13  or other transactions in the United States in violation of federal law involving the
14  proceeds of the looting scheme; (d) imposition of a constructive trust over all
15  assets located within the United States that are traceable, either directly or
16  indirectly, to Viktor and his co-conspirators' systematic looting of public assets
17  rightfully belonging to Almaty and its people and ongoing conspiracy to launder
18  and conceal stolen assets in the United States; and (e) treble and punitive damages
19  for Defendants' myriad violations of the federal anti-racketeering statute, as well
20  as state and federal common law.

21  **II.    THE PARTIES**

22      7.      Plaintiff Almaty is a foreign state pursuant to 28 U.S.C. § 1332(a)(4).
23  Until 1997, Almaty was the capital of Kazakhstan, which is a sovereign state
24  recognized by the Government of the United States of America. Almaty remains a
25  major commercial and cultural center of Kazakhstan and has the country's largest
26  population. Almaty has standing to bring this Complaint and sues: (a) in its own
27  right, as the victim of Defendants' unlawful schemes, conspiracies, and acts of
28  racketeering; and (b) in a *parens patriae* capacity as the representative of its

LATHAM&WATKINS^LLP   DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES
3
FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  people, who were victims of Defendants' conspiracies, fraudulent schemes, and

2  acts of racketeering and who are the rightful owners of funds and assets unlawfully

3  held by the Defendants in the United States.

4      8.    Defendant Viktor was the mayor of Almaty from approximately June

5  16, 1997 until approximately December 2004.  In 2004, Viktor was nominated for

6  the position of governor of the Pavlodar province in northeast Kazakhstan, a

7  position he held until 2007, at which time he was appointed Minister of Emergency

8  Measures.  In late 2007, Viktor announced his retreat from all public functions and

9  his retirement, ostensibly for health reasons.

10      9.    Upon information and belief, in or about 1998, Viktor married

11  Defendant Leila.  Viktor and Leila are citizens of the Republic of Kazakhstan and,

12  upon information and belief, currently reside in Switzerland.

13      10.    Upon information and belief, Defendants Iliyas and Elvira are the son

14  and daughter, respectively, of Leila, and step-son and step-daughter, respectively,

15  of Viktor.

16      11.    Upon information and belief, Iliyas and Madina are citizens of the

17  Republic of Kazakhstan and currently reside in Switzerland.  Upon information

18  and belief, Elvira is a citizen of the Republic of Kazakhstan and of Switzerland,

19  and currently resides in Studio City, California.  Upon information and belief,

20  Dmitri is a citizen of the Russian Federation and currently resides with Elvira in

21  Studio City, California.

22      12.    Upon information and belief, Iliyas is married to Defendant Madina,

23  while Elvira is married to Defendant Dmitri.  Upon information and belief,

24  Defendants Mr. Fumigation Inc., Maro Design LLC, Haute Hue LLC, and 628

25  Holdings LLC are corporations organized and existing under the laws of the State

26  of California.  Upon information and belief, Defendants RPM USA LLC and

27  RPM-Maro LLC are corporations organized and existing under the laws of the

28  State of New York. Upon information and belief, Defendant Candian International

LATHAM&WATKINS^LP  DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

4

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  Ltd. is an offshore corporation organized under the laws of the British Virgin

2  Islands.  Upon information and belief, Defendants Elvira Kudryashova as Trustee

3  of The Kasan Family Trust and Dmitri Kudryashov as Trustee of The Kasan

4  Family Trust have beneficial ownership and control over a property used by Iliyas

5  and/or Elvira in furtherance of the racketeering scheme described below.

6      13.    Upon information and belief, Mr. Fumigation Inc., Maro Design LLC,

7  Haute Hue LLC, 628 Holdings LLC, RPM USA LLC, RPM-Maro LLC, Candian

8  International Ltd., and The Kasan Family Trust (collectively, the "Entity

9  Defendants") all are owned or controlled by Iliyas and/or Elvira, and were misused

10 by them and the other Individual Defendants in order to carry out the racketeering

11 scheme described below.

12     14.    Almaty is ignorant of the true names of defendants Does 1 through 10

13 (the "Doe Defendants"), inclusive, and therefore sues those defendants by such

14 fictitious names.  Almaty is informed and believes, and on that basis alleges, that

15 the Doe Defendants, inclusive, are responsible for the acts alleged in this

16 Complaint.  When the true names of such fictitious defendants are ascertained,

17 Almaty will seek leave of this Court to amend this Complaint to name those

18 individuals or entities.

19     15.    Almaty is informed and believes, and thereon alleges, that the

20 Defendants, including those named as Doe Defendants, were at all times relevant

21 herein the agents, servants, and/or employees of Defendants, and each of them, and

22 in doing the things herein alleged, were acting at least in part within the course and

23 scope of their authority as such agents, servants, and/or employees of Defendants,

24 and each of them.

25 **III.    JURISDICTION AND VENUE**

26     16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331(a)

27 and 18 U.S.C. § 1964(c) over the First and Second Claims for Relief of this

28 Complaint for violation of the federal Racketeer Influenced and Corrupt

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

5

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* and for conspiracy to
2  violate RICO. The Third through Seventh Claims for Relief allege violations of
3  state law and of federal common law. This Court has pendent jurisdiction over
4  such claims pursuant to 28 U.S.C. § 1367(a) because those claims are joined with
5  substantially related claims under RICO and because those claims are so related to
6  the RICO claims in the action that they form part of the same case or controversy
7  under Article III of the United States Constitution and arise from a common
8  nucleus of operative facts.

9      17.    Venue is proper in this District and before this Court pursuant to 28
10  U.S.C. § 1391(b)(2) because events giving rise to Almaty's claims occurred in this
11  District, including, among other things, Defendants' purchase, in violation of U.S.
12  law, of real estate and other assets located in Beverly Hills and Studio City,
13  California.

14      18.    This Court has personal jurisdiction over Defendants because each of
15  them knowingly committed acts that form the basis of this Complaint in this
16  District, directed or conspired with others to commit acts in this District, and
17  purposely availed themselves of the privileges of doing business in this District, as
18  fully set forth herein.

19  **IV.    FACTUAL ALLEGATIONS**

20      **A.    Overview of the Khrapunov Racketeering Enterprise and
21             Conspiracy**

22      19.    In 1991, Kazakhstan declared its independence from the former Soviet
23  Union and initiated the process of becoming a free society. Rather than assist their
24  country in embracing this move towards freedom, Viktor and his co-conspirators
25  exploited Viktor's position of trust and authority, stole hundreds of millions of
26  dollars from the people of Almaty and tried to launder, hide and spend this money
27  in the United States.

28

1       20.    The Khrapunov Racketeering Enterprise comprised of two interrelated

2    parts. First, the Individual Defendants conspired together to have Viktor abuse his

3    position of trust as mayor of Almaty to steal from the people of Almaty various

4    state-owned assets cumulatively valued at over $300 million. Second, the

5    Individual Defendants conspired together to transport and to launder those stolen

6    assets out of Kazakhstan and to the United States, among other places, in order to

7    escape the reach of the Kazakh authorities. The transportation and laundering of

8    the stolen assets was essential to the success of the enterprise because it would

9    enable the Individual Defendants to use the assets that had been stolen for their

10    own personal benefit.

