1  JAN LAWRENCE HANDZLIK, APC
2  Jan L. Handzlik (Bar No. 047959)
   1437 12th Street, #B
3  Manhattan Beach, CA 90266-6138
4  Telephone: (310) 504-0699
   Facsimile: (310) 921-8709
5  jhandzlik@handzliklaw.com

6
7  Attorney for Defendants Elvira Khrapunov a/k/a
   Elvira Kudryashova; Dmitry Kudryashov; RPM USA,
8  LLC; RPM-Maro LLC; Maro Design LLC; Haute
   Hue LLC; 628 Holdings LLC; Candian International
9  Ltd.; Elvira Kudryashova as Trustee of The Kasan
   Family Trust; and Dmitry Kudryashov as Trustee of
10 The Kasan Family Trust

11                 UNITED STATES DISTRICT COURT
12
13             CENTRAL DISTRICT OF CALIFORNIA

14
15 | CITY OF ALMATY, a foreign state,        | Case No. 2:14-cv-03650-FMO-CW
16 |                 Plaintiff,              | **NOTICE OF MOTION AND
   |                                         | MOTION TO DISMISS
17 |          -against-                     | PLAINTIFF'S FIRST AMENDED
   |                                         | COMPLAINT FILED ON BEHALF
18 |                                         | OF DEFENDANTS ELVIRA
19 | VIKTOR KHRAPUNOV, an individual;        | KHRAPUNOV (INDIVIDUALLY
   | LEILA KHRAPUNOV, an individual;         | AND AS TRUSTEE), DMITRY
20 | ILIYAS KHRAPUNOV, an individual;        | KUDRYASHOV (INDIVIDUALLY
   | MADINA ABLYAZOVA a/k/a                  | AND AS TRUSTEE), RPM USA,
21 | MADINA KHRAPUNOVA, an                   | LLC, RPM-MARO, LLC, MARO
   | individual; ELVIRA KHRAPUNOV            | DESIGN LLC, HAUTE HUE LLC,
22 | a/k/a/ ELVIRA KUDRYASHOVA a/k/a          | 628 HOLDINGS LLC, AND
23 | ELVIRA BALMADANI, an individual;         | CANDIAN INTERNATIONAL LTD.**
   | DMITRI KUDRYASHOV, an
24 | individual; RPM USA, LLC, a New         | **MEMORANDUM OF POINTS AND
   | York corporation; RPM-MARO LLC, a       | AUTHORITIES; DECLARATION
25 | New York corporation; MR.               | OF JAN L. HANDZLIK; REQUEST
   | FUMIGATION INC., a California           | FOR JUDICIAL NOTICE;
26 | corporation; MARO DESIGN LLC, a         | [PROPOSED] ORDER**
27 |                                         | Hearing Date:   October 23, 2014
   |                                         | Hearing Time:   10:00 a.m.
28 |                                         | Judge: Honorable Fernando M. Olguin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

California corporation; HAUTE HUE
LLC, a California corporation; 628
HOLDINGS LLC, a California
corporation; CANDIAN
INTERNATIONAL LTD., a British
Virgin Islands corporation; ELVIRA
KUDRYASHOVA AS TRUSTEE FOR
THE KASAN FAMILY TRUST;
DMITRI KUDRYASHOV AS
TRUSTEE FOR THE KASAN
FAMILY TRUST; and DOES 1 through
10,

                    Defendants.

# NOTICE OF MOTION

PLEASE TAKE NOTICE that, on October 23, 2014, at 10:00 a.m., in Courtroom 22 of the United States Courthouse for the Central District of California – Western Division, located at 312 North Spring Street in Los Angeles, California, defendants Elvira Khrapunov, Dmitry Kudryashov, RPM USA, LLC, RPM-Maro LLC, Maro Design LLC, Haute Hue LLC, 628 Holdings LLC, Candian International Ltd., Elvira Kudryashova as Trustee of The Kasan Family Trust, and Dmitry Kudryashov as Trustee of The Kasan Family Trust will and hereby do move this Court for an order dismissing Plaintiff City of Almaty's First Amended Complaint in its entirety.

The Motion will seek dismissal of Plaintiff's First Amended Complaint in its entirety because:   (1) Plaintiff fails to state a claim against the moving defendants on which relief may be granted, compelling dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) the doctrine of *forum non conveniens* compels that this case be litigated in the more appropriate forum of Switzerland; and (3) the First Amended Complaint asks the Court to sit in judgment of official acts of the Republic of Kazakhstan in its own territory and is nonjusticiable pursuant to the Act of State doctrine.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Jan L. Handzlik and the exhibits thereto; the concurrently-filed Request for Judicial Notice; and such additional evidence or argument as may be presented at or before the hearing on this matter.

/ / /
/ / /
/ / /
/ / /
/ / /

1    As set forth in the accompanying Declaration of Jan L. Handzlik, this Motion

2  is made following an August 15, 2014 conference of counsel pursuant to Local Rule

3  7-3.

4

5  DATED: August 15, 2014          JAN LAWRENCE HANDZLIK, APC

6

7

8                                  By   /s/ Jan L. Handzlik
                                      Jan L. Handzlik
9

10                                   Attorney for Defendants Elvira Khrapunov
                                     a/k/a Elvira Kudryashova; Dmitry
11                                   Kudryashov; RPM USA, LLC; RPM-
                                     Maro LLC; Maro Design LLC; Haute
12                                   Hue LLC; 628 Holdings LLC; Candian
                                     International Ltd.; Elvira Kudryashova as
13                                   Trustee of The Kasan Family Trust; and
                                     Dmitry Kudryashov as Trustee of The
14                                   Kasan Family Trust
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 14-cv-03650-FMO-CW
DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE
HUE LLC, 628 HOLDINGS LLC AND CANDIAN INTERNATIONAL LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 4

LEGAL STANDARD ..................................................................................... 5

ARGUMENT ................................................................................................. 6

I.    PLAINTIFF HAS STILL FAILED TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED ........................................... 6

    A.    Plaintiff's RICO Claims Should Be Dismissed Because the Alleged Racketeering Activities Predominantly Occurred in Kazakhstan and Switzerland .................................................. 6

    B.    Plaintiff's State Law Claims Should Be Dismissed for the Same Reason ...................................................................... 9

II.    ALTERNATIVELY, PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BASED ON *FORUM NON CONVENIENS* ....................................................................... 10

    A.    Switzerland Is an Available, Adequate Forum .................... 10

    B.    Each of the Private Interest Factors Favors Switzerland ..... 11

    C.    Each of the Public Interest Factors Also Favors Switzerland ... 13

III.    PLAINTIFF'S CLAIMS ARE NONJUSTICIABLE IN ANY EVENT ........ 14

IV.    PLAINTIFF'S CLAIMS ARE ALSO BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ................................... 15

V.    PLAINTIFF'S CLAIMS ALSO FAIL TO SATISFY THE REQUISITE PLEADING STANDARDS ........................................ 17

    A.    Plaintiff's RICO Claims Are Not Pled With the Required Specificity ....................................................... 17

        1.    Plaintiff Fails to Plead a RICO Enterprise ................ 17

        2.    Plaintiff Fails to Allege that the Supposed Predicate Acts Proximately Caused Its Injury ........................ 18

        3.    Plaintiff Has Not Alleged Any of the Underlying RICO Predicate Acts With the Required Specificity ...... 19

        4.    Plaintiff Fails to Allege That the Moving Defendants Intended to Further the Criminal Endeavor, as Required for a RICO Conspiracy Claim ................................ 23

-iii-

Case No.: 14-cv-03650-FMO-CW

1

      B.     Because Plaintiff's RICO Claims Should Be Dismissed, Its
State-Law Claims Should Be Dismissed As Well ................................. 24

CONCLUSION ......................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Agency Holding Corp. v. Malley-Duff & Assocs.*,
483 U.S. 143 (1987) ................................................................... 15

*In re Alcon S'holder Litig.*,
719 F. Supp. 2d 263 (S.D.N.Y. 2010) ...................................... 10

*Alves v. Players Edge, Inc.*,
No. 05CV1654WQH (CAB), 2007 WL 6004919
(S.D. Cal. Aug. 8, 2007) ........................................................... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................... 5, 17, 22

