JAN LAWRENCE HANDZLIK, APC
Jan L. Handzlik (Bar No. 047959)
1437 12th Street, #B
Manhattan Beach, CA 90266-6138
Telephone: (310) 504-0699
Facsimile: (310) 921-8709
jhandzlik@handzliklaw.com

Attorney for Defendants Elvira Khrapunov a/k/a
Elvira Kudryashova; Dmitry Kudryashov; RPM USA,
LLC; RPM-Maro LLC; Maro Design LLC; Haute
Hue LLC; 628 Holdings LLC; Candian International
Ltd.; Elvira Kudryashova as Trustee of The Kasan
Family Trust; and Dmitry Kudryashov as Trustee of
The Kasan Family Trust

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALMATY, a foreign state,<br><br>Plaintiff,<br><br>-against-<br><br>VIKTOR KHRAPUNOV, an individual; LEILA KHRAPUNOV, an individual; ILIYAS KHRAPUNOV, an individual; MADINA ABLYAZOVA a/k/a MADINA KHRAPUNOVA, an individual; ELVIRA KHRAPUNOV a/k/a/ ELVIRA KUDRYASHOVA a/k/a ELVIRA BALMADANI, an individual; DMITRI KUDRYASHOV, an individual; RPM USA, LLC, a New York corporation; RPM-MARO LLC, a New York corporation; MR. FUMIGATION INC., a California corporation; MARO DESIGN LLC, a | Case No. 2:14-cv-03650-FMO-CW<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FILED ON BEHALF OF DEFENDANTS ELVIRA KHRAPUNOV (INDIVIDUALLY AND AS TRUSTEE), DMITRY KUDRYASHOV (INDIVIDUALLY AND AS TRUSTEE), RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.**<br><br>Hearing Date:   November 6, 2014<br>Hearing Time:   10:00 a.m.<br>Judge: Honorable Fernando M. Olguin |

1   California corporation; HAUTE HUE
2   LLC, a California corporation; 628
3   HOLDINGS LLC, a California
    corporation; CANDIAN
4   INTERNATIONAL LTD., a British
5   Virgin Islands corporation; ELVIRA
    KUDRYASHOVA AS TRUSTEE FOR
6   THE KASAN FAMILY TRUST;
    DMITRI KUDRYASHOV AS
7   TRUSTEE FOR THE KASAN
8   FAMILY TRUST; and DOES 1 through
    10,
9

10          Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.  PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED BECAUSE RICO DOES NOT APPLY EXTRATERRITORIALLY ................................ 2

    A.  Each of Plaintiff's Claims Is Based On Alleged Extraterritorial Conduct .................................................................................................. 2

    B.  The Presumption Against Extraterritorial Application Bars Plaintiff's RICO Claims ............................................................................ 3

II.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS* .......................................................................................... 8

    A.  Switzerland Is an Adequate Alternative Forum ..................................... 8

    B.  The Public and Private Interest Factors Favor Dismissal ...................... 9

III.  PLAINTIFF'S RICO CLAIMS ARE TIME-BARRED ................................. 11

IV.  PLAINTIFF'S RICO CLAIMS ARE INSUFFICIENTLY PLED ................. 13

    A.  Plaintiff Has Not Pled Its RICO Claims with Sufficient Particularity ............................................................................................ 13

        1.  Plaintiff Fails to Sufficiently Allege Money Laundering in Violation of 18 U.S.C. § 1956 ..................................................... 14

        2.  Plaintiff Fails to Sufficiently Allege Monetary Transactions in Property Derived from Specific Unlawful Activity in Violation of 18 U.S.C. § 1957 .............................. 16

        3.  Plaintiff Fails to Sufficiently Allege Transportation of Stolen Funds in Violation of 18 U.S.C. § 2314 ......................... 17

        4.  Plaintiff Fails to Sufficiently Allege Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341, and 1343 .................. 18

        5.  Conspiracy .................................................................................. 18

    B.  Plaintiff Has Not Adequately Pled a RICO Enterprise ........................ 19

    C.  Plaintiff Has Not Adequately Pled Causation ...................................... 20

V.  PLAINTIFF'S STATE-LAW CLAIMS ARE IMPROPERLY PLED ........... 23

VI.  IN THE ALTERNATIVE, PLAINTIFF'S DAMAGES SHOULD BE LIMITED TO THE CLAIMS IT NOW SAYS IT IS ALLEGING ............... 24

-i-               Case No.: 14-cv-03650-FMO-CW

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.'S REPLY ISO MOTION TO DISMISS FAC

1     CONCLUSION......................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE
HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.'S REPLY ISO MOTION TO DISMISS FAC

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................. 13

5

*Bono v. Clark,*
  103 Cal. App. 4th 1409 (2002)................................................. 24

6

7

*Boyle v. U.S.,*
  556 U.S. 938 (2009) ................................................................. 19

8

*Crest Const. II, Inc. v. Doe,*
  660 F.3d 346 (8th Cir. 2011) ................................................... 19

9

10

*Delta Alcohol Distribs. v. Anheuser-Busch Int'l Inc.,*
  2014 WL 2815743 (E.D. Mich. Jun. 23, 2014) ......................... 9

11

*Dole Food Co. ,Inc. v. Watts,*
  303 F.3d 1104 (9th Cir. 2002) ................................................. 11

12

13

*Eaves v. Designs for Fin., Inc.,*
  785 F. Supp. 2d 229 (S.D.N.Y. 2011) ..................................... 19

14

*Elec. Prop. East, LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014) ................................................... 15

15

16

*European Community v. RJR Nabisco,*
  No. 11-2475-cv, 2014 WL 1613878 (2d Cir. April 23, 2014) ......... 7, 8

17

*Flowers v. Carville,*
  310 F.3d 1118 (9th Cir. 2002) ................................................. 12

18

19

*Greenwood v. FAA,*
  28 F.3d 971 (9th Cir. 1994) ..................................................... 23

20

*Grimmett v. Brown,*
  75 F.3d 506 (9th Cir. 1996) ..................................................... 13

21

22

*Helfand v. Gerson,*
  105 F.3d 530 (9th Cir. 1996) ................................................... 25

23

*Hemi Grp., LLC v. City of New York, N.Y.,*
  559 U.S. 1 (2010) .................................................................... 20

24

25

*Hourani v. Mirtchev,*
  943 F. Supp. 2d 159 (D.D.C. 2013) ...................................... 6, 23

26

*LaSala v. UBS, AG,*
  510 F. Supp. 2d 213 (S.D.N.Y. 2007)........................................ 9

27

28

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE
HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.'S REPLY ISO MOTION TO DISMISS FAC

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
  431 F.3d 353 (9th Cir. 2005) ...................................................................... 13

*Lugosch v. Congel*,
  443 F. Supp. 2d 254 (N.D.N.Y. 2006) ........................................................ 22

*Maiz v. Virani*
  253 F.3d 641 (11th Cir. 2001) .................................................................... 21

*Mir v. Deck*,
  2013 WL 4857673 (C.D. Cal. Sep. 11, 2013) ............................................ 12

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ...................................................................................... 8

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ................................................................... 14, 18

*Norex Petroleum Ltd. v. Access Indus., Inc*
  540 F.Supp.2d 438 (S.D.N.Y 2007) .............................................................. 6

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
  790 F. Supp. 2d 1134 (C.D. Cal. 2011) ...................................................... 18

*Ravelo Monegro v. Rosa*,
  211 F.3d 509 (9th Cir. 2000) ...................................................................... 11