11       21.    Viktor became mayor of Almaty on or about June 16, 1997, and

12    remained in that position until approximately December 2004. Before Viktor

13    assumed the office of the mayor of Almaty, he took an oath of office to strictly

14    obey the Constitution and laws of the Republic of Kazakhstan. Among other

15    things, Viktor expressly and impliedly promised and represented that he would

16    fulfill his fiduciary duties to the people of Almaty, would honor his obligation to

17    provide honest services, and would not convert money, property, or assets

18    belonging to Almaty for his own use or that of his family, friends, or associates.

19       22.    In fact, over the span of more than six years, Viktor repeatedly and

20    systematically violated those promises and abused his position of power and

21    authority to steal millions of dollars of real property and assets from the people of

22    Almaty and to launder and conceal that money in the United States and elsewhere

23    in the hopes of escaping prosecution. Aided and abetted by his wife, children,

24    associates, accomplices, and other co-conspirators, Viktor plundered the city's

25    wealth and industry to enrich himself, his family, and his co-conspirators, at the

26    expense of Almaty and its people, and Defendants now seek to conceal and enjoy

27    their ill-gotten gains in the United States.

28

LATHAM&WATKINS<sup>LLP</sup> DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

7

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

23.     Defendants carried out the scheme through various means, including: (a) secretly acquiring property owned by Almaty through fictitious and sham entities for a fraction of what the property was worth, then selling the property for tens of millions of dollars in illicit profits; (b) acquiring property without even paying for it through sham transactions; and (c) secretly acquiring property at a discount then taking illicit government action that vastly increased the value of the property solely to benefit Viktor and his co-conspirators.

24.     As mayor, Viktor was entrusted with the right to cause state-owned real estate to be sold to private parties at auction pursuant to established legal procedures, the right to cause privately-owned real estate to be taken for purported state use, and the right to control who could do business in Almaty through the granting of licenses, concessions, and permits.

25.     In his capacity as mayor of Almaty, Viktor caused certain state-owned real estate parcels to be put up for auction.  However, in violation of Kazakh law, and in violation of his duties to the people of Almaty, Viktor, aided and abetted by others involved in the Khrapunov Racketeering Enterprise, corrupted those auctions by: (a) improperly influencing and directing the actions of the individuals responsible for administering the auctions; and (b) improperly causing confidential bid information to be disclosed to entities controlled by his co-conspirator Leila to allow these entities to adjust their bids.

26.     Through these corrupt activities, Viktor and Leila succeeded in purchasing real estate and other assets put up for auction by Almaty, often at artificially suppressed prices.  In some instances, Viktor thereafter caused development permits to be issued in connection with the purchased sites, vastly increasing the market value of the real estate, which Viktor, Leila, and/or their co-conspirators then re-sold at a significant profit.  In other instances, entities controlled by Leila simply ignored restrictions placed on parcels sold at auction in order to resell the parcels at a significant profit.  In addition, in some instances,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

8

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    entities controlled directly or indirectly by Viktor and Leila simply failed to pay for
2    the assets they acquired and subsequently re-sold.

3         27.    Viktor thus conspired with the other Individual Defendants to use his
4    position of power and authority to convert and cause to be converted, to his use
5    and that of his family, friends and associates, money, funds and property rightfully
6    belonging to Almaty and its people.

7         28.    After wrongfully appropriating assets belonging to Almaty and its
8    people, Viktor, Leila, Elvira, and Iliyas, along with their families, friends,
9    associates, and accomplices in the Khrapunov Racketeering Enterprise, devised
10   and executed schemes to systematically and secretly transfer their ill-gotten gains
11   out of Kazakhstan in an effort to escape the reach of the Kazakh authorities.  To
12   that end, the Individual Defendants ultimately transferred millions of dollars of
13   stolen funds into the United States in violation of U.S. law through accounts, sham
14   companies, and disguised entities owned or ultimately controlled by Elvira, Dmitri,
15   Iliyas, and/or Madina.

16        29.    The Individual Defendants first transferred the stolen funds to
17   Switzerland, where Iliyas and Elvira were residing, using accounts and sham
18   entities owned or ultimately controlled by Leila, Iliyas, Elvira, and/or their co-
19   conspirators.  Leila, Iliyas, and Elvira received in Switzerland hundreds of millions
20   of dollars transferred out of Kazakhstan by Viktor and Leila and laundered through
21   various offshore holding companies to appear legitimate.

22        30.    Shortly thereafter, Leila, Iliyas, and Elvira began transferring portions
23   of the ill-gotten proceeds out of Switzerland.  They again laundered stolen funds
24   through various offshore holding companies, and ultimately transferred those
25   stolen funds into the United States in violation of U.S. law via accounts and
26   entities owned or ultimately controlled by Elvira, Dmitri, Iliyas, and/or Madina.
27   Iliyas, Madina, Elvira, and Dmitri conspired with the other Individual Defendants
28   to use the stolen funds they brought to the United States to purchase real estate and

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES
DC\3254955.7
9
FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    assets in California and New York, and to fund U.S. holding companies owned or
2    controlled by Leila, Iliyas, Madina, Elvira, and/or Dmitri.  Upon information and
3    belief, the Individual Defendants increased their efforts to transfer stolen funds to
4    the United States following the Swiss authorities' investigation of Viktor and Leila
5    in 2012, which led to the Swiss authorities freezing Swiss bank accounts held by
6    the Individual Defendants.

7        31.    Viktor and Leila took numerous steps to conceal their looting for
8    years from Almaty and the Kazakh authorities.  Among other things, Viktor and
9    Leila each filed false annual tax returns with the Tax Committee of the Ministry of
10   Finance of Kazakhstan, Kazakhstan's taxation authority, which concealed the
11   millions of dollars in monies, properties, and assets acquired through the
12   Khrapunov Racketeering Enterprise. According to their 2007 tax returns, which
13   required Viktor and Leila to list their entire net worth accumulated through all
14   sources as of December 31, 2007, Viktor and Leila reported a combined net worth
15   of approximately \$113,298 (13,671,665 ₸), in addition to three vehicles, five
16   modest pieces of real estate, and two parking stalls.

17       32.    Despite claiming to have a total net worth of less than \$120,000, by
18   systematically looting and plundering assets belonging to the people of Almaty,
19   Viktor and Leila amassed a fortune that reportedly exceeds \$300 million.  Indeed,
20   according to public news reports, in 2009 Viktor was one of the richest people in
21   Switzerland with a fortune of over \$300 million.  Similarly, in 2012 Viktor was
22   among Switzerland's 300 richest people with a fortune of approximately \$324 –
23   \$432 million (300 – 400 million Swiss francs).

24   **B.    Pending Investigations:  The Kazakh and Swiss Authorities Are**
25   **Proceeding Against the Individual Defendants for Crimes**
26   **Committed in Those Countries**

27       33.    In approximately late 2007, Viktor became aware that the Kazakh
28   government had begun investigating him and his family, friends, and associates for

1    criminal violations.  On or about November 9, 2007, Viktor and Leila fled

2    Kazakhstan via private jet to Switzerland, where Iliyas and Elvira resided at the

3    time.

4          34.    On or about May 27, 2011, the Investigation Department of the

5    Agency for Economic and Corruption-Related Crimes of Kazakhstan (the

6    "Financial Police") filed two criminal cases against Viktor on suspicion of abuse of

7    power and fraudulent acts.  On or about July 21, 2011, the Financial Police

8    obtained a court-ordered arrest warrant for Viktor.  In 2011 and 2012, additional

9    charges were brought in Kazakhstan against Viktor, Leila, Iliyas, and Elvira

10   stemming from the theft of public property and the ultimate laundering of funds.