*Ashley Creek Phosphate Co. v. Norton*,
420 F.3d 934 (9th Cir. 2005) ...................................................... 9

*Ayzoukian v. Wash. Mut. Bank*,
No. CV 09-01103 RGK (PLAx), 2009 WL 1808390
(C.D. Cal. June 24, 2009) .......................................................... 21

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) ...................................................... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................... 5, 17

*Bono v. Clark*,
103 Cal. App. 4th 1409 (Cal. Ct. App. 2002) ........................... 15

*Boyle v. U.S.*,
556 U.S. 938 (2009) ................................................................. 17

*Brunswick GmbH v. Bowling Switz., Inc.*,
No. C.A. 07-471 JJF, 2008 WL 2795936 (D. Del. July 18, 2008) ...... 10

*In re Cell Tower Litig.*,
807 F. Supp. 2d 928 (S.D. Cal. 2011),
*affirmed in part and reversed in part on other grounds*,
No. 3:07-cv-00399-BEN-WVG (9th Cir. Aug. 14, 2014) ................. 25

*Credit Suisse v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
130 F.3d 1342 (9th Cir. 1997) .................................................. 14

*Crest Const. II, Inc. v. Doe*,
660 F.3d 346 (8th Cir. 2011) ............................................... 17, 18

*Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*,
---- F. Supp. 2d ----, No. 13–cv–14829, 2014 WL 2815743
(E.D. Mich. June 23, 2014) ...................................................... 10

*Dibdin v. South Tyneside NHS Healthcare Trust*,
  No. CV 12-00206 DDP (PLAx), 2013 WL 327324
  (C.D. Cal. Jan. 29, 2013) ............................................................................. 14

*Do Rosario Veiga v. World Meteorological Org.*,
  486 F. Supp. 2d 297 (S.D.N.Y. 2007) ........................................................ 10

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) .................................................................. 5, 6

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  --F.Supp.2d--, No. 13 CIV. 6521 (DLC), 2014 WL 2050610
  (S.D.N.Y. May 19, 2014) ............................................................................. 24

*Flores v. Emerich & Fike*,
  416 F. Supp. 2d 885 (E.D. Cal. 2006) ........................................................ 21

*Gentges v. Trend Micro Inc.*,
  No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) ............... 9

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) ......................................................... 15, 16, 17

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010) ......................................................................................... 18

*Holmes v. Secs. Investor Prot. Corp.*,
  503 U.S. 258 (1992) ...................................................................................... 19

*Hourani v. Mirtchev*,
  943 F. Supp. 2d 159 (D.D.C. 2013) ........................................................ 8, 19

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ...................................................................... 23

*Interpane Coatings, Inc. v. Austl. & N.Z. Banking Grp. Ltd.*,
  732 F. Supp. 909 (N.D. Ill. 1990) ............................................................... 13

*Kennedy v. Full Tilt Poker*,
  No. CV 09-07964 MMM (AGRx), 2010 WL 3984749
  (C.D. Cal. Oct. 12, 2010) ............................................................................. 24

*LaSala v. UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007) ........................................................ 11

*Leetsch v. Freedman*,
  260 F.3d 1100 (9th Cir. 2001) .................................................................... 12

*Lorber v. Winston*,
  962 F. Supp. 2d 419 (E.D.N.Y. 2013) ......................................................... 21

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
  583 F.3d 656 (9th Cir. 2009) ...................................................................... 12

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ................................................. 11, 12, 13, 14

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................................ 18

*Medicor AG v. Arterial Vascular Eng'g*,
   No. C-96-2979 MHP, 1997 WL 68564,
   (N.D. Cal. Jan. 30, 1997) *aff'd*, 141 F.3d 1177 (9th Cir. 1998) ........................ 10

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ...................................................................................... 8

*Noel v. Hall*,
   336 F. App'x 592 (9th Cir. 2009) ................................................................. 6

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   540 F. Supp. 2d 438 (S.D.N.Y. 2007) ........................................................... 8

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   631 F.3d 29 (2d Cir. 2010) ........................................................................... 8

*Norwest Mortgage, Inc. v. Super. Ct.*,
   72 Cal. App. 4th 214 (Cal. Ct. App. 1999) ............................................... 9, 25

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ....................................................................... 17

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
   790 F. Supp. 2d 1134 (C.D. Cal. 2011) ............................................. 20, 22, 23

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ....................................................................... 19

*Pincay v. Andrews*,
   238 F.3d 1106 (9th Cir. 2001) ..................................................................... 16

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .................................................................................... 10

*Rice v. U.S. Bank Nat. Ass'n*,
   No. CV 11-6214-GW (SSX), 2012 WL 10423291
   (C.D. Cal. Jan. 23, 2012) .............................................................................. 6

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................... 15, 16

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ....................................................................... 22

*Stewart v. Wachowski*,
   No. CV 03-2873 MMM (VBKx), 2005 WL 6184235
   (C.D. Cal. June 14, 2005) ............................................................................ 24

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ................................................................... 9

*Townsend v. Nat'l Arb'n Forum, Inc.*,
   No. CV 09-9325-VBF RNBX, 2012 WL 12736 (C.D. Cal. Jan. 4, 2012) .... 17, 18

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ........................................... 6, 20

*TransFirst Holdings, Inc. v. Phillips*,
   No. 3:06–CV–2303–P, 2007 U.S. Dist. LEXIS 35590
   (N.D. Tex. May 18, 2007) ............................................................. 24

*Turcios v. Carma Labs., Inc.*,
   296 F.R.D. 638 (C.D. Cal. 2014) ................................................... 25

*Underhill v. Hernandez*,
   168 U.S. 250 (1897) .................................................................... 14

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) .................................................................... 25

*United States v. Chao Fan Xu*,
   706 F.3d 965 (9th Cir. 2013) ..................................................... 6, 22

*United States v. Lazarenko*,
   564 F.3d 1026 (9th Cir. 2009) ...................................................... 22

*United States v. Muskovsky*,
   863 F.2d 1319 (7th Cir. 1998) ...................................................... 24

*United States v. Rutgard*,
   116 F.3d 1270 (9th Cir. 1997) ...................................................... 22

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ....................................................... 14

*Viviani v. Vahey*,
   No. 2:10-CV-01445-LRH, 2012 WL 688433 (D. Nev. Mar. 2, 2012) .............. 21

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ............................................... 5

*Yavuz v. 61 MM, Ltd.*,
   576 F.3d 1166 (10th Cir. 2009) ..................................................... 11

## **Statutes**

18 U.S.C. § 371 ............................................................................. 23

18 U.S.C. § 1341 ........................................................................... 19

18 U.S.C. § 1343 ........................................................................... 20

18 U.S.C. § 1956 .......................................................................................... 19, 20

18 U.S.C. § 1956(a)(1) ....................................................................................... 20

18 U.S.C. § 1957 .......................................................................................... 19, 21

18 U.S.C. § 1961(1) ........................................................................................... 23

18 U.S.C. § 1962(a) ..................................................................................... 17, 21

18 U.S.C. § 1962(c) ........................................................................................... 17

18 U.S.C. § 1962(d) ........................................................................................... 23

18 U.S.C. § 2314 .......................................................................................... 19, 22

Cal. Bus. & Prof. Code § 17204 ....................................................................... 25

Cal. Bus. & Prof. Code § 17208 ....................................................................... 15

Cal. Civ. P. Code § 338(c)(1) ........................................................................... 15

Federal Rule of Civil Procedure 9(b) ..................................... 3, 5, 6, 20, 21, 22, 23

Swiss Criminal Procedure Code Articles 118, 119, 122 ........................................... 11

Swiss Criminal Code Articles 137, 138, 260ter, 305bis, 312, 314 ........................... 11

-ix-                                    Case No.: 14-cv-03650-FMO-CW

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE
HUE LLC, 628 HOLDINGS LLC AND CANDIAN INTERNATIONAL LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**Preliminary Statement**</u>

In its June 2, 2014 *sua sponte* order, this Court questioned the adequacy of the RICO allegations in Plaintiff's original complaint ("Complaint"), and ordered Plaintiff to file a First Amended Complaint ("FAC").   Plaintiff's FAC fails to cure the deficiencies identified by the Court and contains numerous other fatal defects.   The Court's review of the Complaint found that, although it contained "allegations regarding asset purchases in the United States, such domestic conduct may not be sufficient to support a RICO claim."  Dkt. 8 at 2 (citations omitted).   Yet, Plaintiff has failed to identify any additional domestic conduct, rendering the FAC insufficient to state a claim under Ninth Circuit law establishing a presumption against the extraterritorial application of RICO.