*Republic of Iraq v. AAB AG*,
  920 F. Supp. 517 (S.D.N.Y. 2013), *aff'd*, --- F.3d ----,
  2014 WL 4637201 (2d Cir. Sept. 18, 2014) ............................................. 6, 7

*Rotella v. Wood*,
  528 U.S. 549 (2000) ............................................................................. 11, 12

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
  549 U.S. 422 (2007) .................................................................................... 11

*Townsend v. Nat'l Arb'n Forum, Inc.*,
  No. CV 09-9325-VBF RNBX,
  2012 WL 12736 (C.D. Cal. Jan. 4, 2012) ................................................... 19

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) .................................................................................... 24

*U.S., ex rel. Modglin v. DJO Global Inc.*,
  No. CV 12-07152 MMM JCGX,
  2014 WL 4783575 (C.D. Cal. Sept. 2, 2014) ............................................. 13

*U.S. v. Chao Fan Xu*,
  706 F.3d 965 (9th Cir. 2013) ......................................................... 4, 5, 8, 17

*U.S. v. Lazarenko*,
  546 F.3d 1026 (9th Cir. 2009) .................................................................... 17

*U.S. v. Ross*,
   No. 13-cr-00638-JST-1, 2014 U.S. Dist. LEXIS 104179
   (N.D. Cal. July 29, 2014) ................................................................. 17

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ........................................................... 10

*Yavuz v. 61 MM, Ltd.*,
   576 F.3d 1166 (10th Cir. 2009) ......................................................... 9

<u>**Statutes**</u>

18 U.S.C. § 1341 .......................................................................................... 18

18 U.S.C. § 1956 .......................................................................................... 14

18 U.S.C. § 1956(a)(1) ................................................................................. 15

18 U.S.C. § 1957 .................................................................................... 16, 17

18 U.S.C. § 1957(a) ...................................................................................... 16

18 U.S.C. § 1957(f)(1) .................................................................................. 16

18 U.S.C. § 2314 .......................................................................................... 17

Cal. Bus. & Prof. Code § 17208 .................................................................. 24

Cal. Civ. Proc. Code § 338(c)(1) ................................................................. 24

Fed. R. Civ. Proc. 9(b) ............................................................................ 13, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The version of the First Amended Complaint ("FAC") described in Plaintiff's Opposition bears little resemblance to the FAC that was actually served on defendants and filed with this Court. The FAC alleges that Viktor Khrapunov stole and looted money from the City of Almaty through the corrupt use of his political power; that Mr. Khrapunov masterminded the sale of 80 pieces of state-owned property for the benefit of his family members and associates; and that there are various criminal cases pending in Kazakhstan against Mr. Khrapunov for his alleged wrongdoing in that country. Plaintiff claims damages in excess of $300 million, the full value of the assets allegedly stolen from the City of Almaty by Mr. Khrapunov and his co-conspirators.

Plaintiff's Opposition, on the other hand, describes an alternate FAC that is wholly unconcerned with defendants' alleged foreign wrongdoing. Plaintiff states that "Defendants' initial embezzlement and movement of funds to Switzerland, while part of the story, is not the basis for this lawsuit," and that it seeks redress only for the "wrongful acts that have occurred – and are ongoing – in the United States." What Plaintiff now describes bears little, if any, resemblance to the *actual* FAC. Without the foreign conduct alleged in the actual FAC, each of Plaintiff's asserted RICO predicate acts fails. Without the foreign conduct alleged in the actual FAC, Plaintiff's damages could not begin to approach $300 million and would be limited only to the funds associated with two residential properties.

Likewise, Plaintiff mischaracterizes the extent of the moving defendants' alleged conduct in the U.S. For example, Plaintiff asserts that "Defendants began systematically purchasing and re-selling multi-million dollar estates located in Beverly Hills and Studio City, California." A review of the FAC reveals, however, that Plaintiff identifies just four houses, two of which the individual moving defendants still own and that were purchased with the proceeds from the sale of the

1   first two.    Buying two homes to live in hardly constitutes "systematically

2   purchasing and re-selling multi-million dollar estates."    Plaintiff fundamentally

3   mischaracterizes its pleading because that is the only way the FAC – already

4   Plaintiff's second bite at the apple – survives moving defendants' Motion.   The

5   inherently foreign nature of the FAC is apparent on its face.

6     The presumption against extraterritorial application of RICO mandates

7   dismissal of Plaintiff's core claims.   The *entire basis* of Plaintiff's claims is that a

8   former *Kazakh* official committed illegal acts under *Kazakh* law while in

9   *Kazakhstan*.  No court has ever found that RICO applies to an action with U.S.

10   contacts as minimal as those alleged in the FAC.   Further, this action should be

11   litigated in Switzerland, an adequate alternative forum for Plaintiff's claims.   Each

12   factor of the *forum non conveniens* analysis favors dismissal here.   Even setting

13   aside the foreign nature of the allegations in the FAC, Plaintiff has failed to properly

14   plead its claims.   Each of Plaintiff's claims is time-barred, and none is pled with the

15   requisite specificity.   Plaintiff attempts to excuse its lack of specificity by falsely

16   asserting that "discovery has not yet opened."   In fact, discovery opened over two

17   months ago, but Plaintiff has deliberately chosen not to serve any.

18     There is simply no basis for this action to proceed in this Court.   Given that

19   Plaintiff has already had one chance to cure its pleading defects, moving defendants

20   respectfully request that the Court dismiss the FAC without leave to amend.

21   <u>**Argument**</u>

22   **I.   PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED BECAUSE
      RICO DOES NOT APPLY EXTRATERRITORIALLY**

23     **A.   Each of Plaintiff's Claims Is Based On Alleged Extraterritorial
         Conduct**

24     From the very first page, the FAC makes clear that this is a case about

25   misconduct in Kazakhstan and Switzerland.   "From 1997 to 2004, Viktor, Leila,

26   Iliyas, Elvira, and their co-conspirators systematically stole and looted money from

27   Almaty as a result of Viktor's corrupt use of his political power.  In 2007, fearing

28

1  discovery of their fraud, Viktor and Leila fled to Switzerland, where Iliyas and

2  Elvira resided at the time, and attempted to launder and hide the stolen money in

3  Switzerland."   FAC ¶ 2; *see also id*. ¶ 121.   Each purported RICO predicate acts in

4  the FAC necessarily relies on the wrongfulness of this alleged foreign conduct to

5  give rise to any potential liability.   All the money sought by Plaintiff comes from

6  the foreign conduct alleged in the FAC:   "In total, the Khrapunov Racketeering

7  Enterprise is believed to have illegally acquired over 80 pieces of real estate, valued

8  at approximately $300 million, from Almaty and its people."   *Id*. ¶ 38.

9      Despite these black and white allegations littered throughout the FAC,

10  Plaintiff now claims that "Defendants' initial embezzlement and movement of funds

11  to Switzerland, while part of the story, is not the basis for this lawsuit."   Opp. at

12  1:26-27.   The reason for this denial is clear:   Plaintiff seeks to avoid the bar to the

13  extraterritorial application of RICO by attempting to jam the square peg of alleged

14  foreign political corruption into the round hole of domestic conduct.   If Plaintiff's

15  statement were taken at face value—that is, if this Court simply considered

16  defendants' alleged domestic conduct—Plaintiff's entire suit would crumble.

17  Neither of Plaintiff's RICO claims can survive without the purportedly wrongful

18  conduct in Kazakhstan and Switzerland.   Plaintiffs' Fourth, Sixth, and Seventh

19  Claims for Relief are based on a fiduciary duty Viktor, as mayor, allegedly owed to

20  the people of Almaty.   *Id*. ¶¶104, 114, 121.   Plaintiff cannot avoid this fact, and it

21  is a primary reason the FAC should be dismissed.