11         35.    On or about February 20, 2012 and September 14, 2012, the Financial

12   Police applied to the Federal Office of Justice in Switzerland for legal assistance in

13   connection with the effort to prosecute Viktor, Leila, Iliyas, and Elvira for their

14   crimes in Switzerland and Kazakhstan against Almaty and its people.  In or about

15   mid-2012, the Public Prosecutor of Geneva opened an investigation into Viktor,

16   Leila, Iliyas, and Elvira on suspicion of money laundering in violation of Swiss

17   law.  In or about November 2012, the Public Prosecutor of Geneva ordered Swiss

18   accounts and assets belonging to Viktor, Leila, Iliyas, and Elvira frozen, including

19   accounts held at Swiss banks Sarasin & Co. Ltd., Credit Suisse, and Schroeder &

20   Co.  The investigation by the Swiss authorities is ongoing.

21         36.    There currently are 24 criminal cases pending against Viktor in

22   Kazakhstan for embezzlement, fraud, money laundering, establishing and directing

23   an organized criminal group for criminal purposes, abuse of power, and bribery.

24   There currently are five criminal cases pending against Leila in Kazakhstan for

25   money laundering and establishing and directing an organized criminal group for

26   criminal purposes.  There also currently is a criminal case pending against Elvira in

27   Kazakhstan for money laundering.

28

**C.     The Theft of Property:  The Individual Defendants Unlawfully Converted Almaty Property and Ultimately Sold it to Third Parties at Enormous Profit**

37.     Over the life of the Khrapunov Racketeering Enterprise, the Defendants carried out multiple acts all directed at the same goal: to convert property rightfully belonging to the people of Almaty, sell it for a profit, then launder the proceeds to conceal their origin and convey the proceeds out of Kazakhstan in order to escape the reach of the Kazakh authorities and thereby get away with their crimes.  As a result, Viktor, Leila, Iliyas, Elvira and their co-conspirators looted Almaty of hundreds of millions of dollars and transported millions in stolen funds into and within the United States in violation of U.S. law.

38.     Four examples of Defendants' illegal acquisition of property belonging to Almaty and its people are set forth below.  Through the four transactions detailed below, Viktor, Leila, Iliyas, Elvira, their family and their co-conspirators generated approximately $28.57 million in illicit profits resulting from the illegal conversion and re-sale of four pieces of property.  In total, the Khrapunov Racketeering Enterprise is believed to have illegally acquired over 80 pieces of real estate, valued at approximately $300 million, from Almaty and its people.  They now seek to further their wrongdoing by hiding stolen funds in the United States.

**Real Estate 1**

39.     In or about 2000, Viktor abused his position as Mayor of Almaty to cause a large tract of state-owned land near two rivers in Almaty ("Real Estate 1") to be transferred to Leila for a total price of approximately $121,000.  The transfer was accomplished via a series of fraudulent transactions and front companies controlled by Leila and Iliyas.  Through several more transfers designed to conceal the illegal conduct, Leila and Iliyas ultimately sold Real Estate 1 for a total of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

12

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    $15.57 million, yielding more than $15 million in illicit profit as a result of this

2    single transaction.

3        40.    Viktor's transfer of Real Estate 1 violated the Land Code of the

4    Republic of Kazakhstan, which requires that public property be sold via auction, as

5    well as the Water Code, which mandates that land in water conservation zones may

6    only be provided to private individuals and entities for temporary use.

7        41.    To carry out the illegal conversion of Real Estate 1, Viktor, Leila, and

8    Iliyas utilized at least six Kazakhstan entities controlled by Leila and Iliyas,

9    including: (a) Almaty-Demalys; (b) Viled Establishment; (c) KazRealIncom LLP

10    ("KRI"); (d) Karasha Plus LLP ("Karasha"); (e) Building Services Company

11    ("BSC"); and (f) Asia Holding Development LLP ("Asia Holding").  Through a

12    series of transfers and sales engineered by Viktor, Leila, and Iliyas, Real Estate 1

13    was first transferred to Almaty-Demalys, which in turn ultimately was transferred

14    to Viled.

15        42.    On or about August 25, 2003, Leila caused Viled to sell Almaty-

16    Demalys to KRI for approximately $121,000 (18,800,000 ₸).  Less than six

17    months later, Leila caused KRI to sell Almaty-Demalys to Karasha for the same

18    amount.  Next, Leila caused Karasha to transfer ownership of Real Estate 1 directly

19    to her.  As a result of this series of transfers, Leila obtained full ownership of Real

20    Estate 1.

21        43.    On or about October 6, 2003, Leila contributed a portion of Real

22    Estate 1 to BSC, which she then sold to an unrelated third party in a transaction

23    that valued that portion of Real Estate 1 at approximately $8 million

24    (1,179,999,980 ₸).  Leila caused the remaining portion of Real Estate 1 to be

25    conveyed directly to Iliyas.  Iliyas, in turn, contributed it to Asia Holding, and then

26    sold Asia Holding to a separate unrelated third party for approximately $7.57

27    million.  Of the $7.57 million, Iliyas transferred approximately $2.21 million to

28

LATHAM&WATKINS℠  DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

13

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   Elvira's Swiss bank accounts, including accounts at Sarasin & Co. Ltd., Credit
2   Suisse, and Schroeder & Co., and retained the remainder for himself.

3       44.   Thus, Leila paid approximately $121,000 for Real Estate 1, which she
4   and Iliyas later re-sold for a total of $15.57 million.

5   **Real Estate 2**

6       45.   On or about April 16, 2001, Viktor used his position as mayor to
7   cause a public building in Almaty to be sold to Leila's company, KRI, for
8   approximately $347,000 (52,155,100 ₸). Viktor did so by manipulating a public
9   auction to ensure that KRI won the auction.

10      46.   Under the laws of Kazakhstan, potential buyers of state-owned
11  property are obligated to state how they intend to invest in and develop the
12  property. In an attempt to make KRI's bid appear legitimate, during the bidding
13  process Leila caused KRI to fraudulently represent that KRI would invest a
14  significant amount in Real Estate 2 to build a health center for the benefit of the
15  people of Almaty. That representation was false at the time it was made and, in
16  fact, KRI never intended to and never did build any such health center. Instead, on
17  or about October 1, 2003, Leila caused KRI to sell Real Estate 2 to Karasha and,
18  two days later, Leila caused Karasha to sell Real Estate 2 directly to her. Shortly
19  thereafter, Leila contributed Real Estate 2 to BSC, which she then sold to an
20  unrelated third party in a transaction that valued Real Estate 2 at approximately
21  $4.1 million (611,445,206 ₸). Leila and Viktor thus obtained illegal profit of over
22  $3.7 million as a result of their illicit acquisition and re-sale of Real Estate 2.

23  **Real Estate 3**

24      47.   In addition to manufacturing the sale of state-owned assets to Leila
25  and other family members and co-conspirators, Viktor also abused his authority as
26  mayor to seize privately-owned land and transfer it to Leila and others for re-sale.

27      48.   On or about August 25, 2003, Viktor caused Almaty to seize land
28  owned by privately-owned third party Shadid Engineering LLP ("Real Estate 3").