This lawsuit was filed by a foreign state, the Republic of Kazakhstan, acting through its political subdivision, the City of Almaty.   The defendants are Viktor Khrapunov, the former Mayor of Almaty and a former Kazakh energy minister, his wife Leila, their son Iliyas and daughter Elvira and their respective spouses, and several corporations and trusts.   The original Complaint alleged claims arising out of supposed political corruption in Kazakhstan over 10 years ago.   Plaintiff claimed that Viktor Khrapunov undertook a series of illegal transactions in Kazakhstan to enrich himself and his family at the expense of Almaty and its citizens.   The FAC continues to allege that defendants violated Kazakh law, but once again there is a paucity of both factual content and legal authority.   What actions?   When?   What Kazakh laws were violated?   Although the FAC makes conclusory averments about acts that might be illegal for the Mayor of *El Monte, California*, this case involves the Mayor of *Almaty, Kazakhstan*.   Plaintiff leaves the Court and defendants largely in the dark as to the applicable regulatory framework or the details, probably because they simply do not exist or they are exculpatory.

So what is the proffered basis for this audacious effort by Kazakhstan to come

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE HUE LLC, 628 HOLDINGS LLC AND CANDIAN INTERNATIONAL LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  to a Los Angeles courtroom to litigate decades-old enmities from a developing

2  foreign country in which all the operative facts—and any evidence—occurred

3  halfway around the globe?  Defendant Viktor Khrapunov's daughter and son-in-law

4  live here, and they have lived in several different homes (at different times) that

5  were purchased here almost 10 years after the alleged misconduct, using the

6  purportedly ill-gotten proceeds.   Yet, nowhere does the FAC allege that a *single*

7  *one* of the moving defendants – none of whom resided in Kazakhstan at the time,

8  and some of whom did not even exist – had anything to do with this alleged

9  scheme.  Even assuming Plaintiff's allegations are true – which they are not – the

10  Court should not entertain Plaintiff's tenuous claims for multiple reasons.

11       The Ninth Circuit has held that a RICO claim may not be brought where the

12  majority of the alleged racketeering activity occurred overseas.   Here, the *entire*

13  *basis* of Plaintiff's claims is that a former *Kazakh* official committed illegal acts

14  under *Kazakh* law while in *Kazakhstan*.   Without the actions purportedly

15  undertaken in Kazakhstan from 1997-2004 – which would have to be decided under

16  Kazakh law from that era based on documents and witnesses predominantly residing

17  in Kazakhstan – Plaintiff has no legally cognizable federal claim.   Obviously, none

18  of the defendants could have committed any of the alleged U.S.-based predicate acts

19  – which revolve around allegedly laundering proceeds of the Kazakh scheme – if the

20  proceeds were derived from lawful transactions.   As for alleged money laundering,

21  Plaintiff asserts that most of it occurred in Switzerland, *not* the United States.   As

22  the Court correctly noted in its June 2 order, the only alleged connection to the U.S.

23  are six isolated "asset purchases" (including four single-family residences), the

24  largest of which is pled on "information and belief."   Such attenuated domestic

25  contacts cannot be the basis for federal claims.   Instead, Plaintiff should bring its

26  claims in Switzerland, an appropriate alternative forum for this action. Indeed, each

27  factor of the *forum non conveniens* analysis favors dismissal here.

28       In addition, Plaintiff's claims are time-barred.  Each of Plaintiff's claims is

-2-

1   governed by either a four-year or three-year statute of limitations.   By Plaintiff's

2   own admission, the latest it suffered any alleged injury was in 2004 when Mr.

3   Khrapunov's alleged self-dealing as Mayor of Almaty ended, and the latest Plaintiff

4   conceivably knew of its alleged injury was 2007, when it claims to have been

5   investigating Mr. Khrapunov's supposedly improper transactions.   Plaintiff sat on

6   its hands for at least seven years, and its claims are now time-barred.

7        Assuming *arguendo* that RICO can apply to extraterritorial conduct that took

8   place over 10 years ago, the central question underlying Plaintiff's claims is whether

9   a former Kazakh official acting in an official capacity violated Kazakh law in

10  Kazakhstan.   The Court would be required to decide whether a foreign official

11  performing official acts within the borders of a foreign state were illegal.   This is the

12  archetypal application of the Act of State doctrine, which precludes courts from

13  evaluating the validity of actions that a foreign government has taken within its own

14  borders.   Because the Court should not sit in judgment of official acts taken in

15  another country, Plaintiff's claims should be dismissed.

16       Finally, even if Plaintiff could overcome these insurmountable deficiencies,

17  the FAC does not come close to satisfying the requisite pleading standard.   Because

18  most of Plaintiff's alleged RICO predicate acts sound in fraud, Plaintiff must satisfy

19  the heightened pleading requirements of Federal Rule 9(b).   But nowhere does

20  Plaintiff plead the "how, what, where and when" of the predicate acts.   Nowhere

21  does Plaintiff allege such critical facts as how the moving defendants allegedly

22  received the purportedly illegal proceeds; when they received them; how they

23  allegedly knew the proceeds were ill-gotten; when they knew it; or the allegedly

24  fraudulent representations they either made or attempted to further.   Merely alleging

25  corrupt activity and an unsupported "belief" that some proceeds thereof were used in

26  the United States is not enough to state a claim.

27       Litigating this case would require this Court to become a geopolitical

28  archaeologist, delving into the affairs of a developing country (decades ago); a legal

-3-

historian, trying to recreate the state of Kazakh law as it related to local government officials during a period in which Kazakhstan and its laws were being established as an independent country (again, decades ago); and a mediator of foreign political disputes (going back decades or more).   To prevent this misuse of American courts, federal law provides that RICO claims cannot be based on extraterritorial conduct, occurring so long ago, alleged so vaguely, and involving the conduct of foreign government officials in their home country.   The FAC should be dismissed without leave to amend.

### Statement of Facts

Kazakhstan is a former Soviet republic that declared independence following the dissolution of the Soviet Union in 1991.   Far from embracing a "move towards freedom" (FAC ¶ 19), the U.S. State Department notes that Kazakhstan "has a government system dominated by President Nursultan Nazarbayev," who has wielded complete power since the country's independence.   Handzlik Decl., Ex. A at 1, ¶ 1.   Mr. Nazarbayev "controls the legislature and the judiciary as well as regional and local governments," including that of the City of Almaty.   *Id.*   There is no independent judiciary, and "[c]orruption was evident at every stage of the judicial process."   *Id.* at 7.

In this case, Almaty, Kazakhstan's largest city, alleges injuries purportedly arising out of transfers of approximately 80 parcels of property in Kazakhstan made at the direction of Almaty's mayor from 1997-2004, defendant Viktor Khrapunov, in his official capacity.   FAC ¶¶ 21-22, 50.   Almaty alleges that Mr. Khrapunov, his family, and certain business entities improperly conspired to participate in these property transfers and, through a series of subsequent transactions in Kazakhstan, used the properties to secure large amounts of funds for themselves.   *Id.* ¶¶ 22-23.   These funds were then allegedly transferred to Switzerland (*id.* ¶ 29), where the majority of the individual defendants reside.   *Id.* ¶¶ 9, 11.

The moving defendants are Elvira Khrapunov, Dmitry Kudryashov

(incorrectly identified in the FAC as "Dmitri"), RPM USA, LLC, RPM-Maro LLC, Maro Design LLC, Haute Hue LLC, 628 Holdings LLC, Candian International Ltd., Elvira Kudryashova as Trustee of The Kasan Family Trust, and Dmitry Kudryashov as Trustee of The Kasan Family Trust.  Moving defendants are alleged to be involved in Viktor Khrapunov's scheme by way of purportedly using the ill-gotten proceeds to acquire four residential properties in the Los Angeles area almost 10 years later.  *Id*. ¶¶ 56-57, 59-60.   As of the date of this filing, it does not appear that defendants Viktor Khrapunov, Leila Khrapunov, Iliyas Khrapunov, or Madina Khrapunov have been served in Switzerland, where they reside.   Defendant Mr. Fumigation Inc. is represented by separate counsel and has a separate response date.