22      **B.   The Presumption Against Extraterritorial Application Bars Plaintiff's RICO Claims**

23      Plaintiff's FAC alleges that Viktor Khrapunov and his wife Leila engaged in

24  self-dealing by causing the sale of 80 pieces of property in Kazakhstan to family and

25  friends.[1]   FAC ¶ 38.   Importantly, none of these sales are alleged to involve U.S.

26

27  [1]   In its Opposition, Plaintiff does not deny that its claims ask this Court to decide whether official acts performed by a foreign official within the borders of a foreign

28  state were illegal under the laws of that foreign state.   To that extent, its claims are

-3-

citizens, money, or property, or any other connection to the U.S.   Plaintiff also
alleges that Viktor and his wife and family then fled Kazakhstan and illegally
siphoned $300 million of the proceeds to Switzerland.   Id. ¶ 2.   Again, none of
these activities are alleged to involve U.S. citizens, money, or property, or any other
connection to the U.S.   The only connection any of this alleged scheme has to the
U.S. is that (a) Viktor and Leila's children and their spouses – who were presumably
teenagers at the time of these supposed events – bought four homes in the Los
Angeles area (two of which were used as family homes and two of which the FAC
alleges have already been sold) some *10 years* after these alleged transactions (*id.* ¶¶
56, 57, 59, 60), and (b) their son (who lives in Switzerland) "on information and
belief" made two isolated investments in the U.S. (*id.* ¶¶ 64, 65).   Relying primarily
on *U.S. v. Chao Fan Xu*, 706 F.3d 965 (9th Cir. 2013), Plaintiff argues these *de
minimis* and peripheral contacts with the U.S. is sufficient to apply RICO to the
alleged multi-national scheme.   In point of fact, not a single case – including *Chao*
– supports Plaintiff's position.

   In *Chao Fan Xu,* a group of Chinese nationals committed bank fraud in China
by diverting funds, over the course of many years, from the Bank of China to a
Hong Kong holding company.   *Id*. at 972.   At the same time, the defendants
entered into sham marriages in order to gain U.S. residency and facilitate travel to
the U.S.   *Id*. at 973.   The defendants used their ill-gotten funds to take gambling
trips to Las Vegas and elsewhere using counterfeit U.S. visas and passports.   *Id*.
The defendants' trips were paid for with over $2 million of stolen money wired to
the U.S. from their Hong Kong company.   *Id*.   When the defendants' scheme was
discovered, they fled to the U.S. using their fraudulent passports and immigration
status, and were ultimately caught and convicted on multiple criminal counts,
including RICO.   *Id*. at 973-74.   In challenging their conviction, the defendants

thus nonjusticiable under the Act of State doctrine and should be dismissed for that
reason as well.   Mot., at 14-15.

argued that the claimed conspiracy was extraterritorial and outside the reach of RICO.   *Id*.   The Ninth Circuit disagreed.   It held that, while RICO does not apply extraterritorially, the defendants' extensive contacts with the U.S. as part of the multi-national scheme were a sufficient basis for the RICO conviction.   *Id*. at 978.

As is evident from the above, *Chao Fan Xu* bears almost no resemblance to the facts alleged in this case.   As an initial matter, in *Chao*, the conduct that "bound the Defendants' enterprise to the territorial United States" was "the commission of RICO predicate crimes based on violations of United States immigration laws." *Id*. at 978.   "Specifically, Defendants entered the United States using fraudulent visas and passports.   Defendants traveled within the United States to execute documents in furtherance of their immigration fraud and to open bank accounts.   Finally, Defendants were arrested in Kansas and Oklahoma in possession of these fraudulent immigration documents."   *Id*.   No such allegations are made in the FAC. Defendants here are not alleged to have committed immigration fraud or *any* violation of U.S. law that is not predicated entirely on foreign conduct.   Unlike in *Chao*, where the defendants' RICO violations were independent of any foreign conduct, every RICO predicate identified in the FAC requires a finding that illegal conduct took place in Kazakhstan or Switzerland.   If the Court determines that Viktor Khrapunov's alleged real-estate transactions in Kazakhstan 10 years ago were perfectly proper and lawful, Plaintiff has no RICO claims.

Even more importantly, there is no comparison between the quality and extent of U.S. contacts in *Chao Fan Xu* and the negligible contacts alleged in this case. The *Chao* defendants had extensive contacts with the U.S. during the foreign aspect of their scheme, including entering into sham marriages to gain U.S. residency, fraudulently obtaining U.S. passports and visas to facilitate travel to the U.S., visiting the U.S. to use ill-gotten funds, and transferring funds to U.S. accounts using U.S. intermediaries.   *Id*. at 973.   This activity took place "[d]uring the course of the fund diversions" from the Bank of China and meant that the defendants'

foreign and domestic activities "necessarily conjoined." *Id*. at 973.   In contrast, what Plaintiff characterizes as "the systematic purchase and re-sale of California real estate," Opp. at 10:15, actually consists of four home purchases made *10 years* after the alleged embezzlement, by people lawfully in the U.S.   Indeed, *Chao* itself counsels that such attenuated domestic activities cannot trigger RICO's application: "to the extent [a RICO claim] was predicated on extraterritorial activity, it is beyond the reach of RICO even if the bank fraud resulted in some of the money reaching the United States."   706 F.3d at 978.

Courts have repeatedly granted motions to dismiss RICO claims where the alleged domestic conduct was far more extensive than alleged here.   In *Norex Petroleum Ltd. v. Access Indus., Inc.*, plaintiffs alleged a racketeering and money laundering scheme "*masterminded*" in the U.S. in which U.S. wires were used to bribe foreign officials, extortion was attempted in the U.S., and foreign conduct independently violated U.S. law.   540 F.Supp.2d 438, 443 (S.D.N.Y 2007).   Even so, RICO was found not to apply.   631 F.3d 29, 31 (2d Cir. 2010) (rejecting a RICO claim premised on "numerous acts in the United States ... including mail and wire fraud, money laundering, Hobbs Act violations, Travel Act violations[,] and bribery.").

Likewise, in *Hourani v. Mirtchev*, 943 F. Supp. 2d 159 (D.D.C. 2013), the court held that the domestic contacts were too "isolated" and "peripheral" to support a RICO claim, where a U.S. citizen defendant had granted approval from the U.S. for an extortion scheme in Kazakhstan.   *Id*. at 167.   Such domestic approval and direction of a foreign extortion scheme is more significant U.S.-based conduct than is alleged in the FAC.

And in *Republic of Iraq v. AAB AG*, 920 F. Supp. 2d 517, 545 (S.D.N.Y. 2013), *aff'd*, --- F.3d ----, 2014 WL 4637201 (2d Cir. Sept. 18, 2014), the court dismissed RICO claims that were based on fraudulent attempts to plunder the UN-administered oil-for-food program by submitting contracts for approval in the U.S.

1  and moving funds through U.S. accounts to facilitate the foreign scheme.   Though

2  the plaintiff alleged numerous domestic predicate acts, the court held that allegations

3  of domestic predicates—like Plaintiff has alleged in the FAC—do not overcome the

4  presumption against extraterritorial application of RICO.   *See id.* ("the presence of

5  domestic predicate acts does not necessarily mean a given application of the RICO

6  statute is territorial").