LATHAM&WATKINSᴸᴸᴾ   DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

14

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   Approximately one month later, Viktor caused Real Estate 3 to be sold to Leila's
2   company Karasha for approximately $105,000 (15,600,000 ₸). Leila then caused
3   Karasha to sell Real Estate 3 directly to her. Leila next contributed Real Estate 3
4   to BSC, and sold BSC to an unrelated third party in a transaction that valued Real
5   Estate 3 at approximately $2 million. As a result, Leila obtained nearly $1.9
6   million in illicit profit at the expense of Almaty and its people.

7   **Real Estate 4**

8         49.   In or about November 2004, Viktor caused Almaty to sell land ("Real
9   Estate 4") to two additional Kazakhstan companies owned and controlled by Leila,
10  Victoriya-KMK LLP and Ademytau-KMK LLP. Real Estate 4 was located in a
11  water conservation zone and, therefore, under Kazakh law, could be provided to
12  private persons or entities only for temporary use. Nevertheless, in violation of the
13  law and his obligations as mayor of Almaty, Viktor caused Real Estate 4 to be sold
14  to Leila's companies for approximately $1.3 million (18,870,100 ₸). On or about
15  December 23, 2005 and January 25, 2006, Leila sold Real Estate 4 to an unrelated
16  third party for approximately $8.6 million (1,223,950,000 ₸) – resulting in illicit
17  profit to Leila and Viktor of approximately $7.3 million.

18        50.   Together, the illegal conversion of Real Estate 1-4, and ultimate sale
19  of those properties to unrelated third parties, resulted in profit to Viktor, Leila,
20  Iliyas, Elvira, their family members and their co-conspirators of over $28.57
21  million. These are merely four examples of Viktor and his family and co-
22  conspirators' wrongdoing. In total, approximately 80 parcels of real estate
23  rightfully belonging to Almaty and its people were illegally alienated by the
24  Individual Defendants for their own personal gain. On information and belief, the
25  Individual Defendants profited by over $300 million from these illegal
26  transactions, all at the expense of the people of Almaty, and now are seeking to use
27  the United States as a haven in which to enjoy their ill-gotten gains.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

15

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

**D.**   **The Laundering of Stolen Funds:  The Individual Defendants Laundered Illegally Obtained Funds in Switzerland and the United States**

51.   The Individual Defendants laundered the proceeds of their crimes in Switzerland and the United States in order to hide the assets from authorities and reap the rewards of their wrongdoing.  Once the Swiss authorities began to investigate the Individual Defendants and to freeze their assets, the Individual Defendants increased their illegal laundering activities in the United States to further conceal the proceeds.  Upon information and belief, the Individual Defendants selected the United States as one jurisdiction in which to hide the stolen funds because they felt they would be immune from redress for their crimes here.  The United States does not have a mutual legal assistance treaty or extradition treaty with Kazakhstan.

52.   The Individual Defendants used numerous holding companies in order to hide and to launder the illicit funds they siphoned out of Kazakhstan through Switzerland and ultimately into and within the United States and other countries.  These holding companies included at least two Swiss companies owned and controlled by Iliyas and Elvira, SDG Capital SA ("SDG") and Swiss Promotion Group SA ("SPG").  In total, Iliyas, Elvira, and Leila have transferred at least $125 million into these two Swiss companies alone.

53.   Between 2008 and 2012, Iliyas, Elvira, Leila, and sham companies they control have injected over $115 million into SDG.  SDG was formed in or about July 2008 and, until approximately May 2009, was owned and controlled by Harlem Securities, a British Virgin Islands corporation that was, in turn, owned by Iliyas.  In or about May 2009, Elvira purchased SDG from Harlem Securities for approximately $99,000.  Following that purchase, Iliyas continued to exert full control over SDG Capital.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

16

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    54.    Iliyas, Elvira, Leila, and sham companies they control also have

2    contributed substantial assets, believed to be in excess of $10 million, to SPG.

3    Iliyas is the ultimate beneficial owner of SPG via a variety of offshore holding

4    companies.

5    55.    All of the funds contributed to SDG, SPG, and other front companies

6    controlled by Iliyas, Elvira, and Leila represent the ill-gotten proceeds of Viktor

7    and his family and co-conspirators' looting of real estate and other assets rightfully

8    belonging to Almaty and its people.

9    56.    In or about December 2010, Elvira and Dmitri used funds illegally

10   obtained through the Khrapunov Racketeering Enterprise's criminal activity in

11   Kazakhstan to purchase a luxurious single-family home located at 2578 Hutton

12   Drive in Beverly Hills, California, for approximately $3.65 million.  In doing so,

13   Elvira and Dmitri violated, among other U.S. laws, 18 U.S.C. §§ 1956 (money

14   laundering and conspiracy to commit money laundering), 1957 (transactions in

15   property derived from unlawful activity), 2314 (transport of stolen money), 1341

16   (mail fraud), and 1343 (wire fraud).  Elvira and Dmitri acted with the agreement

17   and knowledge of Viktor, Leila, Iliyas, and Madina, and as a result, all Individual

18   Defendants also violated 18 U.S.C. § 371 (conspiracy).

19   57.    In March 2012, Iliyas and Madina, also using ill-gotten proceeds of

20   the looting scheme, purchased a lavish single-family home located at 606 North

21   Alta Drive in Beverly Hills, California, for approximately $5.45 million.  Iliyas

22   and Madina attempted to conceal the source of the stolen funds used to make this

23   purchase by using Defendant Candian International Ltd. to complete the purchase.

24   Iliyas and Madina thus violated, among other U.S. laws, 18 U.S.C. §§ 1956, 1957,

25   2314, 1341, and 1343.  Iliyas and Madina acted with the agreement and knowledge

26   of Viktor, Leila, Elvira, and Dmitri, and as a result, all Individual Defendants also

27   violated 18 U.S.C. § 371.

28

58.     In or about mid-2012, the Public Prosecutor of Geneva opened an investigation into Viktor, Leila, Iliyas, and Elvira on suspicion of money laundering in violation of Swiss law.  In or about November 2012, the Public Prosecutor of Geneva ordered frozen certain Swiss accounts and assets belonging to Viktor, Leila, Iliyas, and Elvira.  After this action by Swiss government authorities, the Individual Defendants continued and increased their laundering activities in the United States.

59.     In January 2013, Iliyas and Madina purchased a second mansion in Beverly Hills using illicit funds stolen from Almaty.  With Elvira's assistance, Iliyas and Madina used another front company, Defendant 628 Holdings LLC, to launder and conceal the source of the illicit funds.  Iliyas and Madina caused 628 Holdings LLC to purchase for $6.2 million a five-bedroom single-family home located at 628 North Alta Drive in Beverly Hills, California for the benefit and use of Iliyas and Madina.  Elvira is listed in public records as an officer of Defendant 628 Holdings LLC.  Iliyas, Madina, and Elvira thus violated, among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  Iliyas, Madina, and Elvira acted with the agreement and knowledge of Viktor, Leila, and Dmitri, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

60.     In or about July 2013, Elvira and Dmitri sold the house at 2578 Hutton Drive for approximately $4.97 million and purchased an expansive, two-acre estate located at 11986 Lockridge Road in Studio City, California for approximately $5.7 million, again using funds stolen from Almaty.  Shortly thereafter, in a further attempt to conceal their possession and use of those funds, Elvira and Dmitri transferred that Studio City estate to The Kasan Family Trust, a trust for which they serve as trustees.  Elvira and Dmitri thus violated, among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  Elvira and Dmitri acted with the agreement and knowledge of Viktor, Leila, Iliyas, and Madina, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

18

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

61.     In or about September 2013, Iliyas and Madina sold the house at 606 North Alta Drive for approximately $6.975 million.