## Legal Standard

    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.   It requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quotation marks and citation omitted).   "[M]ere conclusory statements" or "legal conclusions" do not suffice—"they must be supported by factual allegations." *Id*. at 678-79.

    The heightened pleading standard of Federal Rule 9(b) applies to civil RICO claims when the predicate offenses involve fraud.   *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (Rule 9(b) "applies to civil RICO fraud claims."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 913 (C.D. Cal. 2012) (same).   To survive a motion to dismiss under Rule 9(b),

the complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d at 1066.   "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud."   *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (dismissing RICO claims where allegations failed to inform each defendant of its particular role in the predicate acts).   Claims made "on information and belief" are usually not sufficient to satisfy Rule 9(b), unless there is an accompanying statement of facts on which the belief is founded.   *Rice v. U.S. Bank Nat. Ass'n*, No. CV 11-6214-GW (SSX), 2012 WL 10423291, at *5 (C.D. Cal. Jan. 23, 2012) (holding that plaintiff's "upon information and belief" allegations were insufficient to plead fraud).

If amendment would be futile, a court may dismiss the complaint with prejudice.   *See Noel v. Hall*, 336 F. App'x 592, 594 (9th Cir. 2009) (affirming district court's denial of motion to file another amended complaint, where it would have been futile to add a RICO claim because the statute of limitations had passed).

<u>**Argument**</u>

I.   **PLAINTIFF HAS STILL FAILED TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED**

A.   **Plaintiff's RICO Claims Should Be Dismissed Because the Alleged Racketeering Activities Predominantly Occurred in Kazakhstan and Switzerland**

As this Court already observed, "the court applies a presumption that 'RICO does not apply extraterritorially in a civil or criminal context,' which preserves a 'stable background against which Congress can legislate with predictable effects.'" Dkt. 8 (quoting *United States v. Chao Fan Xu*, 706 F.3d 965, 974-75 (9th Cir. 2013)).   To determine whether a claim falls within RICO's territorial purview, the Ninth Circuit has directed courts to examine the alleged "pattern of Defendants' racketeering activity taken as a whole."   *Chao*, 706 F.3d at 978.   If the enterprise "consist[s] of racketeering activities conducted predominantly in [a foreign country]

-6-

1    . . . it is beyond the reach of RICO."   *Id.*

2         As noted above, the Court *sue sponte* ordered Plaintiff to file a FAC because,

3    "[w]hile the [original] Complaint contains allegations regarding asset purchases in

4    the United States, such domestic conduct may not be sufficient to support a RICO

5    claim."   Dkt. 8 at 2 (citations omitted).   While Plaintiff's new complaint made

6    cosmetic changes, it fails to identify *any additional domestic conduct* sufficient to

7    state a claim.   All the purportedly U.S.-based conduct identified in the FAC was

8    already identified in the original Complaint, and Plaintiff still does not come close to

9    satisfying the Ninth Circuit's test.

10        The conduct underlying all of Plaintiff's claims purportedly took place in

11   Kazakhstan at the direction of a former Kazakh official – *i.e.*, the alleged

12   "systematic[]" theft of money from the City of Almaty "as a result of Viktor's

13   corrupt use of his political power."   FAC ¶ 2.   Plaintiff alleges Mr. Khrapunov

14   engaged in self-dealing by causing the sale of 80 pieces of property (although

15   Plaintiff identifies only four) in Kazakhstan to family and friends.   None of these

16   sales are alleged to involve U.S. citizens, money, or property, or any other

17   connection to the United States.   Without these alleged transactions in Kazakhstan

18   – which presuppose violations of Kazakh law, not U.S. law – all of Plaintiff's

19   derivative predicate acts of money laundering, wire fraud, and mail fraud fail.

20        Moreover, by Plaintiff's own admission, the next critical step in the alleged

21   pattern of racketeering activity took place in Switzerland.   Mr. Khrapunov and his

22   wife are alleged to have fled to Switzerland; his son and daughter-in-law are alleged

23   to live in Switzerland; and all of them are alleged to have "attempted to launder and

24   hide the stolen money in Switzerland."   FAC ¶ 2.

25        In stark contrast, the conduct alleged to have taken place in the United States

26   amounts to the purchase of four homes in California (only two by the moving

27   defendants), an investment in a medical device company in New York, and "[u]pon

28   information and belief," an investment in a New York hotel.   FAC ¶¶ 56-57, 59-60,

64-65.   Six isolated investments – some of which are alleged on "information and belief" – are not sufficient to overcome the presumption against the extraterritorial application of RICO.   *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) ("The slim contacts with the United States alleged by Norex are insufficient to support extraterritorial application of the RICO statute."); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he presumption against extraterritorial application [of federal statutes] would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.") (emphasis in original).

Indeed, the District Court for the District of Columbia recently dismissed a RICO claim involving Kazakhstan with *even more* alleged U.S. contacts than those pled here.   In *Hourani v. Mirtchev*, 943 F. Supp. 2d 159 (D.D.C. 2013), the alleged conspiracy involved a media takeover in Kazakhstan by President Nazarbayev's daughter, and the subsequent harassment and defamation of the plaintiffs' media-related business.   *Id.* at 161-162.   Some defendants were U.S. citizens; one defendant was located in D.C.; some of the money received as part of the conspiracy was in U.S. bank accounts; and a defendant approved of the racketeering activity from Washington, D.C.   *Id.*   Nonetheless, the court held these domestic contacts were too "isolated" and "peripheral" to support a RICO claim.   *Id.* at 167.[1]

Plaintiff's scant allegations of domestic contacts compel the same result here, where the minimal and peripheral connections between the alleged RICO enterprise and the U.S. are even slimmer.   Allegedly acquiring several homes in the United

---

[1]    *See also Norex*, where the plaintiff alleged that (a) "Defendants used money transferred through U.S. wires to bribe Russian officials and commit various violations of U.S. laws and statutes," (b) "Defendants traveled between the U.S. and Russia in aid of various aspects of the alleged Illegal Scheme," and (c) "an extortion attempt was made by [a] Defendant . . . while . . . in San Francisco."   540 F. Supp. 2d 438, 443 (S.D.N.Y. 2007).   Such conduct was found insufficient for RICO liability.

1   States is simply nowhere near enough to warrant extending RICO to a purported

2   multi-national scheme that predominantly occurred in Kazakhstan and Switzerland,

3   that will involve complex and murky questions of Kazakh law, and where almost all

4   of the witnesses and documents reside in Kazakhstan and Switzerland.

**B.   Plaintiff's State Law Claims Should Be Dismissed for the Same Reason**

7       The same analysis applies with even greater force to Plaintiff's state law

8   claims against the moving defendants for violations of the UCL and conversion and

9   conspiracy to convert.   *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)

10  ("Neither the language of the UCL nor its legislative history provides any basis for

11  concluding the Legislature intended the UCL to operate extraterritorially.

12  Accordingly, the presumption against extraterritoriality applies to the UCL in full

13  force."); *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 224 (Cal. Ct.

14  App. 1999) (similar).   California law cannot be stretched to apply to claims by a

15  foreign state predominantly against foreign nationals based on conduct in foreign

16  countries.

17      Additionally, Plaintiff's UCL claim should be dismissed for lack of prudential

18  standing.   The prudential standing inquiry generally requires that "the interest

19  sought to be protected by the complainant arguably [must be] within the zone of

20  interests to be protected or regulated by the statute . . . in question."   *Ashley Creek*

21  *Phosphate Co. v. Norton*, 420 F.3d 934, 939-40 (9th Cir. 2005).   Because "[n]either

22  the language of the UCL nor its legislative history provides any basis for concluding

23  the Legislature intended the UCL to operate extraterritorially," extraterritorial

24  conduct is not within the Statute's "zone of interests."   *See Gentges v. Trend Micro*

25  *Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012).