7       Plaintiff repeatedly cites *European Community v. RJR Nabisco*, No. 11-2475-

8  cv, 2014 WL 1613878 (2d Cir. April 23, 2014), *opinion superseded and amended*,

9  764 F.3d 129 (2d Cir. 2014), for the proposition that "where a domestic pattern of

10  racketeering *sufficient to support a RICO claim* is alleged, the existence of

11  additional extraterritorial wrongful conduct does not invalidate that claim."   Opp. at

12  8:9-11 (emphasis added).   But this begs the question.   As Moving Defendants have

13  demonstrated, no such domestic pattern of racketeering activity has been alleged.

14  In that case, the complaint alleged that defendant RJR Nabisco, Inc. ("RJR")

15  "essentially orchestrated a global money laundering scheme from the United

16  States." The wrongful conduct took place in the U.S. and its benefits were directed

17  at the U.S.:

> [T]he Complaint also claims that the schemes themselves were
> directed at the United States and had substantial domestic effects . . .
> The money laundering involved in one portion of the scheme—that
> comprising Russian organized crime and the Bank of New York—
> was largely centered in and operated from Queens, New York, where
> tens of millions of dollars were allegedly laundered. Defendants
> allegedly filed large volumes of false documents with the United
> States Customs Service and the Bureau of Alcohol, Tobacco and
> Firearms in order to deceive these agencies and permit the unlawful
> activity to continue. Finally, the Complaint alleges that the money
> laundering scheme it describes is intertwined with organized crime
> and narcotics trafficking in New York City, that much of the money
> laundering through cigarette sales occurs in New York City, and that
> millions of dollars' worth of real estate have been purchased within
> New York in conjunction with the scheme.

*Id*. at 142.   It was only based on this extensive domestic conduct, including numerous instances of intentionally defrauding U.S. government agencies (like in *Chao*), that the court in *European Community* held the presumption against extraterritorial application of RICO did not apply.

In both *Chao Fan Xu* and *European Community*, U.S.-based conspirators engaged in an ongoing scheme to break U.S. law through conduct occurring in and directed at the U.S. that involved, among other things, actions that defrauded the U.S. government.   Here, the FAC's paltry allegations consist of a handful of transactions conducted by relatives of a Kazakh political figure and the residency of two of these people in California.   No case has ever held that allegations such as these properly state a claim for RICO violations.   Indeed, to do so would vitiate the Supreme Court's recent admonition against extending U.S. law too far.   *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.") (emphasis in original).

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*

Plaintiff's attempt to show that this case should be prosecuted here rather than Switzerland (where proceedings have already been underway for two years) is unpersuasive.

### A.   Switzerland Is an Adequate Alternative Forum

To escape the necessary conclusion that the Swiss courts will provide an adequate alternative forum to adjudicate its claims, Plaintiff mischaracterizes the FAC, arguing it "involves violations of United States law based on conduct that occurred entirely within the United States."   Opp. at 22.   But, as discussed above, that is simply not correct.   The vast majority of Plaintiff's alleged conspiracy is based on conduct that purportedly occurred in Kazakhstan and Switzerland.   *See,*

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.'S REPLY ISO MOTION TO DISMISS FAC

*e.g.*, FAC ¶¶ 19-55.   Indeed, Plaintiff does not dispute that any domestic illegal acts are *entirely derivative* of alleged illegal acts in Kazakhstan and Switzerland. Plaintiff's attempts to distinguish the holdings in *LaSala v. UBS, AG*, 510 F. Supp. 2d 213 (S.D.N.Y. 2007), and *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166 (10th Cir. 2009) are therefore unavailing.   As in those cases, Switzerland is the better forum to adjudicate the disputes here.   *See LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007) (dismissal in favor of Switzerland because Swiss laws are designed to prevent money laundering); *Delta Alcohol Distribs. v. Anheuser-Busch Int'l Inc.*, 2014 WL 2815743, at *7 (E.D. Mich. Jun. 23, 2014) ("[T]he courts of Geneva, Switzerland, are an available and adequate alternative forum.").

Moreover, Plaintiff fails to cite a single case for the proposition that dismissal based on *forum non conveniens* is inappropriate because a plaintiff alleges violations of U.S. law.   Indeed, were this the case, the doctrine would be rendered largely meaningless because virtually every federal case alleges a violation of U.S. law. Rather, the proper inquiry is whether Switzerland's judicial system is available and adequate to provide just and appropriate remedies to litigants.   *See Yavuz*, 576 F.3d at 1177 (finding Switzerland an adequate forum for plaintiff's claims, including a RICO claim, because even though it did not recognize certain specific claims or remedies, Switzerland offered "sufficient procedural protections and substantive avenues for [plaintiff] to hold the defendants liable for their allegedly unlawful business dealings").   Here, Plaintiff does not dispute that the Swiss laws and mechanisms identified in moving defendants' Motion (Mot. At 11:7-22) would allow Plaintiff to prosecute essentially the same claims in Switzerland.

**B.     The Public and Private Interest Factors Favor Dismissal**

Plaintiff also misapplies the private and public interest factors at play in the *forum non conveniens* analysis.   On the private interest factors, Plaintiff offers no response to the fact that four of the six individual defendants reside in Switzerland, including the leaders of the alleged conspiracy, and that the remaining two

individual defendants are Swiss citizens.    Plaintiff also ignores that it will be required to prove that defendants allegedly engaged in over 80 illegal real estate transactions *in Kazakhstan* and then supposedly laundered the money *in Switzerland*.    FAC ¶¶ 24-26, 29.    The overwhelming majority of the documents and witnesses pertaining to these foundational allegations will be in Kazakhstan and Switzerland, not California.    Nor does Plaintiff deny it will be exponentially more costly and inconvenient to bring documents concerning 80 alleged transactions and witnesses (assuming they are even willing to come) from Kazakhstan to California, rather than to Switzerland.    In contrast, there will be little burden and expense in transmitting documents concerning four home purchases from here to Switzerland.

Plaintiff's argument concerning the public interest factors is equally meritless. Although Plaintiff candidly acknowledges "the already overwhelming congestion of the courts" in this district (Opp. at 24:22), it asks the Court to devote time and resources adjudicating acts that predominantly occurred overseas under foreign law. This district has little interest in adjudicating a dispute between a foreign city and predominantly foreign defendants about conduct that predominantly occurred in foreign countries.    *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) ("The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal.").

Moreover, while Plaintiff admits that "some analysis of foreign law may be required" (Opp. at 24:14-15), this conveniently understates the burden.    The Court will be required to adjudicate the legality of 80 real estate transactions in Kazakhstan under Kazakh law as it existed over 10 years ago.    Many of the witnesses will likely require interpreters and most of the documents will have to be translated from Kazakh or Swiss to English.    And because most of the evidence resides overseas, there are likely to be issues around gaining access to confidential information in other countries, particularly when the Court does not have the power to compel unwilling witnesses in other countries to testify.    There is simply no

Case No.: 14-cv-03650-FMO-CW

1  reason to impose this kind of burden on the Court on the basis of four home

2  purchases, when it is undisputed that the Swiss courts have already been dealing

3  with these same allegations for two years.[2]   *See* FAC ¶ 35.