62.     The Individual Defendants' luxurious lifestyles in the United States were not limited to the purchase of Beverly Hills and Studio City mansions.  In or about April 2013, Elvira leased a 2013 Rolls Royce sedan valued at approximately $302,000.  In addition to the Rolls Royce, Elvira leased a 2013 Bentley sedan valued at approximately $320,000.  Elvira is the registered owner of a 2013 Mercedes Benz sport utility vehicle valued at approximately $114,000 and a 2011 Cadillac sport utility vehicle valued at approximately $75,000.  Elvira used funds stolen from Almaty to acquire these vehicles, again in violation of, among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  In doing so, Elvira acted with the agreement and knowledge of Viktor, Leila, Dmitri, Iliyas, and Madina, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

63.     Elvira, Dmitri, Iliyas, and Madina further have attempted to launder funds obtained from the plundering of Almaty by making investments in multiple U.S. companies, including Defendants Mr. Fumigation Inc., Maro Design LLC, Haute Hue LLC, RPM USA LLC, and RPM-Maro LLC.  Elvira, Dmitri, Iliyas, and/or Madina own or control all of the Entity Defendants and, on information and belief, all of the monies used to fund investments in the Entity Defendants are derived from the looting of Almaty.  Therefore, Elvira, Dmitri, Iliyas, and Madina again acted in violation of 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  They at all times acted with the agreement and knowledge of Viktor and Leila, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

64.     Further, Iliyas and Elvira have caused SDG and SPG to move stolen assets into the United States by, among other things, using a chain of Luxembourg and Delaware entities to invest in real estate in New York.  Defendant RPM USA LLC, which is owned or controlled by Iliyas, is a wholly owned subsidiary of SPG and has invested approximately $6 million in a New York-based medical device

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

19

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  company.  Additionally, RPM USA and Defendant Maro Design LLC, which is

2  owned or controlled by Elvira, own 49% and 51%, respectively, of Defendant

3  RPM-Maro LLC.

4      65.    Upon information and belief, in 2013, Iliyas invested approximately

5  $67.5 million stolen from the people of Almaty to purchase a luxury hotel in New

6  York.  In order to conceal the source of the funds used to make this investment,

7  Iliyas used a series of holding companies ultimately owned by SDG and controlled

8  by him.  The hotel currently is in the process of being converted into

9  condominiums.

10      66.    By this lawsuit, Almaty seeks to hold Defendants responsible for their

11  illegal conduct in the United States in violation of U.S. law.

12  **FIRST CLAIM FOR RELIEF**

13  (For Violations of RICO, 18 U.S.C. §§ 1962(c), 1962(d), 1964(c), against all

14  Defendants)

15      67.    Almaty hereby incorporates by reference the allegations in paragraphs

16  1 through 66, as though fully set forth herein.

17      68.    From in or about 1997 and continuing to the present, by reason of its

18  organization, structure, and activities, the Khrapunov Racketeering Enterprise

19  constituted a RICO enterprise within the meaning of 18 U.S.C. § 1961(4).  The

20  Khrapunov Racketeering Enterprise was comprised of myriad individuals and

21  entities, all associated in fact as part of the Khrapunov Racketeering Enterprise,

22  including but not limited to the Individual Defendants and Entity Defendants

23  named herein.  The Khrapunov Racketeering Enterprise was engaged in, and the

24  activities of the Khrapunov Racketeering Enterprise affected, interstate and foreign

25  commerce.

26      69.    As alleged herein, the Khrapunov Racketeering Enterprise

27  participants, including Defendants and each of them, engaged and conspired to

28

LATHAM&WATKINSLLP DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

20

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  engage in acts in the United States to further the goals of their criminal enterprise,
2  in violation of U.S. law.

3      70.    Defendants engaged and conspired to engage in money laundering in
4  violation of 18 U.S.C. § 1956 by conducting numerous financial transactions using
5  illegally obtained funds to, among other things, purchase real estate and other
6  assets in Beverly Hills, Studio City, and elsewhere and to fund business entities,
7  including the Entity Defendants, knowing that such funds were stolen from the
8  people of Almaty, with the goal of concealing the source of those funds.

9      71.    Defendants further engaged and conspired to engage in money
10  laundering in violation of 18 U.S.C. § 1956 by transporting, transmitting, and/or
11  transferring funds stolen from the people of Almaty into and within the United
12  States in order to, among other things, purchase real estate and assets in Beverly
13  Hills, Studio City, and elsewhere and to fund business entities, including the Entity
14  Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that
15  such funds were stolen from the people of Almaty, with the goal of concealing the
16  source of those funds.

17      72.    Defendants further engaged and conspired to engage in money
18  laundering in violation of 18 U.S.C. § 1956 by conducting financial transactions
19  using those stolen funds by, among other things, using stolen funds to purchase
20  real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund
21  business entities, including the Entity Defendants, with the intent to further the
22  Khrapunov Racketeering Scheme and to conceal the source of those funds.

23      73.    Defendants engaged and conspired to engage in money transactions in
24  property derived from specified unlawful activity in violation of 18 U.S.C. § 1957
25  by, among other things, knowingly transferring funds in excess of $10,000 stolen
26  from Almaty into and within the United States to purchase real estate and other
27  assets in Beverly Hills, Studio City, and elsewhere and to fund business entities,

28

1  including the Entity Defendants, knowing that such funds were stolen from the

2  people of Almaty.

3     74.   Defendants engaged and conspired to engage in the foreign transport

4  of stolen money or property known to be stolen, converted or taken by fraud in

5  violation of 18 U.S.C. § 2314 by transferring funds into and within the United

6  States, in excess of $5,000, knowing those funds to have been stolen from the

7  people of Almaty and/or obtained from the people of Almaty by means of false or

8  fraudulent pretenses, representations, or promises by, among other things,

9  transferring such funds from bank accounts in Switzerland into the United States

10  and using those funds to purchase real estate and other assets in Beverly Hills,

11  Studio City, and elsewhere and to fund business entities, including the Entity

12  Defendants.

13     75.   Defendants, and each of them, conspired to commit the violations of

14  U.S. law described herein, and one or more of the Defendants acted to violate such

15  laws.  Defendants, and each of them, thus also violated 18 U.S.C. § 371.

16     76.   Defendants engaged and conspired to engage in mail fraud in

17  violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by

18  knowingly using the mails and wires to transfer illegally obtained funds into and

19  within the United States, for the purpose of furthering the Khrapunov Racketeering

20  Scheme and, while concealing the funds' illegal source, used those funds to

21  purchase real estate in Beverly Hills and Studio City, California and to fund

22  business entities, including the Entity Defendants, to enable those entities to

23  conduct business in the United States using the illegally-obtained funds.

24     77.   Defendants engaged and conspired to engage in the above violations

25  of U.S. law in order to implement the objectives and accomplish the unlawful

26  purposes of the Khrapunov Racketeering Enterprise as set forth herein, and thereby

27  engaged in predicate acts of racketeering within the meaning of 18 U.S.C. §

28  1961(1)(B).