26  Claims by a Kazakh city based on injuries that occurred in Kazakhstan are not

27  within the zone of interests protected by California state law.

28

## II.   ALTERNATIVELY, PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BASED ON *FORUM NON CONVENIENS*

Even if Plaintiff had alleged a valid claim against the moving defendants (which it has not), this case should still be dismissed on the ground of *forum non conveniens*.   Dismissal on this basis is appropriate when:   (a) any adequate alternative forum exists, and (b) the balance of private and public factors favors dismissal.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (reinstating district court's dismissal of action based on *forum non conveniens*).   Here, Switzerland presents an alternative forum that is far closer geographically and substantively to the relevant law, facts, and evidence; significantly less burdensome to witnesses and the parties; and has a far greater interest in the allegations than the Central District of California.

### A.   Switzerland Is an Available, Adequate Forum

An alternate forum will be deemed suitable unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."   *Piper*, 454 U.S. at 254.   Courts have long held that Switzerland's judicial system is available and adequate to provide just and appropriate remedies to litigants.   *See, e.g.*, *Medicor AG v. Arterial Vascular Eng'g*, No. C-96-2979 MHP, 1997 WL 68564, at *7 (N.D. Cal. Jan. 30, 1997) *aff'd*, 141 F.3d 1177 (9th Cir. 1998) (unpublished) ("Upon weighing the private interest and public interest factors . . . the balance tips heavily in favor of litigating this action in Switzerland."); *Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, ---- F. Supp. 2d ----, No. 13–cv–14829, 2014 WL 2815743 (E.D. Mich. June 23, 2014) ("[T]he courts of Geneva, Switzerland, are an available and adequate alternative forum").[2]   Indeed, Swiss

---

[2]   *See also In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 279 (S.D.N.Y. 2010); *Do Rosario Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007); *Brunswick GmbH v. Bowling Switz., Inc.*, No. C.A. 07-471 JJF, 2008 WL 2795936, at *1 (D. Del. July 18, 2008).

Case No.: 14-cv-03650-FMO-CW

1  courts have been held an adequate forum specifically for allegations of money

2  laundering.   *See LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007)

3  (granting dismissal in favor of Switzerland in action involving money laundering

4  because Swiss laws are designed to prevent money laundering); *Yavuz v. 61 MM,*

5  *Ltd.*, 576 F.3d 1166, 1177 (10th Cir. 2009) (affirming district court's dismissal in

6  favor of Switzerland in a financial fraud and RICO case).

7       The Court may judicially notice that Kazakhstan has already sought the

8  assistance of Swiss judicial officials regarding exactly the same allegations it makes

9  here.   *See* Handzlik Decl., Exs. B and C (February 2012 Request for Mutual Legal

10  Assistance); Ex. D (September 14, 2012 Request for Mutual Legal Assistance).   At

11  the instigation of the Kazakh authorities, proceedings have already been on-going in

12  Switzerland for two years relating to these allegations.   *See* FAC ¶ 35.   In fact,

13  Swiss officials even informed Kazakhstan that it can delegate the ongoing Kazakh

14  proceedings to Switzerland, and the Swiss courts would adjudicate *all* of Plaintiff's

15  allegations in one forum.   *See* Handzlik Decl., Exs. E and F.   Swiss law provides

16  for what are known as "adhesive" civil claims in connection with criminal

17  proceedings, which would allow Almaty to seek exactly the same monetary

18  compensation as it seeks here.   *See id.*, Exs. G and H (Swiss Criminal Procedure

19  Code, Articles 118, 119, and 122); Exs. I and J (Swiss Criminal Code Articles 137

20  (misappropriation of property), 138 (same), 260ter (criminal organization), 305bis

21  (money laundering), 312 (abuse of public office), 314 (misconduct in public

22  office)). This case may be prosecuted in Switzerland.

23       **B.    Each of the Private Interest Factors Favors Switzerland**

24       To determine whether private interest factors favor a foreign forum, "a court

25  should evaluate the materiality and importance of the anticipated evidence and

26  witnesses' testimony and then determine their accessibility and convenience to the

27  forum."   *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (internal

28  quotations omitted).   The relevant private interest factors are:   (a) the residence of

the parties and witnesses; (b) the forum's convenience to the litigants; (c) access to physical evidence and other sources of proof; (d) whether unwilling witnesses can be compelled to testify; (e) the cost of bringing witnesses to trial; (f) the enforceability of the judgment; and (g) all other practical problems that make a trial easy, expeditious and inexpensive.   *Lueck*, 236 F.3d at 1145.   Generally, the private factors will weigh in favor of a foreign forum when the events giving rise to a suit occur there.   *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664–65 (9th Cir. 2009) (affirming dismissal in favor of Mexico where injury took place there); *Leetsch v. Freedman*, 260 F.3d 1100, 1104–05 (9th Cir. 2001) (similar).   Each of the private interest factors compels dismissal in this case.

Four of the six individual defendants reside in Switzerland, including the alleged "mastermind" defendant Viktor Khrapunov.   The remaining two individual defendants (Elvira and Dmitry) are Swiss citizens.   Plaintiff alleges that defendants attempted to launder or hide their ill-gotten gains in Switzerland.   *See* FAC ¶ 52. Many relevant witnesses, including bank personnel and corporate officers, are thus likely to be in Switzerland, as are the documents pertaining to defendants' finances.[3] Witnesses and documents pertaining to the real estate transactions underlying Plaintiff's claims, which took place in Almaty (*see, e.g.*, FAC ¶¶ 37-50), are likely to be in Kazakhstan, which is closer to Switzerland than to California.   Plaintiff is also likely to rely on testimony and documents from Kazakh officials, whom Plaintiff claims are currently investigating the Khrapunov family.   *See* FAC ¶¶ 33-36.   Switzerland is a more convenient location for these officials.   Indeed, the Kazakh government has already sent a delegation to Switzerland to participate in the Swiss proceedings.   *See* Handzlik Decl., Exs. K and L (May 9, 2014, letter from Geneva Prosecution Office).   In contrast, the cost of bringing these witnesses and

---

[3]   The majority of the relevant documents are not in English, and will have to be translated at significant cost in order to be used here.

1  documents from Switzerland and Kazakhstan to California – where the only

2  connection is four residential purchases – will be substantial and highly burdensome

3  to the litigants.

4       Further complicating matters, the Court does not have the power to compel

5  unwilling third-party witnesses in Switzerland to testify or produce documents.   *See*

6  *Lueck,* 236 F.3d at 1146–47.   And experts on Swiss and Kazakh law will need to be

7  retained and brought to the U.S., as Plaintiff's allegations are based almost entirely

8  on purported violations of Kazakh and Swiss law.   *See Interpane Coatings, Inc. v.*

9  *Austl. & N.Z. Banking Grp. Ltd*., 732 F. Supp. 909, 917 (N.D. Ill. 1990) ("This

10  added burden [of expert testimony on Australian law] affects not only the public

11  interest in avoiding wasted time, but also the private interest in avoiding excessive

12  inconvenience and expense.").

13       In light of these facts – and given that Plaintiff could seek to enforce a Swiss

14  judgment against defendants – Switzerland is a far more suitable forum for

15  Plaintiff's claims than California.   The nature of the allegations here – which will

16  require defendants to attempt to muster evidence of events that took place almost 10

17  years ago from countries half-way around the world – will make defending this

18  action in California unnecessarily difficult and expensive.

19       **C.     Each of the Public Interest Factors Also Favors Switzerland**

20       The public interest factors a court should weigh when considering a *forum*

21  *non conveniens* dismissal include:   (a) local interest in the lawsuit; (b) the court's

22  familiarity with governing law; (c) burden on local courts and juries; (d) congestion

23  in the court; and (e) the costs of resolving a dispute unrelated to this forum.   *Lueck*,

24  236 F.3d at 1147.   Each of these factors favors Switzerland.