4  **III.   PLAINTIFF'S RICO CLAIMS ARE TIME-BARRED**

5       Plaintiff filed this action on May 13, 2014 (Dkt. No. 1), and does not dispute

6  that the applicable statute of limitations for a civil RICO claim is four years.   *See*

7  Mot. at 15.   Nor does Plaintiff dispute that the RICO limitations period began to run

8  when Plaintiff knew or should have known of its injury.   *See* Mot. at 15 (*citing*

9  *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).   And Plaintiff does not deny that it

10  knew of the injury caused by the wrongdoing it alleges no later than 2007.   *See*

11  Mot. at 16.   But rather than accept the logical conclusion of dismissal, Plaintiff

12  asserts that its otherwise stale RICO claims are not time-barred because: (1) the

13  alleged wrongdoing is part of a conspiracy that is "continuing in nature" (Opp. at

14  20); and (2) the statute of limitations did not begin to run "until [plaintiff] knew or

15  should have known of the racketeering activity within the United States."   Opp. at

16  20-21.   Both of these arguments mischaracterize the law.

17       *First*, Plaintiff's "continuing wrong" theory is legally incorrect.   The

18  Supreme Court has held that the discovery of Plaintiff's injury, *not* the ongoing

19  nature of any alleged conspiracy, starts the RICO limitations period.   *See Rotella*,

20  528 U.S. at 555 ("discovery of the injury, not discovery of the other elements of a

21  _____
[2]     None of plaintiff's authority supports a different result here.   In *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000), the underlying contracts were entered into in the United States, meaning that the United States had "substantial relation to the action," something not present in plaintiff's Kazakhstan-focused conspiracy.   The Supreme Court found *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007) to be "a textbook case for immediate *forum non conveniens* dismissal," in part because of "proceedings long launched in China" analogous to the Kazakh and Swiss proceedings plaintiff concedes are pending in this case.   *Sinochem*, 549 U.S. at 435.   And *Dole Food Co. ,Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) was a case where the defendants "knew their scheme would injure" a U.S. corporation and "the primary – indeed the only – intended audience of the defendants' [allegedly unlawful] communication was Dole U.S., headquartered in California."   *Dole Food Co.*, 303 F.3d at 1115-17.

1   claim, is what starts the clock" for a civil RICO action).   Even Plaintiff's *own*

2   authority disproves its argument.   In *Mir v. Deck*, 2013 WL 4857673 (C.D. Cal.

3   Sep. 11, 2013), the court dismissed a RICO claim as time-barred in a case where a

4   party similarly attempted to avoid the import of the undisputed facts by making

5   conclusory allegations of "a grand conspiracy that somehow connects the conduct"

6   of the defendants and continues to the present day.   *Id.* at *6.   And in *Flowers v.*

7   *Carville*, 310 F.3d 1118 (9th Cir. 2002), a case involving defamation and related

8   claims under Nevada law, the Ninth Circuit *rejected* plaintiff's continuing wrong

9   theory: "The only thing 'continuing' about this tort was [plaintiff]'s protracted

10   failure to bring a lawsuit when she had the chance."   *Flowers*, 310 F. 3d at 1126.

11         So it is here.   Plaintiff alleges that Viktor Khrapunov violated Kazakh law by

12   orchestrating the auction of dozens of pieces of state-owned real estate to his family

13   at artificially suppressed prices between *1997* and *2004* – more than *ten* years ago.

14   FAC, ¶¶ 24-26.   The FAC confirms that Plaintiff knew of the injury caused by this

15   alleged wrongdoing no later than 2007 – over *seven* years ago.   *See* FAC ¶ 33.

16   Contrary to Plaintiff's incorrect legal theory, its RICO claims are time-barred.

17         *Second*, Plaintiff's alternative theory – that the RICO statute did not begin to

18   run until Plaintiff knew or should have known about racketeering activity occurring

19   within the U.S., as opposed to in Kazakhstan and Switzerland – is equally infirm.

20   This theory contradicts the Supreme Court's holding in *Rotella*, which made clear

21   that pattern discovery is not the rule for accrual of claims under RICO.   *Rotella*,

22   528 U.S. at 555-56 (a pattern discovery rule "would patently disserve the

23   congressional objective of . . . rewarding the swift who undertake litigation in the

24   public good.").   Even if Plaintiff had correctly stated the law – which it has not – it

25   does not allege a RICO conspiracy that began in the U.S. in 2010, when certain

26   defendants are alleged to have "purchase[d] a luxurious single-family home."

27   FAC, ¶ 56.   Plaintiff's alleged RICO conspiracy is expressly based on acts that

28   "from 1997 to 2004," when certain defendants are alleged to have "systematically

-12-

1  stolen and looted money from Almaty as a result of [Mr. Khrapunov]'s corrupt use

2  of his political power."   FAC, ¶ 2.

3     Plaintiff's authority again confirms the RICO statute of limitations begins to

4  run when it knows or should have known of its injury, and makes no distinction

5  between whether that injury occurred in the U.S. or elsewhere.   *See Living Designs,*

6  *Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005)

7  (limitations period runs "when a plaintiff knows or should know of the injury which

8  is the basis for the action."); *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996)

9  (dismissing claim as time-barred because plaintiff "kn[ew] or should know that she

10  ha[d] been injured" more than four years prior to filing action).[3]   Plaintiff's FAC

11  shows that its RICO claims are time-barred.

## IV.   PLAINTIFF'S RICO CLAIMS ARE INSUFFICIENTLY PLED

### A.   Plaintiff Has Not Pled Its RICO Claims with Sufficient Particularity

     Plaintiff does not contest that the heightened pleading standard of Federal

Rule 9(b) applies to its claims.   Opp. at 15:26-16:2.   Instead, Plaintiff advances

two justifications for its insufficient pleadings.

     Plaintiff first argues that "conditions of a person's mind may be alleged

generally."   Opp. at 16:17 (*quoting* Fed. R. Civ. Proc. 9(b)).   But Plaintiff must

still satisfy the *Iqbal* and *Twombly* standard by pleading *plausibly*.   *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009); *U.S., ex rel. Modglin v. DJO Global Inc.*, No. CV

12-07152 MMM JCGX, 2014 WL 4783575, at *16 (C.D. Cal. Sept. 2, 2014)

("knowledge must still be pleaded sufficiently to make entitlement to relief

plausible.") (quoting *Owens v. Bank of Am., N.A.*, No. 11–cv–4580–YGR, 2013 WL

---

[3]   Implicitly acknowledging the weakness of its arguments, Plaintiff contends that "the statute of limitations is equitably tolled because Almaty has worked diligently to obtain information relating to such transactions."   Opp. at 21, n. 5.   But Plaintiff fails to explain how this supposed diligence can be reconciled with its failure to serve any discovery on defendants for over two months.   Nor did Plaintiff plead equitable tolling in its FAC.

1  1820769 at *4 (N.D. Cal. Apr. 30, 2013)).  The FAC does not even meet the
2  plausibility pleading standard.

3        Plaintiff also argues that it should be excused from the pleading standards
4  because details regarding "how each transaction was consummated . . . are within
5  the exclusive control of Defendants and thus are not required to be alleged with
6  particularity."  Opp. at 17:25-18:2 (citing *Neubronner v. Milken*, 6 F.3d 666, 672
7  (9th Cir. 1993)).   However, *Neubronner* does not support Plaintiff's position.
8  While the court there noted that Rule 9(b) may sometimes be relaxed with respect to
9  matters exclusively within the opposing party's knowledge, it nonetheless held that
10 the exception "does not nullify Rule 9(b); a plaintiff who makes allegations on
11 information and belief must state the factual basis for the belief."   *Neubronner*, 6
12 F.3d at 672 (citations omitted).   The court went on to affirm the district court's
13 dismissal of the complaint because the fraud claims failed to satisfy even the
14 "relaxed version of Rule 9(b)."   *Id.*   The same result is warranted here.