78.     Each of the Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the Khrapunov Racketeering Enterprise through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. § 1962(c), consisting as applicable of multiple acts of money laundering, conducting money transactions in property derived from specified unlawful activity,  foreign transport of stolen money or property known to be stolen, converted or taken by fraud, mail fraud, and/or wire fraud, as specified herein.  Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO (*i.e.*, October 15, 1970).

79.     From in or about 1997, and continuing to the present, Defendants associated together, with one another and with others, and acted in concert for the common and unlawful purposes of the Khrapunov Racketeering Enterprise and in order to implement the schemes and employ the devices described herein.

80.     In so doing, Defendants unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other and with others to commit RICO violations under 18 U.S.C. § 1962(c) and, thereby, violated 18 U.S.C. § 1962(d).  In furtherance of the conspiracy and to effect the objects thereof, Defendants committed in the Central District of California and elsewhere the overt acts as described herein, among others.

81.     As a direct and proximate result of RICO violations by the Defendants of 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and/or 1962(d), Almaty has suffered damages in an amount to be determined at trial and presently estimated to be not less than $300 million.  Almaty has been injured in its business or property by reason of each such Defendant's violations and, pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), is thereby entitled to recover threefold the damages it has suffered, together with its costs of suit and reasonable attorneys' fees.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

23

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

**SECOND CLAIM FOR RELIEF**

(For Violations of RICO, 18 U.S.C. §§ 1962(a), 1962(d), 1964(c), against all

Defendants)

82.    Almaty hereby incorporates by reference the allegations in paragraphs 1 through 81, as though fully set forth herein.

83.    From in or about 1997 and continuing to the present, by reason of its organization, structure, and activities, the Khrapunov Racketeering Enterprise constituted a RICO enterprise within the meaning of 18 U.S.C. § 1961(4). The Khrapunov Racketeering Enterprise was comprised of myriad individuals and entities, all associated in fact as part of the Khrapunov Racketeering Enterprise, including but not limited to the Individual Defendants and Entity Defendants named herein. The Khrapunov Racketeering Enterprise was engaged in, and the activities of the Khrapunov Racketeering Enterprise affected, interstate and foreign commerce.

84.    Each of the Defendants was at the center of and was a principal perpetrator of a fraudulent scheme and is liable under 18 U.S.C. § 1962(a) as a direct and indirect beneficiary of the pattern of racketeering herein alleged.

85.    As alleged herein, the Khrapunov Racketeering Enterprise participants, including Defendants and each of them, engaged and conspired to engage in acts in the United States to further the goals of their criminal enterprise, in violation of U.S. law.

86.    Defendants engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by conducting numerous financial transactions using illegally obtained funds to, among other things, purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, knowing that such funds were stolen from the people of Almaty, with the goal of concealing the fact source of those funds.

87.     Defendants further engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by transporting, transmitting, and/or transferring funds stolen from the people of Almaty into and within the United States in order to, among other things, purchase real estate and assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that such funds were stolen from the people of Almaty, with the goal of concealing the source of those funds.

88.     Defendants further engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by conducting financial transactions using those stolen funds by, among other things, using stolen funds to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, with the intent to further the Khrapunov Racketeering Scheme and to conceal the source of those funds.

89.     Defendants engaged and conspired to engage in money transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 by, among other things, knowingly transferring funds in excess of $10,000 stolen from Almaty into and within the United States to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, knowing that such funds were stolen from the people of Almaty.

90.     Defendants engaged and conspired to engage in the foreign transport of stolen money or property known to be stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314 by transferring funds into and within the United States, in excess of $5,000, knowing those funds to have been stolen from the people of Almaty and/or obtained from the people of Almaty by means of false or fraudulent pretenses, representations, or promises by, among other things, transferring such funds from bank accounts in Switzerland into the United States

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

25

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   and using those funds to purchase real estate and other assets in Beverly Hills,

2   Studio City, and elsewhere and to fund business entities, including the Entity

3   Defendants.

4       91.   Defendants, and each of them, conspired to commit the violations of

5   U.S. law described herein, and one or more of the Defendants acted to violate such

6   laws.  Defendants, and each of them, thus also violated 18 U.S.C. § 371.

7       92.   Defendants engaged and conspired to engage in mail fraud in

8   violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by

9   knowingly using the mails and wires to transfer illegally obtained funds into and

10  within the United States, for the purpose of furthering the Khrapunov Racketeering

11  Scheme and, while concealing the funds' illegal source, used those funds to

12  purchase real estate in Beverly Hills and Studio City, California and to fund

13  business entities, including the Entity Defendants, to enable those entities to

14  conduct business in the United States using the illegally-obtained funds.

15      93.   Defendants engaged and conspired to engage in the above violations

16  of U.S. law in order to implement the objectives and accomplish the unlawful

17  purposes of the Khrapunov Racketeering Enterprise as set forth herein, and thereby

18  engaged in predicate acts of racketeering within the meaning of 18 U.S.C. §

19  1961(1)(B).

20      94.   Furthermore, each Defendant received income derived directly or

21  indirectly from a pattern of racketeering in which each of said Defendants

22  participated as a principal within the meaning of 18 U.S.C. § 2.

23      95.   During the period commencing in or about 1997 and continuing to the

24  present, the Defendants, having received income derived, directly or indirectly,

25  from a pattern of racketeering activity, used or invested, directly or indirectly, in

26  violation of 18 U.S.C. § 1962(a), income or the proceeds of income from said

27  illegal racketeering activity in the acquisition of an interest in, or the establishment

28  or operation of the Khrapunov Racketeering Enterprise or one or more affiliated

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

26

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   entities, including without limitation, the Entity Defendants. Said uses and

2   investments in enterprises affecting interstate or foreign commerce include without

3   limitation the uses and investments described herein.

4        96.    In so doing, Defendants unlawfully, willfully and knowingly did

5   combine, conspire, confederate, and agree together, with each other and with

6   others to commit RICO violations under 18 U.S.C. § 1962(c) and, thereby, violated

7   18 U.S.C. § 1962(d). In furtherance of the conspiracy and to effect the objects

8   thereof, Defendants committed in the Central District of California and elsewhere

9   the overt acts as described herein, among others.

10       97.    As a direct and proximate result of RICO violations by the Defendants

11  of 18 U.S.C. § 1962(a) and/or 18 U.S.C. § 1962(d), Almaty has suffered damages

12  in an amount to be determined at trial and presently estimated to be not less than

13  $300 million. Almaty has been injured in its business or property by reason of

14  each such Defendant's violations in that financial assets stolen or otherwise

15  diverted from and thereby lost to Almaty have been used and invested, directly or

16  indirectly, to acquire an interest in and to establish and operate numerous

17  enterprises affecting interstate or foreign commerce without benefit to Almaty or

18  its people. Accordingly, pursuant to the civil remedy provisions of 18 U.S.C. §

19  1964(c), Almaty is entitled to recover threefold the damages it has suffered,

20  together with its costs of suit and reasonable attorneys' fees.

21                        **THIRD CLAIM FOR RELIEF**

22   (For Violation of and Conspiracy to Violate California's Unfair Competition Law,

23            Cal. Bus. & Prof. Code §§ 17200 *et seq.*, against all Defendants)

24       98.    Almaty hereby incorporates by reference the allegations in paragraphs

25  1 through 97, as though fully set forth herein.