25       *First,* a California jury has little interest in adjudicating this lawsuit, which

26  primarily relates to alleged conduct by Swiss residents taking place in Switzerland

27  and Kazakhstan.   *Second*, this Court, though highly sophisticated, is likely to have

28  little familiarity with the civil, criminal, administrative, and procedural laws of

-13-

1    Switzerland and Kazakhstan implicated in this case, dating back to at least 1997.

2    *See Lueck*, 236 F.3d at 1144 (holding the doctrine of *forum non conveniens* was

3    designed in part to help courts avoid conducting complex exercises in comparative

4    law). *Third, fourth, and fifth*, the burdens and costs on this congested Court and

5    Los Angeles jurors in this action are unjustifiable on any reasonable analysis, given

6    that Switzerland is an available alternative forum and that Swiss courts have already

7    been dealing with these allegations for two years. *See Vivendi SA v. T-Mobile USA*

8    *Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) ("The burden on local courts and juries

9    unconnected to the case and the costs of resolving a dispute unrelated to the forum

10    also favor dismissal."); *see also Dibdin v. South Tyneside NHS Healthcare Trust*,

11    No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at \*7 (C.D. Cal. Jan. 29, 2013)

12    ("The Central District of California has a very demanding docket, with many

13    thousands of cases brought each year. The District also faces a number of unfilled

14    judicial vacancies.").

15      Because Switzerland is an adequate alternative forum and the public and

16    private factors favor dismissal, this Court should dismiss this action on the basis of

17    *forum non conveniens*.

18    **III.  PLAINTIFF'S CLAIMS ARE NONJUSTICIABLE IN ANY EVENT**

19      The FAC should also be dismissed as nonjusticiable. The Act of State

20    doctrine provides that "the courts of one country will not sit in judgment on the acts of

21    the government of another done within its own territory." *Credit Suisse v. U.S. Dist.*

22    *Ct. for Cent. Dist. of Cal.*, 130 F.3d 1342, 1346 (9th Cir. 1997) (quoting *Underhill v.*

23    *Hernandez*, 168 U.S. 250, 252 (1897)) (holding that the relief sought violated the act

24    of state doctrine, and plaintiffs should seek relief via the Swiss judicial system).

25    The Act of State doctrine reflects the concern that the determination of the validity

26    of foreign acts by the judicial branch could hinder the conduct of foreign affairs by

27    the executive branch. *See id.* Under the doctrine, an action may be barred if "(1)

28    there is an official act of a foreign sovereign performed within its own territory; and

(2) the relief sought or the defense interposed in the action would require a court in the United States to declare invalid the foreign sovereign's official act."   *Id.* (internal quotations and citation omitted).

Here, as discussed above, the FAC at its core questions the validity of official acts taken by a Kazakh official in his official capacity in Kazakhstan.   It challenges Almaty's decision – allegedly made through its mayor at the time – to sell Kazakh land, as well as the validity of such sales.   The Act of State doctrine exists to prevent precisely such judicial challenges to a sovereign government's practices and policies as applied to its own sovereign territory.

## IV.   PLAINTIFF'S CLAIMS ARE ALSO BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The statute of limitations for a civil RICO claim is four years.   *See Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156 (1987) (applying a four year statute of limitations to RICO claims).   The limitations period begins to run when a plaintiff knew or should have known of the injury which is the basis for the action.   *See Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996) (affirming dismissal of civil RICO claims); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("discovery of the injury, not discovery of the other elements of a claim, is what starts the clock" for a civil RICO action).   Similarly, the statute of limitations for a UCL claim is four years.   *See* Cal. Bus. & Prof. Code § 17208.   The statute of limitations begins to run on the date of the alleged misconduct, not the date of discovery.   *See id.*   The statute of limitations for conversion and conspiracy to convert is three years.   *See* Cal. Civ. P. Code § 338(c)(1).   The statute of limitations for conversion is generally triggered by the act of wrongfully taking property.   *See Bono v. Clark*, 103 Cal. App. 4th 1409, 1433 (Cal. Ct. App. 2002).

Plaintiff claims it was injured when "Viktor plundered [Almaty's] wealth and industry to enrich himself, his family, and his co-conspirators, at the expense of Almaty and its people . . . ."   FAC ¶ 22.   The FAC alleges that, between 1997 and

2004, Mr. Khrapunov orchestrated the auction of over 80 pieces of state-owned real estate to his family at artificially suppressed prices.   *Id*. ¶¶ 24-26.   Plaintiff does not allege that these auctions were held in secret, or that the supposedly substantial and frequent transfers of property were somehow kept out of the public eye.   It is inconceivable that Plaintiff, the City of Almaty itself, did not know or could not have discovered at the time that *over 80 pieces of its own real estate* were being sold to private parties.   FAC ¶ 38.   *See Rotella*, 528 U.S. at 555 (RICO statute of limitations period begins to run upon discovery of injury in order to serve the "basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.").

   Even assuming *arguendo* that Plaintiff did not know about defendants' alleged alienation of property at the time it occurred (1997-2004), Plaintiff indisputably had actual or constructive notice of its claimed injury by 2010 – over four years before it filed its original Complaint.   The FAC claims that, when Mr. Khrapunov and his wife moved to Switzerland in 2007, the "Kazakh authorities nevertheless *continued* to investigate Viktor, Leila, Iliyas, and Elvira . . ." in connection with their property transactions in Almaty.   FAC ¶ 2 (emphasis added); *see also* FAC ¶ 33 ("In approximately late 2007, Viktor became aware that the Kazakh government had begun investigating him and his family, friends, and associates for criminal violations.").   Having commenced investigation of the Khrapunovs' alleged Almaty real estate transactions before 2007, there is no conceivable possibility that Plaintiff did not know or could not have discovered their alleged unlawful nature during the subsequent *three years*, until 2010.

   Because Plaintiff either knew or should have known of its alleged injury for at least four years before it decided to file this case, its claims are time-barred.   *See Grimmett*, 75 F.3d 506 at 517 (affirming dismissal of RICO claims where plaintiff became aware of the injury over four years before lawsuit filed); *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (similar).

## V.   PLAINTIFF'S CLAIMS ALSO FAIL TO SATISFY THE REQUISITE PLEADING STANDARDS

### A.   Plaintiff's RICO Claims Are Not Pled With the Required Specificity

To properly plead a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege facts supporting the following elements with the required specificity: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).   To plead a claim under 18 U.S.C. § 1962(a), a plaintiff must plead the following elements:   (1) receipt of income (2) derived, directly or indirectly, from a pattern of racketeering activity (3) used or invested (4) in operation of any enterprise, and (5) injury to plaintiff by the use or investment of racketeering income.   *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992) (holding that proposed amended complaint failed to state a 1962(a) claim because allegations were general, conclusory, and vague).   Here, Plaintiff has failed to plead some of these elements at all, and pleads others in terms that fail to come close to satisfying *Iqbal* and *Twombly*.

### 1.   Plaintiff Fails to Plead a RICO Enterprise

Plaintiff lumps all the defendants into an amorphous entity called the "Khrapunov Racketeering Enterprise."   FAC ¶ 68.   This falls far short of what is required.   *See Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355, 358 (8th Cir. 2011) (noting that bare allegations of interrelation and association between companies was insufficient to plead a RICO enterprise).   A RICO enterprise must have an ascertainable structure with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."   *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).   The enterprise must also exist separately from the pattern of racketeering activity.   *See Townsend v. Nat'l Arb'n Forum, Inc.*, No. CV 09-9325-

-17-

VBF RNBX, 2012 WL 12736, at *7 (C.D. Cal. Jan. 4, 2012) ("A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because the existence of an enterprise at all times remains a separate element which must be proved.") (citation omitted); *Crest*, 660 F.3d at 354-55 ("In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, we must determine if the enterprise would still exist were the predicate acts removed from the equation.") (internal quotations omitted).

Here, Plaintiff has not alleged any ascertainable structure whatsoever, let alone one distinct from the alleged pattern of racketeering activity.   For example, the extent of Plaintiff's allegations with respect to defendants Haute Hue LLC, Mr. Fumigation, and RPM-MARO LLC is that they "are owned or controlled by Iliyas and/or Elvira" (FAC ¶ 13), and that "Elvira, Dmitri [sic], Iliyas, and Madina" have allegedly invested in them (FAC ¶ 63).   But Plaintiff has failed to allege anything about these purported investments or how their acceptance of these supposed investments creates a RICO enterprise.   Nor has Plaintiff alleged how decisions were made within the enterprise or how the alleged enterprise is distinct from its purported predicate acts.   Merely repeating the word "enterprise" does not convert various individuals and a number of disparate companies into a structured organization that falls under RICO.   *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1041 (C.D. Cal. 2011) (holding that Mattel failed to plead an enterprise because the alleged enterprise neither shared a common purpose nor operated as a continuing unit).