15       Plaintiff also states that the pleading standards should be relaxed because
16 "discovery has not yet opened."   Opp. at 18:9.   In fact, discovery opened upon the
17 filing of this Motion on August 15, 2014.   Dkt. No. 28 (Initial Standing Order) at
18 III.A.   The Court's Initial Standing Order directs that "discovery shall not be stayed
19 while any motion is pending, including any motion to dismiss," and that "parties are
20 directed to conduct any necessary discovery as soon as possible . . . ."   *Id.* at III.A.
21 Plaintiff has had every opportunity to request discovery but deliberately chose not to
22 do so.   *See Neubronner*, 6 F.3d at 671 (noting that plaintiff had the opportunity to
23 cure defects in the complaint by pursing discovery, but that the plaintiff "did not
24 make the most of that opportunity.").   Plaintiff cannot now plead ignorance to
25 excuse its threadbare allegations.

26            1.   Plaintiff Fails to Sufficiently Allege Money Laundering in
                   Violation of 18 U.S.C. § 1956
27       Plaintiff alleges that defendants laundered money in violation of 18 U.S.C.
28 § 1956.   FAC ¶¶ 70-72; 86-88.   A violation of § 1956 requires the plaintiff to

-14-

plead, *inter alia*, (1) that the defendant knew the money at issue represented proceeds of some form of unlawful activity, *and* (2) that the defendant conducted the transaction with the intent to promote specified unlawful activity or knew the transaction was designed in whole or in part to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."   18 U.S.C. § 1956(a)(1).   Plaintiff's allegations do not plausibly allege that any moving defendant knew the money was derived from unlawful activity, or that any moving defendant intended to promote specified unlawful activity or knew the transaction was designed to conceal the source of the proceeds. The *ipse dixit* allegation that "Defendants further engaged and conspired to engage in money laundering . . . knowing that such funds were stolen from the people of Almaty, with the goal of concealing the source of those funds" (FAC ¶ 71) is not enough.   Plaintiff must allege facts raising its assertion at least to the level of plausible – it has not.   Alleging that the daughter and son-in-law of the former mayor of a foreign city bought homes in Los Angeles County does not come close to a plausible allegation of money laundering.

To the contrary, Plaintiff's allegations are entirely consistent with lawful conduct.   It goes without saying that there is nothing improper about buying a home.   Nor is there anything inherently improper or illegal about buying a home in the name of a single use company or transferring real property to a family trust. Indeed, if this were somehow evidence of nefarious intent – as Plaintiff alleges – hundreds of thousands, if not millions, of people in this country should be subject to suspicion.   Moreover, it is unclear how purchasing a house using a single-purpose entity "conceal[s] the true source of the funds used in the transactions" (Opp. at 17:1-2), when Plaintiff itself concedes that the details of the purchases are plainly available in the public record for all to see.   FAC ¶ 39 ("Elvira is listed in public records as an officer of Defendant 628 Holdings LLC.").   *See Elec. Prop. East, LLC v. Marcus & Millichap Co.*, 751 F. 3d 990, 997-998 (9th Cir. 2014) ("When

companies engage in sale-leaseback transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.") (affirming trial court's granting of motion to dismiss RICO claim where allegations did not tend to exclude an alternative explanation that defendants were engaged in legitimate business dealings).

In addition, Plaintiff does not even attempt to argue that it has adequately identified each moving defendant's role in the alleged money laundering; how the transactions were purportedly designed to conceal the source of the funds; or any other facts that would "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiff's allegations fall far short of satisfying the heighted pleading standard of Rule 9(b).

        2.    <u>Plaintiff Fails to Sufficiently Allege Monetary Transactions in Property Derived from Specific Unlawful Activity in Violation of 18 U.S.C. § 1957</u>

Plaintiff also alleges violations of 18 U.S.C. § 1957.  To show a violation of this Section, a plaintiff must allege that the defendant (1) knowingly engaged or attempted to engage in a monetary transaction, (2) in criminally derived property of a value greater than $10,000, and (3) that the money was derived from specified unlawful activity.  *See* 18 U.S.C. § 1957(a).  A "monetary transaction" is a deposit, withdrawal, transfer, or exchange of funds through or to a financial institution. 18 U.S.C. § 1957(f)(1).

Plaintiff still fails to explain how it has adequately alleged a "monetary transaction" within the meaning of 18 U.S.C. § 1957.  While Plaintiff identifies two of the properties purchased by moving defendants (Opp. at 17:10-22), it still cannot point to anywhere in the FAC that shows these purchases were monetary transactions within the meaning of Section 1957.  The FAC does not allege that money was withdrawn from a financial institution to purchase the four properties.

1  In fact, one of the properties was purchased with the proceeds of the sale of another

2  property.   FAC ¶ 60.   There are no allegations that any of the money used to

3  purchase property in California went anywhere near a financial institution.

4      Plaintiff also attempts to evade the tracing requirement of Section 1957 by

5  noting that *Chao Fan Xu* and *U.S. v. Rutgard* discussed the standard of tracing in the

6  context of a criminal defendant.  Opp. at 18:15-22.   However, Plaintiff does not

7  dispute that tracing is a required element of Section 1957.  *See Chao Fan Xu*, 706

8  F.3d at 992 ("[T]he government was unable to establish the tracing of funds

9  necessary to establish guilt on those underlying [Section 1957] offenses.").

10  Plaintiff also relies on *U.S. v. Ross*, No. 13-cr-00638-JST-1, 2014 U.S. Dist. LEXIS

11  104179, at *19 (N.D. Cal. July 29, 2014), to assert that it is required only to allege

12  that funds were illegally obtained.   Opp. at 18:10-14.   But *Ross* is a criminal case,

13  and is therefore not subject to the civil heightened pleading standard of Rule 9(b).

14      Plaintiff must plead with particularity facts raising a plausible inference that

15  the funds allegedly used by the moving defendants to purchase their homes in Los

16  Angeles came from an illegal source.   The FAC fails to identify a single fact that

17  would plausibly support such an inference and relies instead on nothing more than

18  its own say-so.

19      3.   <u>Plaintiff Fails to Sufficiently Allege Transportation of Stolen Funds in Violation of 18 U.S.C. § 2314</u>

20      Section 2314 concerns the transport of funds that have been stolen, converted,

21  or taken by fraud.   18 U.S.C. § 2314.   Plaintiff again attempts to evade pleading

22  that any money used by the moving defendants can be traced to illegal conduct by

23  pointing out that the authority cited by moving defendants, *U.S. v. Lazarenko*, 546

24  F.3d 1026 (9th Cir. 2009), was a criminal case.   Opp. at 18:28-19:3.   But Plaintiff

25  does not dispute that tracing is a required element of Section 2314.   *See Lazarenko*,

26  564 F.3d at 1040.   Plaintiff must therefore plausibly plead that the funds that are the

27  basis for the Section 2314 predicate act can be traced to stolen money.   It must also

28  plausibly plead that moving defendants knew the funds to be stolen.   18 U.S.C.

-17-

§ 2314.  Plaintiff has failed to do so.  That Plaintiff chose to ignore the Court's directive to begin discovery as soon as the first motion was filed over two months ago does not excuse it from meeting the pleading standards.  *See Neubronner*, 6 F.3d at 671.

### 4.   Plaintiff Fails to Sufficiently Allege Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341, and 1343

To satisfy its pleading burden that moving defendants committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, Plaintiff must allege that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud."  *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1149 (C.D. Cal. 2011).   To satisfy Rule 9(b), a plaintiff must plead more than general allegations that the defendant used the mails or wires.  It must allege when the mails or wires were used, and how the use of the mails or wires furthered a scheme to defraud.  *See id.* at 1149.