26       99.    As alleged herein, the Khrapunov Racketeering Enterprise

27  participants, including Defendants and each of them, engaged in acts indictable

28  under federal law, including mail fraud in violation of 18 U.S.C. § 1341, wire fraud

LATHAM&WATKINS LLP   DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES
27
FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   in violation of 18 U.S.C. § 1343, money laundering in violation of 18 U.S.C. §
2   1956, conducting money transactions in property derived from specified unlawful
3   activity in violation of 18 U.S.C. § 1957, and/or the foreign transport of stolen
4   money or property known to be stolen, converted or taken by fraud in violation of
5   18 U.S.C. § 2314, in order to implement the objectives and accomplish the
6   unlawful purposes of the Khrapunov Racketeering Enterprise as set forth herein.

7        100.   In addition, as set forth above, Defendants failed to disclose and
8   otherwise concealed from Almaty and others facts the disclosure of which was
9   necessary to make the representations made by them to Almaty not materially
10  misleading.  Defendants knew that said facts were not being disclosed and were
11  material, and they intended by concealment of these facts to facilitate continuation
12  of their unlawful diversion of assets belonging to Almaty and its people.  Almaty
13  relied to its detriment on the representations of integrity by Defendants.
14  Defendants flagrantly breached the trust and confidence of Almaty by committing
15  numerous acts of fraud, deceit, conversion, and racketeering alleged herein,
16  through which they plundered the assets of Almaty.

17       101.   As a result, Defendants, and each of them, have acted unlawfully,
18  fraudulently, and/or unfairly within the meaning of California Business and
19  Professions Code §§ 17200 *et seq.* as alleged herein.

20       102.   As a direct and proximate result of violations by the Defendants of
21  California Business and Professions Code §§ 17200 *et seq.*, Almaty has suffered
22  damages in an amount to be determined at trial and presently estimated to be not
23  less than $300 million and is entitled to restitution and injunctive relief.

24                    **FOURTH CLAIM FOR RELIEF**

25               (For Breach of Fiduciary Duty against Viktor)

26       103.   Almaty hereby incorporates by reference the allegations in paragraphs
27  1 through 102, as though fully set forth herein.

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

28

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

104.   As alleged above, Viktor owed a fiduciary duty to Almaty and its people to hold and control the assets of the Almaty government for the benefit of Almaty and its people, and not for his personal benefit or the personal benefit of his relatives, associates, and accomplices.

105.   By engaging in the acts alleged above, Viktor breached his fiduciary duty to Almaty and its people.  As a direct and proximate result of such breaches, Almaty has suffered damages in an amount to be determined at trial and presently estimated to be not less than $300 million.

106.   In committing the acts and perpetrating the schemes alleged herein, Viktor intended to injure Almaty and acted with malice and oppression and with a willful and conscious disregard for the rights of Almaty and its people.  In so doing, Viktor has acted toward Almaty and its people in such manner as to warrant disgorgement of his uses and investments of Almaty's money and property together with an award of punitive and exemplary damages in an amount no less than $300 million.

## FIFTH CLAIM FOR RELIEF

(For Conversion and Conspiracy to Convert against all Defendants)

107.   Almaty hereby incorporates by reference the allegations in paragraphs 1 through 106, as though fully set forth herein.

108.   Defendants, and each of them, have wrongfully converted, aided and abetted, and caused to be converted, to their own use, and that of their friends, families, associates, and accomplices, money, funds, and property belonging to Almaty and its people.  Such conversions have been for the benefit of the Defendants and their friends, families, associates, and accomplices, and to the detriment of the true owners of the property, Almaty and its people.  Such acts of conversion include the acts alleged herein.

109.   Defendants unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other, and with others to

1    convert money, funds, and property belonging to Almaty and its people to their

2    own use, and that of their friends, families, associates, and accomplices.  In

3    furtherance of the conspiracy and to affect the objects thereof, Defendants

4    committed the overt acts, among others, referenced above.

5        110.   As a direct and proximate result of these acts of conversion by

6    Defendants, Almaty has suffered damages in an amount to be determined at trial,

7    and presently estimated to be not less than $300 million.

8        111.   In committing the acts and perpetrating the schemes alleged herein,

9    Defendants intended to injure Almaty and acted with malice and oppression and

10   with a willful and conscious disregard for the rights of Almaty and its people.  In

11   so doing, Defendants acted toward Almaty and its people in such manner as to

12   warrant disgorgement of their uses and investments of Almaty's money and

13   property together with an award of punitive and exemplary damages in an amount

14   no less than $300 million.

15                          **SIXTH CLAIM FOR RELIEF**

16   (For Fraud and Deceit and Conspiracy to Defraud against Viktor and Leila)

17       112.   Almaty hereby incorporates by reference the allegations in paragraphs

18   1 through 111, as though fully set forth herein.

19       113.   In the course of conducting and participating in the conduct of the

20   affairs of the Khrapunov Racketeering Enterprise, Viktor and Leila made

21   representations to Almaty and others, which representations were false and

22   necessary to implement the unlawful looting, laundering, investment and

23   obstruction schemes described above.

24       114.   As set forth above, Viktor, who owed a fiduciary duty to Almaty, and

25   Leila failed to disclose and otherwise concealed facts from Almaty and others, the

26   disclosure of which was necessary to make the representations made by them to

27   Almaty not materially misleading.  Viktor and Leila knew that said facts were not

28   being disclosed and were material, and they intended by concealment of these facts

1  to facilitate continuation of their unlawful diversion of assets belonging to Almaty
2  and its people.

3      115.   Almaty relied to its detriment on the representations of integrity by
4  Viktor and Leila.  Viktor and Leila flagrantly breached the trust and confidence of
5  Almaty by committing numerous acts of fraud, deceit, conversion, and
6  racketeering alleged herein, through which they plundered the assets of Almaty.

7      116.   In the course of developing their elaborate scheme to defraud, Viktor
8  and Leila secured the assistance, among others, of associates and accomplices, who
9  with Viktor and Leila unlawfully, willfully and knowingly did combine, conspire,
10  confederate, and agree together, with each other and with others to facilitate, aid
11  and abet, and conceal the scheme and artifice to defraud, and to obtain money and
12  property by false representations and promises, thereby enabling the massive
13  diversions and concealment of looted funds identified in this Complaint.

14      117.   As a direct and proximate result of the foregoing fraudulent conduct
15  and conspiracy to defraud, Almaty has suffered damages in an amount to be
16  determined at trial, and presently estimated to be not less than $300 million.

17      118.   In committing the acts and perpetrating the schemes alleged herein,
18  Viktor and Leila intended to injure Almaty and acted with malice and oppression
19  and with a willful and conscious disregard for the rights of Almaty and its people.
20  In so doing, Defendants acted toward Almaty and its people in such manner as to
21  warrant disgorgement of their uses and investments of Almaty's money and
22  property together with an award of punitive and exemplary damages in an amount
23  no less than $300 million.

24                    **SEVENTH CLAIM FOR RELIEF**

25  (For an Accounting, and Imposition of a Constructive Trust and Equitable Lien
26                         against all Defendants)

27      119.   Almaty hereby incorporates by reference the allegations in paragraphs
28  1 through 118, as though fully set forth herein.