>   2.   Plaintiff Fails to Allege that the Supposed Predicate Acts Proximately Caused Its Injury

A plaintiff asserting a RICO claim must show that the predicate offenses proximately caused its injury.   *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[P]roximate cause . . . requires 'some direct relation between the

injury asserted and the injurious conduct alleged.'   A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient.") (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268, 271, 274 (1992)).   Where a plaintiff is already injured by an alleged theft, subsequent use of the stolen funds or property does not constitute a new, additional injury to the plaintiff.   *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) ("The direct and proximate cause of Oki's loss was not [Wells Fargo's employee's] money laundering at Wells Fargo; it was theft."); *Hourani*, 943 F. Supp. 2d at 167 ("Plaintiffs' injuries—*e.g.,* the loss of their assets in Kazakhstan, harassment by Kazakh government officials, government police raids, and expulsion from Kazakhstan—were the 'direct and proximate' result of the extortion, not the post-extortion money laundering.") (citation omitted).

In this case, none of the claimed predicate acts actually caused Plaintiff's alleged injury.   The alleged harm to Plaintiff was the purportedly fraudulent property transactions from 1997-2004, when the City of Almaty claims it was deprived of the full value of its real estate.   By the time of the alleged predicate acts in the U.S. many years later, the damage had already been done.   However the allegedly ill-gotten proceeds were used, they were not in the possession of Almaty, the entity to which they supposedly belonged.   Because the alleged RICO predicate acts were not the "direct and proximate" cause of any harm to Almaty, Plaintiff's RICO claim should be dismissed.   *See Hourani*, 943 F. Supp. 2d at 167.

### 3.   Plaintiff Has Not Alleged Any of the Underlying RICO Predicate Acts With the Required Specificity

Plaintiff summarily alleges that each moving defendant engaged in "one or more" of the following predicate acts (though, as already discussed, it is not clear which):   money laundering (18 U.S.C. § 1956), monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), foreign transport of stolen money (18 U.S.C. § 2314), mail fraud (18 U.S.C. § 1341), and wire fraud (18

1   U.S.C. § 1343).   To properly plead a RICO predicate act, the act must be pled with

2   the specificity that would normally be required if it was asserted as an independent

3   claim.   *See*, *e.g.*, *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d

4   1134, 1148-49 (C.D. Cal. 2011) (holding that mail and wire fraud predicates require

5   the heightened pleading of Rule 9(b)); *In re Toyota Motor Corp.*, 785 F. Supp. 2d

6   883, 918-19 (C.D. Cal. 2011) (holding that predicate acts of mail fraud (§ 1341),

7   wire fraud (§ 1343), money laundering (§ 1956), and interstate transportation of

8   more than $5,000 knowing the same to have been taken by fraud (§ 2314) are

9   "grounded in fraud" and subject to Rule 9(b) pleading requirements).   Plaintiff has

10  failed to do this for any of the alleged predicate acts.

11                               (a)   *Money Laundering*

12          Money laundering under 18 U.S.C. § 1956 is subject to the heightened pleading

13  standard of Federal Rule 9(b).   *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at

14  918-19.   To properly allege money laundering, a plaintiff must plead, *inter alia*, (1)

15  that the defendant knew the money at issue represented proceeds of some form of

16  unlawful activity, *and* (2) that the defendant conducted the transaction with the intent

17  to promote specified unlawful activity or knew the transaction was designed in whole

18  or in part to "conceal or disguise the nature, the location, the source, the ownership,

19  or the control of the proceeds of specified unlawful activity."   18 U.S.C. § 1956(a)(1).

20          Here, Plaintiff does nothing more than conclusorily assert that all defendants

21  engaged in transactions "with the goal of concealing the source of those funds" and

22  "with the intent to further the Khrapunov Racketeering Scheme."   *See* FAC ¶¶ 70-

23  72; 86-88.   Plaintiff fails to offer a single fact to support the theory that any

24  defendant (other than perhaps Viktor Khrapunov) knew the money at issue

25  represented unlawful proceeds or that any defendant conducted any transactions

26  with the intent to conceal the proceeds.   The RICO claim should be dismissed to the

27  extent it is based on this predicate act.

28

(b)     *Illegal Monetary Transactions*

Allegations of monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957) are subject to a heightened pleading standard where they involve fraud, as Plaintiff's claims do.[4]   *See Ayzoukian v. Wash. Mut. Bank*, No. CV 09-01103 RGK (PLAx), 2009 WL 1808390, at *3 (C.D. Cal. June 24, 2009) ("Likewise, to the extent Plaintiff contends that Washington Mutual violated § 1957 because of the fraud, Plaintiff must plead with the specificity required by Rule 9(b)."). Plaintiff's claims fall far short of this standard.

Though Plaintiff generally alleges that transactions occurred using money allegedly taken from Almaty, the FAC fails to specify when the transactions occurred, how they were executed, or which defendants were involved in each transaction, as required. *See Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 912 (E.D. Cal. 2006) (dismissing RICO claim, noting that "[w]holly absent from the complaint is any allegation that [subject] payments were illegal or represented the proceeds of unlawful activity; or that the [] Defendants knew this money was derived from unlawful activity. This cannot serve as a predicate offense under the RICO statute."); *Viviani v. Vahey*, No. 2:10-CV-01445-LRH, 2012 WL 688433, at *3 (D. Nev. Mar. 2, 2012) (dismissing complaint for failure to allege RICO predicate acts, including § 1957, with specificity and noting that "[n]ot only are such generalized allegations facially insufficient under Rule 9, but they fail to include all the essential elements of money laundering under § 1957."); *Lorber v. Winston*, 962 F. Supp. 2d 419, 439, 448 (E.D.N.Y. 2013) (allegations of § 1957 violation as RICO

---

[4]     Plaintiff makes repeated allegations of fraud in the FAC. *See*, *e.g.*, FAC ¶ 2 ("fearing discovery of their fraud, Viktor and Leila fled to Switzerland . . . ."); ¶ 7 ("[The people of Almaty] were victims of Defendants' conspiracies, fraudulent schemes, and acts of racketeering . . . ."); ¶ 39 ("[The Real Estate 1 transfer from Viktor to Leila] was accomplished via a series of fraudulent transactions . . . ."); ¶ 84 ("Each of the Defendants was at the center of and was a principal perpetrator of a fraudulent scheme and is liable under 18 U.S.C. § 1962(a) as a direct and indirect beneficiary of the pattern of racketeering herein alleged.").

1   predicate act did not satisfy Rule 9(b) specificity requirement).

2       Further, Section 1957 has a tracing requirement.   A plaintiff must plead facts

3   plausibly suggesting that money used in the United States is traceable to the

4   proceeds of fraudulently obtained funds.   *See Chao*, 706 F.3d at 980; *United States*

5   *v. Rutgard*, 116 F.3d 1270, 1292-93 (9th Cir. 1997) (overturning § 1957 conviction

6   because government failed to prove that the defendant made a deposit of $10,000 of

7   criminally-derived proceeds, or that the fraudulently-derived proceeds later left the

8   defendant's bank account).   Here, Plaintiff has failed to articulate any such facts,

9   much less facts sufficient to satisfy Rule 9(b).

10                   (c)   *Foreign Transportation of Stolen Funds*

11       Plaintiff fails to plead the predicate act of transporting stolen funds.   Section

12   2314 prohibits the knowing transportation in interstate or foreign commerce of

13   $5,000 or more of stolen funds.   18 U.S.C. § 2314.   Section 2314 requires tracing.