Rather than identify facts in its FAC, Plaintiff relies on *Nunag-Tanedo* to argue that "the Ninth Circuit often relaxes the particularity requirement of Rule 9(b) where 'plaintiff[] can not be expected to have personal knowledge of the relevant facts.'"  Opp. at 19:13-15.   But in *Nunag-Tanedo*, the court held that relaxation of the particularity requirement was not warranted because it was not unreasonable to expect plaintiffs to have personal knowledge of the fraudulent communications at issue.  790 F. Supp. 2d at 1149.  So to here.  Plaintiff asserts that it has been investigating defendants for seven years.  *See* FAC ¶ 33.   At very least, Plaintiff must allege facts raising a plausible inference that the mails or wires were used in furtherance of a scheme to defraud.  *Id.* at 1148.   It has not done so.  Indeed, it has failed to identify a single use of the mail or wires by a single defendant.  Plaintiff's RICO claims should be dismissed to the extent they rely on this predicate act.

### 5.   Conspiracy

-18-

Plaintiff fails to address the deficiency in its Section 371 predicate act in any manner.  *See* Mot. at 23:12-15.  Nor has it addressed the deficiencies its Section 1962(d) conspiracy to commit RICO claim.  *See* Mot. at 23:18-24:20.  As such, these claims should be dismissed for the reasons stated in the Motion.

## B.    Plaintiff Has Not Adequately Pled a RICO Enterprise

Plaintiff claims that the FAC "alleges in detail" the enterprise by identifying "an ongoing organization with a common purpose among the Defendants that was and is being used as a vehicle for the commission of multiple RICO predicate acts, and thus amply alleges an associated-in-fact RICO enterprise."  Opp. at 11:23-26. But these detailed allegations are nowhere to be found in the FAC.  Indeed, Plaintiff fails to cite to a single passage of the FAC to support its assertion, instead citing "*See* generally FAC."  Opp. at 12:2.  Both the Court and moving defendants are completely in the dark as to what this "ongoing organization" is, where or how it operates, and who its members are.

Moreover, nowhere in its opposition does Plaintiff address the fact that the FAC fails to identify an ascertainable structure, *Boyle v. U.S.*, 556 U.S. 938, 946 (2009), and fails to plead that the enterprise exists separately from the pattern of racketeering activity.  *See Townsend v. Nat'l Arb'n Forum, Inc.*, No. CV 09-9325-VBF RNBX, 2012 WL 12736, at *7 (C.D. Cal. Jan. 4, 2012) ("A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because the existence of an enterprise at all times remains a separate element which must be proved.") (citation omitted); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354-55 (8th Cir. 2011) (accord).  Alleging an "associated-in-fact" enterprise does not relieve Plaintiff of its obligation to adequately plead these separate elements.

Nowhere in the FAC does Plaintiff allege how decisions were made within the enterprise, the hierarchy of the enterprise, or how the enterprise is distinct from its purported predicate acts.  Conclusory allegations that a group of individuals

-19-

conspired at some unidentified time at some identified place to commit one or more predicate acts is insufficient to allege a RICO enterprise.   *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (dismissing RICO claim where plaintiff "merely allege[d] in a conclusory fashion" that defendants engaged in an enterprise, but failed to "allege any details regarding the hierarchy or organization of the alleged enterprise, or to advance any facts suggesting that the constituent members of the alleged enterprise functioned as a unit.").

Plaintiff simply hopes that repeating the word "enterprise" will allow it to move forward on its pursuit to collect the treble damages unique to RICO (and unique to U.S. law).   However, the more plausible reading of the FAC is that the former Mayor of Almaty's daughter and her husband bought property in the Los Angeles area to live in, used a single-purpose entity to purchase one of the properties, as many people often do, and made certain investments in other companies, again as many people do.   Suffice it to say that if being a member of a family from another country and purchasing a home using a single-purpose entity is a sufficient basis to allege a criminal enterprise, the courts will soon be flooded with frivolous RICO claims.

### C.   Plaintiff Has Not Adequately Pled Causation

To allege a RICO claim, a plaintiff must show that the predicate offenses proximately cause its injury.   *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010).   A predicate offense proximately causes an injury where there is "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 9 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."   *Id.*

The U.S. conduct alleged in the FAC is "too remote" from Plaintiff's alleged injury to support Plaintiff's RICO claims.   The injury allegedly suffered by Plaintiff is that it was deprived of real property and assets.   FAC ¶ 22 ("Viktor plundered the city's wealth and industry to enrich himself, his family, and his co-conspirators, at

the expense of Almaty and its people . . . .").   In its Opposition, Plaintiff now argues that causation is adequately alleged because the transfer of stolen money to Switzerland prevented "Almaty from recovering the funds . . . ."   Opp. at 13:27-28, 14:1.   Even assuming, *arguendo,* that an alleged transfer of funds to Switzerland could have proximately caused Plaintiff's claimed injuries, a subsequent transfer of some of the funds, many years later, to the U.S. is "too remote" to constitute proximate cause.   Indeed, using Plaintiff's logic that any purchase using tainted money re-injures the original victim, any use of money in the U.S. obtained in violation of foreign law, no matter how far in the past the violation occurred, could give rise to RICO liability.   The concept of proximate causation does not provide for such an unbounded scope.

Plaintiff cites to several cases supporting the proposition that money laundering, mail fraud, and wire fraud can proximately cause injury.   Opp. at 12:27-13:26.   That broad principle is not in dispute.   However, none of the cases cited by Plaintiff find proximate causation properly alleged based on claims similar to those in the FAC.   Instead, these cases serve to highlight the disconnect between the *de minimis* U.S. conduct alleged in the FAC and Plaintiff's alleged injury.

In *Maiz v. Virani*, defendants were alleged to have induced investors into a partnership by stating that defendants would purchase real estate with investor funds to develop and re-sell the parcels, using the profits to benefit the partnership.   253 F.3d 641, 674 (11th Cir. 2001).   Instead, plaintiffs alleged that defendants bought real estate at market value, re-sold the parcels at an inflated value to the partnership, and laundered the proceeds to conceal the profits from the investors.   *Id.*   This induced further contributions from plaintiffs because, based on defendants' fraud, they needed to contribute more money to the partnership than they otherwise would have in order to allow the partnership to continue acquiring real estate.   There was thus a "direct relation" between the money laundering and the injury because each instance of money laundering by defendants led to further investments by plaintiffs.

-21-

1  In contrast, Plaintiff here has not alleged that defendants' use of funds caused
2  Plaintiff to lose any additional money or take any further actions whatsoever.

3      Plaintiff also cites *Lugosch v. Congel*, 443 F. Supp. 2d 254, 272 (N.D.N.Y.
4  2006), which again serves to highlight the difference between Plaintiff's allegations
5  and cases where there is a "direct relation" between claims of mail and wire fraud
6  and the alleged injury.  In *Lugosch*, plaintiffs claimed that a property management
7  company defrauded them by overcharging for management and leasing of property,
8  and concealed its wrongdoing by withholding financial reports and providing
9  misleading financial information.  *Id.* at 259.  Plaintiffs alleged defendants used a
10 variety of specific mailings and wirings that contained fraudulent statements to
11 create the impression they were handling the company's affairs appropriately, and
12 thereby furthered the defendants' fraudulent scheme by allowing defendants to
13 continue management of the company's affairs by avoiding detection.  *Id*.   In
14 contrast, Plaintiff here does not allege that any of the U.S. transactions in the FAC
15 allowed defendants to obtain any additional funds from Plaintiff.