120.   During Viktor's mayoralty of Almaty, he, acting as mayor, controlled virtually all of the valuable assets of the Almaty government.  These assets included money and real and personal property owned by the Almaty government, the right to convey, for the benefit of the people of Almaty, real and personal property owned by the Almaty government, and the right to decide who could do business in Almaty through the granting of licenses, concessions, and permits. Viktor further was entrusted with the ability to cause privately owned property to be seized by the Almaty government, purportedly for the benefit of Almaty and its people.

121.   Viktor owed a fiduciary duty to Almaty and its people to hold and control these assets for the benefit of Almaty and its people, and not for his personal benefit or the personal benefit of his friends, families, associates, and accomplices.  As alleged above, Viktor, aided and abetted by the other Defendants, converted the assets of the Almaty government to his personal benefit and the personal benefit of his friends, families, associates, and accomplices. They did so by looting money and property owned by the Almaty government and/or by private parties and by accepting bribes, kickbacks, gratuities, and commissions in exchange for the granting of the legal right to do business in Almaty.  All such conversions of assets were done in violation of Viktor's duties to the beneficial owners of such assets, Almaty and its people.  If Viktor or the other Defendants are permitted to retain these assets, they will be unjustly enriched at Almaty's expense.

122.   Defendants other than Viktor received money and property stolen from the Almaty government by Viktor and other economic benefits taken or conferred upon them by Viktor in violation of his fiduciary duty.  These Defendants received such money, property, and other economic benefits without giving value for them or with notice to Almaty that such assets had been stolen or otherwise acquired in violation of Viktor's duties to Almaty and its people.  If

LATHAM&WATKINS^LLP  DC\3254955.7
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  these Defendants are permitted to retain such assets, they will be unjustly enriched

2  at Almaty's expense.

3      123.   As a result of the foregoing, Almaty is entitled to an accounting by

4  each of the Defendants of all real and personal property held, acquired, or disposed

5  of by them at any time since 1997.

6      124.   As a result of the foregoing, Almaty is entitled to a constructive trust

7  and equitable lien upon all real and personal property of Defendants, wherever

8  located worldwide.

9      125.   Defendants regularly misused and continue to misuse the corporate

10  and other forms of business organization as a cloak for committing fraud and as a

11  means of perpetrating injustice. By reason of the elaborate and fraudulent schemes

12  used by Defendants to conceal transfers of stolen money and property and to

13  conceal ownership of Defendants' assets, it would be unjust and inequitable to

14  require Almaty to trace the source of money used to acquire specific assets, or to

15  prove that specific assets were acquired with money or property stolen from

16  Almaty. Instead, the burden should be shifted to Defendants to prove that they had

17  sources of income other than the unlawful looting and investment schemes

18  described herein, and to prove that particular assets were acquired by them with

19  such independent, lawful income.

20                              **PRAYER**

21      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

22      A.      For compensatory damages;

23      B.      For treble damages;

24      C.      For punitive damages;

25      D.      For prejudgment interest;

26      E.      For a constructive trust;

27      F.      For an accounting;

28      G.      For injunctive relief;

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3254955.7

33

FIRST AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    H.    For restitution and disgorgement;

2    I.    For all costs and fees incurred in prosecuting this Complaint;

3    J.    For such other and further relief as this Court deems just and proper.

4    Dated: June 9, 2014

5                                    LATHAM & WATKINS LLP
                                     David J. Schindler
6                                    Manny A. Abascal
                                     Kristen M. Tuey
7                                    Brigitte E. Mills

8

9                                    By
                                        David J. Schindler
10                                   Attorneys for Plaintiff the City of
                                     Almaty
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

       I am employed in the County of Los Angeles, State of California.  I
am over the age of 18 years and not a party to this action.  My business address is
Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA  90071-1560.

3

4

       On **June 9, 2014**, I served the following document described as:

5

**NOTICE OF FILING FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE RELIEF, AND OTHER EQUITABLE RELIEF FOR:**

6

7

    1) **Violations of RICO (18 U.S.C. §§ 1962(c), 1962(d), 1964);**
    2) **Violation of and Conspiracy to Violate California's Unfair Competition
       Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);**
    3) **Breach of Fiduciary Duty;**
    4) **Conversion and Conspiracy to Commit Conversion;**
    5) **Fraud and Deceit and Conspiracy to Defraud; and**
    6) **An Accounting, and Imposition of a Constructive Trust and Equitable
       Lien;**

8

9

10

11

by serving a true copy of the above-described document in the following manner:

12

### BY U.S. MAIL

13

       I am familiar with the office practice of Latham & Watkins LLP for
collecting and processing documents for mailing with the United States Postal
Service.  Under that practice, documents are deposited with the Latham & Watkins
LLP personnel responsible for depositing documents with the United States Postal
Service; such documents are delivered to the United States Postal Service on that
same day in the ordinary course of business, with postage thereon fully prepaid.  I
deposited in Latham & Watkins LLP's interoffice mail a sealed envelope or
package containing the above-described document and addressed as set forth
below in accordance with the office practice of Latham & Watkins LLP for
collecting and processing documents for mailing with the United States Postal
Service:

14

15

16

17

18

19

SEE SERVICE LIST ATTACHED

20

21

       I declare that I am employed in the office of a member of the Bar of,
or permitted to practice before, this Court at whose direction the service was made
and declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

22

23

24

Executed on **June 9, 2014**, at Los Angeles, California.

25

_____
Brigitte E. Mills

26

27

28

1

## SERVICE LIST

2

USDC - Case CV 14-3650 CMO (CWx)
City of Almaty v. Viktor Khrapunov, et al.

3

4

| | |
|---|---|
| Elvira Kudryashova<br>c/o Jan Handzlik<br>1427 12th Street, Unit B<br>Manhattan Beach, CA 90266-6138 | Dmitri Kudryashov<br>c/o Jan Handzlik<br>1427 12th Street, Unit B<br>Manhattan Beach, CA 90266-6138 |
| RPM USA, LLC,<br>a New York Corporation<br>c/o Arnie Hernz, Attorney<br>14 Vanderventer Avenue<br>SUITE 255<br>Port Washington, NY 11050-3777 | RPM-MARO LLC,<br>a New York Corporation<br>c/o Arnie Hernz, Attorney<br>14 Vanderventer Avenue<br>Suite 255<br>Port Washington, NY 110503777 |
| Mr. Fumigation Inc.,<br>a California corporation<br>c/o Registered Agent: Douglas Fierro<br>6279 E. Slauson Ave., Suite 408<br>Commerce, CA 90040-3041 | Haute Hue LLC,<br>a California corporation<br>c/o Registered Agent: Michelle<br>Smirnov<br>1333 N. Curson Ave., Apt. 206<br>Los Angeles, CA 90046-3183 |
| 628 Holdings LLC,<br>a California Corporation<br>c/o Registered agent: Corporation<br>Service Company – Lawyers<br>Incorporating Service<br>2710 Gateway Oaks Dr., Suite 150N<br>Sacramento, CA 95833-3502 | Candian International LTD.,<br>a British Virgin Islands corporation<br>c/o Registered agent: Corporation<br>Service Company – Lawyers<br>Incorporating Service<br>2710 Gateway Oaks Dr., Suite 150N<br>Sacramento, CA 95833-3502 |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28