14   *See United States v. Lazarenko*, 564 F.3d 1026, 1040 (9th Cir. 2009).   But Plaintiff

15   fails to articulate any facts tracing any allegedly illicit money out of Kazakhstan into

16   the United States, let alone *knowing* transportation of illicit money.   Instead, the

17   FAC makes only conclusory statements (*e.g.*, FAC ¶ 74), which should be

18   disregarded.   *See Iqbal*, 556 U.S. at 664.

19                   (d)   *Mail and Wire Fraud*

20       Plaintiff also fails to allege its mail and wire fraud predicate acts with

21   sufficient particularity to satisfy Rule 9(b), or even the notice pleading standard.

22   *See Nunag-Tanedo*, 790 F. Supp. 2d at 1148-49 (holding that Rule 9(b) applies to

23   mail and wire fraud as RICO predicate acts).   To satisfy Rule 9(b), a plaintiff must

24   plead more than general allegations that the defendant used the mails or wires.   It

25   must allege when the mails or wires were used, and how the use of the mails or

26   wires furthered a scheme to defraud.   *See id.* at 1149.   It must also identify the

27   parties to the misrepresentations.   *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550,

28   558 (9th Cir. 2010) (wire fraud allegations failed to satisfy Rule 9(b) particularity

requirement where plaintiffs did not allege which of them made the telephone calls to purchase alleged bait products, and mail fraud allegations failed to satisfy Rule 9(b) where plaintiffs failed to allege any specific mailings).

Here, Plaintiff alleges only that unspecified defendants "knowingly us[ed] the mails and wires to transfer illegally obtained funds into and within the United States, for the purpose of furthering the Khrapunov Racketeering Scheme . . . ."   FAC ¶¶ 76, 92.   Plaintiff does not provide any detail about who used the mails or wires, how they were used, when they were used, or in what way their use furthered the purported scheme, which is fatal to this predicate act.   *See Nunag-Tanedo*, 790 F. Supp. 2d at 1149.

(e)   *Conspiracy*

Finally, Plaintiff alleges conspiracy (18 U.S.C. § 371) as a predicate act. *See, e.g.*, FAC ¶¶ 75, 91.   However, a Section 371 conspiracy cannot be a RICO predicate.   *See* 18 U.S.C. § 1961(1) (listing possible RICO predicates and not including conspiracy).

4.   <u>Plaintiff Fails to Allege That the Moving Defendants Intended to Further the Criminal Endeavor, as Required for a RICO Conspiracy Claim</u>

Because Plaintiff fails to state a claim for primary violations of RICO, its RICO conspiracy claim must also be dismissed.   *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO.").   But even assuming *arguendo* that Plaintiff properly pled a primary RICO violation, it has still insufficiently alleged a RICO conspiracy pursuant to 18 U.S.C. § 1962(d).

To plead a RICO conspiracy, a plaintiff must allege either an agreement to violate the substantive provisions of RICO, or that the defendants agreed to commit or participate in a violation of two or more predicate offenses.   *See Howard*, 208 F.3d at 751 (affirming dismissal of RICO conspiracy claim).   In addition,

1  "conspiracy to violate RICO requires a showing that defendant 'was aware of the

2  essential nature and scope of the enterprise and intended to participate in it.'"

3  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v.*

4  *Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1998)).

5        Here, Plaintiff alleges that unspecified defendants "engaged and conspired to

6  engage in acts in the United States to further the goals of their criminal enterprise, in

7  violation of U.S. law."   FAC ¶ 69.   Beyond this vague allegation, there is nothing

8  in the FAC to support the claim that each moving defendant agreed to further a

9  criminal endeavor or to participate in at least two predicate acts.   Conclusory

10  statements that all defendants conspired to and engaged in all the substantive

11  offenses do not state a claim.   *See Stewart v. Wachowski*, No. CV 03-2873 MMM

12  (VBKx), 2005 WL 6184235, at *14 n. 73 (C.D. Cal. June 14, 2005) ("Stewart's

13  § 1962(d) claims fail because she does not allege the nature of the conspiratorial

14  agreement among . . . defendants and does not allege direct participation by the

15  defendants in the commission of at least two predicate acts."); *Alves v. Players Edge,*

16  *Inc.*, No. 05CV1654WQH (CAB), 2007 WL 6004919, at *13 (S.D. Cal. Aug. 8,

17  2007) ("A RICO complaint which merely implies with the conclusory allegation of a

18  conspiracy that a defendant is responsible for someone else's fraudulent conduct is

19  insufficient.") (quoting *TransFirst Holdings, Inc. v. Phillips*, No. 3:06–CV–2303–P,

20  2007 U.S. Dist. LEXIS 35590, at * 20 (N.D. Tex. May 18, 2007)).

21     **B.     Because Plaintiff's RICO Claims Should Be Dismissed, Its State-
            Law Claims Should Be Dismissed As Well**
22

23        Because Plaintiff's RICO claims fail, the Court should dismiss the remaining

24  state-law claims for lack of federal jurisdiction.   *See Kennedy v. Full Tilt Poker*, No.

25  CV 09-07964 MMM (AGRx), 2010 WL 3984749, at *3 (C.D. Cal. Oct. 12, 2010)

26  (declining to exercise jurisdiction over non-federal claims after dismissing RICO

27  claim); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, --F.Supp.2d--, No. 13

28  CIV. 6521 (DLC), 2014 WL 2050610, at *9 (S.D.N.Y. May 19, 2014) (same).   The

1   Supreme Court has held that "if the federal claims are dismissed before trial, even
2   though not insubstantial in a jurisdictional sense, the state claims should be dismissed
3   as well."   *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

4     Even if Plaintiff's state-law claims are not dismissed for lack of federal juris-
5   diction, its UCL claim should be dismissed for failure to state a claim.   *First*, Plaintiff
6   alleges UCL violations for conduct occurring outside California (FAC ¶ 100), which
7   cannot form the basis of a UCL claim.   *See Norwest Mortgage*, 72 Cal. App. 4th at
8   225 (rejecting UCL claim "for injuries suffered by non-California residents, caused
9   by conduct occurring outside California's borders, by defendants whose headquarters
10  and principal places of operations are outside of California").   *Second*, Plaintiff has
11  no standing to bring a UCL claim.   To have standing to assert a UCL claim, a plaintiff
12  must be "a *person* who has suffered *injury in fact* and has lost money or property as
13  a result of the unfair competition."   Cal. Bus. & Prof. Code § 17204 (emphasis
14  added).   Cities are not "persons" under the UCL and thus cannot assert UCL claims.
15  *See In re Cell Tower Litig.*, 807 F. Supp. 2d 928, 945 (S.D. Cal. 2011), *aff'd in part*
16  *& rev'd in part on other grounds*, No. 3:07-cv-00399-BEN-WVG (9th Cir. Aug. 14,
17  2014) (holding that a city was not a person for the purposes of a UCL claim).   *Third*,
18  "[t]here must be a nexus between the alleged unfair competition and a plaintiff's
19  alleged injury."   *See Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 644 (C.D. Cal.
20  2014).   While Plaintiff alleges that, "[a]s a direct and proximate result of violations
21  by the Defendants of [the UCL], Almaty has suffered damages . . .," this legal
22  conclusion is unsupported by any facts.   FAC ¶ 102.   Plaintiff's *ipse dixit* is
23  insufficient and nonsensical; the moving defendants' alleged conduct in California
24  did not cause a purported decade-old injury to Plaintiff in Kazakhstan.

## Conclusion

26    For all the foregoing reasons, the moving defendants respectfully request that
27  the Court dismiss the FAC in its entirety with prejudice because it is deficient in
28  ways that cannot be cured by additional amendment.

1

2    DATED: August 15, 2014                JAN LAWRENCE HANDZLIK, APC

3

4

5                                          By /s/ Jan L. Handzlik

6                                              Jan L. Handzlik

7                                          Attorney for Defendants Elvira Khrapunov
                                           a/k/a Elvira Kudryashova; Dmitry
8                                          Kudryashov; RPM USA, LLC; RPM-
                                           Maro LLC; Maro Design LLC; Haute
9                                          Hue LLC; 628 Holdings LLC; Candian
                                           International Ltd.; Elvira Kudryashova as
10                                         Trustee of The Kasan Family Trust; and
                                           Dmitry Kudryashov as Trustee of The
11                                         Kasan Family Trust

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28