16     Also distinguishable is *Executive Committee Representing the Signing*
17 *Petitioners of the Archdiocese of the Western U.S. v. Kaplan*, where the alleged mail
18 and wire fraud was an integral part of the injury.  No. CV 03-8947 FMC (MANx),
19 2004 U.S. Dist. LEXIS 31799 at * 12 (C.D. Cal. Sept. 16, 2004).  In that case,
20 plaintiffs alleged they were induced to make a donation to a church, and that
21 donation was ultimately used for defendants' personal benefit.  *Id.* at *2.  The
22 court found that plaintiffs were injured by being induced to donate money, but that
23 the injury was not complete until the money was used inconsistently with the
24 purpose for which the money was donated.  *Id.* at *11-12.  Thus, when the money
25 was laundered into defendants' personal accounts, there was a "direct relation" to
26 the harm suffered by the plaintiffs.  In contrast, Plaintiff's claimed injury was
27 complete from the moment the City of Almaty's money was misappropriated.

28     Plaintiff has also failed to distinguish the two cases cited by moving

DEFENDANTS ELVIRA KHRAPUNOV, DMITRY KUDRYASHOV, RPM USA, LLC, RPM-MARO, LLC, MARO DESIGN LLC, HAUTE
HUE LLC, 628 HOLDINGS LLC, AND CANDIAN INTERNATIONAL LTD.'S REPLY ISO MOTION TO DISMISS FAC

defendants in support of their lack of causation argument.   In *Oki Semiconductor*, 298 F.3d 768, 774 (9th Cir. 2002), the Ninth Circuit held that an individual who laundered money representing the proceeds of theft was not liable for the plaintiff's loss because the money laundering did not proximately cause the robbery.   Plaintiff notes that *Oki Semiconductor* dealt with vicarious liability, which is not at issue in this case.  Opp. at 14:12-24.  Though that is true, the Ninth Circuit affirmed the district court's holding that mere money laundering was insufficient to proximately cause plaintiff's injury.

Ironically, Plaintiff tries to distinguish the *Hourani* case by pointing out that, in that case, "[t]he alleged predicate acts . . . were extortion and other wrongdoing that overwhelmingly took place in Kazakhstan . . . ."  Opp. at 15:3-5.  Of course, that is precisely what Plaintiff has alleged in the FAC, and *Hourani* held that money laundering did not proximately cause defendant's injury.  *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 167 (D.D.C. 2013) (holding that merely receiving some money in bank accounts and post-extortion money laundering in the U.S. is too "isolated" and "peripheral" to support a RICO claim).

## V.   PLAINTIFF'S STATE-LAW CLAIMS ARE IMPROPERLY PLED

As moving defendants show in their Motion, Plaintiff's state law claims fail for lack of jurisdiction (Mot. at 24:23-25:3); because they are time-barred (*id*. at 15:12-16:28); and because Plaintiff lacks standing to bring a UCL claim (*id.* at 25:4-24).   Plaintiff offers virtually no response to these fatal defects, saying only that its complaint "adequately states claims for RICO violations," and that therefore, "this Court has jurisdiction" to adjudicate its "pendent state law claims."   Opp. at 19-20.  By failing to provide any defense of the timeliness of its state law claims or its standing to bring a UCL claim, Plaintiff has waived its opposition and these claims should be dismissed.  *See, e.g.*, *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (argument waived when party fails to explain contentions and support them with authority).   But even were this not the case, there would be no real defense

-23-

1    that Plaintiff could provide.

2        *First*, Plaintiff's RICO claims fail for the reasons discussed above, thus

3    depriving this Court of subject matter jurisdiction to adjudicate any pendent state

4    law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

5    (if "federal claims are dismissed before trial, even though not insubstantial in a

6    jurisdictional sense, the state claims should be dismissed as well.").   Nor are

7    Plaintiff's state law claims for violations of the UCL, conversion, and conspiracy

8    applicable to what are plainly allegations of extraterritorial misconduct.  Mot. at 9

9    (UCL, conversion, and conspiracy to convert do not apply extraterritorially, and

10   Plaintiff has no prudential standing to pursue claim under UCL premised on

11   extraterritorial conduct).   These are fatal to Plaintiff's claims.

12       *Second*, Plaintiff's allegations show that its state law claims are based on

13   transactions dating back to 1997, and which it discovered no later than 2007.  Mot.

14   at 16.   They are indisputably untimely under each of the applicable statutes of

15   limitations – all triggered by the date of the alleged misconduct or unlawful taking

16   of property.  *See* CAL. BUS. & PROF. CODE § 17208 (four year statute of limitations

17   for UCL claim, starting on date of misconduct); CAL. CIV. PROC. CODE § 338(c)(1)

18   (statute of limitations for conversion and conspiracy to convert is three years); *Bono*

19   *v. Clark*, 103 Cal. App. 4th 1409, 1433 (2002) (statute of limitations for conversion

20   triggered by act of wrongfully taking property).

21       *Finally*, Plaintiff's UCL claim fails for the independent reason that, as a city,

22   it is not a "person" endowed with standing to bring claims under California's UCL.

23   *See* Mot. at 25.   Nor are there any facts to support a nexus between the alleged

24   violations of the UCL and Plaintiff's alleged damages.  *Id.*   Plaintiff's state law

25   claims should all be dismissed.

26   **VI.   IN THE ALTERNATIVE, PLAINTIFF'S DAMAGES SHOULD BE
         LIMITED TO THE CLAIMS IT NOW SAYS IT IS ALLEGING**

27

28       Seeking to avoid dismissal, plaintiff states that "the predicate acts alleged as

the basis for [its] RICO claims are entirely domestic.  The FAC seeks to hold Defendants accountable for the wrongful acts they committed *in the United States*," and that "the FAC alleges an actionable pattern of racketeering activity that took place in the United States (and predominantly within the Central District of California.)"  Opp. at 10.  As discussed above, this is simply not the conspiracy plaintiff has alleged in its pleading, which focuses on alleged abuses of power that took place many years ago in Kazakhstan.  In part for that reason, the entirety of plaintiff's case is fatally flawed and should be dismissed with prejudice.  But if the Court finds that some of the case should move forward, or if the Court grants leave to amend, plaintiff should not be permitted to subsequently deny the truth of its claims that it seeks relief only for predicate acts that are "entirely domestic."  "The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal," *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1996).  Accordingly, should this case move forward at all, Plaintiff should be judicially estopped from subsequently claiming relief for anything other than predicate acts that are "entirely domestic," and the Court should strike any claims for relief based on alleged predicate acts that took place outside the U.S.  *Id.* (holding party estopped from taking position inconsistent with attorney's arguments in related proceeding, as "[j]udicial estoppel seeks to prevent the deliberate manipulation of the courts . . . .").

## Conclusion

For all the foregoing reasons, the moving defendants respectfully request that the Court dismiss the FAC in its entirety with prejudice because it is deficient in ways that cannot be cured by additional amendment.

1 | DATED: October 23, 2014          JAN LAWRENCE HANDZLIK, APC

2

3

4 | By   */s/ Jan L. Handzlik*
       Jan L. Handzlik

5

6 | Attorney for Defendants Elvira Khrapunov
   a/k/a Elvira Kudryashova; Dmitry
7 | Kudryashov; RPM USA, LLC; RPM-
   Maro LLC; Maro Design LLC; Haute
8 | Hue LLC; 628 Holdings LLC; Candian
   International Ltd.; Elvira Kudryashova as
9 | Trustee of The Kasan Family Trust; and
   Dmitry Kudryashov as Trustee of The
10 | Kasan Family Trust

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28