LATHAM & WATKINS LLP
  David J. Schindler (Bar No. 130490)
    *david.schindler@lw.com*
  Manny A. Abascal (Bar No. 171301)
    *manny.abascal@lw.com*
  Kristen M. Tuey (Bar No. 252565)
    *kristen.tuey@lw.com*
  Brigitte E. Mills (Bar No. 281098)
    *brigitte.mills@lw.com*
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

Attorneys for Plaintiff the City of Almaty

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALMATY, a foreign state,<br><br>Plaintiff,<br><br>v.<br><br>VIKTOR KHRAPUNOV, an individual; LEILA KHRAPUNOV, an individual; ILIYAS KHRAPUNOV, an individual; MADINA ABLYAZOVA a/k/a MADINA KHRAPUNOVA, an individual; ELVIRA KHRAPUNOV a/k/a/ ELVIRA KUDRYASHOVA a/k/a ELVIRA BALMADANI, an individual; DMITRI KUDRYASHOV, an individual; RPM USA, LLC, a New York corporation; RPM-MARO LLC, a New York corporation; MARO DESIGN LLC, a California corporation; HAUTE HUE LLC, a California corporation; 628 HOLDINGS LLC, a California Corporation; CANDIAN INTERNATIONAL LTD., a British Virgin Islands corporation; ELVIRA KUDRYASHOVA AS TRUSTEE FOR THE KASAN FAMILY TRUST; DMITRI KUDRYASHOV AS TRUSTEE FOR THE KASAN FAMILY TRUST; and DOES 1 through 10,<br><br>Defendants. | Case No. CV14-3650-CMO-CW<br><br>Assigned To: Hon. Fernando M. Olguin<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER EQUITABLE RELIEF FOR:**<br><br>1) **Violations of RICO (18 U.S.C. §§ 1962(c), 1962(d), 1964);**<br>2) **Breach of Fiduciary Duty;**<br>3) **Conversion and Conspiracy to Commit Conversion;**<br>4) **Fraud and Deceit and Conspiracy to Defraud; and**<br>5) **An Accounting, and Imposition of a Constructive Trust and Equitable Lien.**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   Plaintiff the City of Almaty ("Almaty") hereby alleges the following claims for
2   relief against defendants Viktor Khrapunov ("Viktor"), Leila Khrapunov ("Leila"),
3   Iliyas Khrapunov ("Iliyas"), Madina Ablyazova a/k/a Madina Khrapunova
4   ("Madina"), Elvira Khrapunov a/k/a Elvira Kudryashova a/k/a Elvira Balmadani
5   ("Elvira"), Dmitri Kudryashov ("Dmitri"), RPM USA, LLC, RPM-Maro LLC,
6   Maro Design LLC, Haute Hue LLC, 628 Holdings LLC, Candian International
7   Ltd., Elvira Kudryashova as Trustee of The Kasan Family Trust, Dmitri
8   Kudryashov as Trustee of The Kasan Family Trust, and Does 1 – 10 (collectively
9   referred to as "Defendants").

10  **I.      NATURE OF THE ACTION**

11          1.      This is an action on behalf of the City of Almaty, the largest city in
12  the Republic of Kazakhstan, to recover funds that were stolen by its corrupt former
13  mayor, Viktor, and his co-conspirators, including his wife Leila, their children,
14  Iliyas and Elvira, and the children's spouses, Madina and Dmitri (collectively, the
15  "Individual Defendants"), through a scheme that involved two objectives:  (a) to
16  steal and loot money from Almaty; and (b) to transfer, launder, and hide that stolen
17  money in the United States where they believed it would be out of reach of Kazakh
18  and other governmental authorities (the "Khrapunov Racketeering Enterprise").

19          2.      From 1997 to 2004, Viktor, Leila, Iliyas, Elvira, and their co-
20  conspirators systematically stole and looted money from Almaty as a result of
21  Viktor's corrupt use of his political power.  In 2007, fearing discovery of their
22  fraud, Viktor and Leila fled to Switzerland, where Iliyas and Elvira resided at the
23  time, and attempted to launder and hide the stolen money in Switzerland.  The
24  Kazakh authorities nevertheless continued to investigate Viktor, Leila, Iliyas, and
25  Elvira, and sought the assistance of the Swiss authorities.  In May 2011, the
26  Kazakh authorities began bringing formal criminal charges against Viktor, Leila,
27  and Elvira, and in mid-2012 the Swiss authorities initiated an investigation of
28  Viktor and Leila on suspicion of money laundering.  In November 2012, the Swiss

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

1

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    authorities began freezing assets in Switzerland belonging to Viktor, Leila, Iliyas,
2    and Elvira.

3        3.    In or around 2010, understanding that they could not accomplish their
4    fraud by keeping the stolen money in Switzerland, the Individual Defendants
5    engaged in racketeering activity to launder and hide the stolen money in the United
6    States with Iliyas, Madina, Elvira, Dmitri, and various sham companies and
7    disguised entities.  Upon information and belief, the Individual Defendants
8    selected the United States as the ideal location to launder the stolen proceeds
9    because they believed it was out of reach of the Kazakh authorities.  The United
10   States does not have a mutual legal assistance treaty or extradition treaty with
11   Kazakhstan.

12       4.    The Individual Defendants engaged in racketeering activities in the
13   United States by engaging in money laundering with stolen funds in violation of 18
14   U.S.C. § 1956; transacting in property derived from unlawful activity in violation
15   of 18 U.S.C. § 1957; transporting stolen property in violation of 18 U.S.C. § 2314;
16   mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18
17   U.S.C. §1343.  They did so by acquiring property, including property in the
18   Central District of California, and engaging in business transactions in the names
19   of Iliyas, Madina, Elvira, Dmitri, and/or sham companies and disguised entities in
20   order to hide the true identity of the source of the stolen funds and in order to avoid
21   detection by Kazakh, Swiss and U.S. authorities.  The activities in the United
22   States were essential to the success of the enterprise because without a perceived
23   safe haven for the stolen funds, the Individual Defendants would not have been
24   able to complete their objective of ultimately using the stolen Almaty funds for
25   their personal benefit.

26       5.    The Individual Defendants violated United States law in order to
27   accomplish their goal of being able to secure and use their stolen and ill-gotten
28   gains.  The dual parts of the enterprise were necessarily conjoined – to steal large

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

2

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  sums of money from Almaty, and to get away with it in the United States.  The

2  Individual Defendants are trying to use the United States as a safe haven for

3  international money laundering.  They are trying to do in the United States what

4  they could not do in Switzerland – keep and use money stolen and looted from

5  Almaty, and keep it out of the reach of the Kazakh authorities and the people of

6  Almaty.

7        6.    As set forth herein, Almaty seeks: (a) to hold Defendants, including

8  Viktor, Leila, Iliyas, Madina, Elvira, Dmitri, and their co-conspirators, liable for

9  their laundering and transportation of stolen funds to and within the United States;

10  (b) return of the monies stolen from Almaty and its people, or the return of

11  substitute assets acquired with funds stolen from Almaty and its people, located in

12  the United States; (c) injunctive relief to prevent Viktor, Leila, Iliyas, Madina,

13  Elvira, Dmitri, and their co-conspirators from engaging in any further laundering

14  or other transactions in the United States in violation of federal law involving the

15  proceeds of the looting scheme; (d) imposition of a constructive trust over all

16  assets located within the United States that are traceable, either directly or

17  indirectly, to Viktor and his co-conspirators' systematic looting of public assets

18  rightfully belonging to Almaty and its people and ongoing conspiracy to launder

19  and conceal stolen assets in the United States; and (e) treble and punitive damages

20  for Defendants' myriad violations of the federal anti-racketeering statute, as well

21  as state and federal common law.

22  **II.   THE PARTIES**

23        7.    Plaintiff Almaty is a foreign state pursuant to 28 U.S.C. § 1332(a)(4).

24  Until 1997, Almaty was the capital of Kazakhstan, which is a sovereign state

25  recognized by the Government of the United States of America.  Almaty remains a

26  major commercial and cultural center of Kazakhstan and has the country's largest

27  population.  Almaty has standing to bring this Complaint and sues: (a) in its own

28  right, as the victim of Defendants' unlawful schemes, conspiracies, and acts of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

3

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   racketeering; and (b) in a *parens patriae* capacity as the representative of its

2   people, who were victims of Defendants' conspiracies, fraudulent schemes, and

3   acts of racketeering and who are the rightful owners of funds and assets unlawfully

4   held by the Defendants in the United States.

5        8.   Defendant Viktor was the mayor of Almaty from approximately June

6   16, 1997 until approximately December 2004.  In 2004, Viktor was nominated for

7   the position of governor of the Pavlodar province in northeast Kazakhstan, a

8   position he held until 2007, at which time he was appointed Minister of Emergency

9   Measures.  In late 2007, Viktor announced his retreat from all public functions and

10  his retirement, ostensibly for health reasons.

11       9.   Upon information and belief, in or about 1998, Viktor married

12  Defendant Leila.  Viktor and Leila are citizens of the Republic of Kazakhstan and,

13  upon information and belief, currently reside in Switzerland.

14       10.   Upon information and belief, Defendants Iliyas and Elvira are the son

15  and daughter, respectively, of Leila, and step-son and step-daughter, respectively,

16  of Viktor.

17       11.   Upon information and belief, Iliyas and Madina are citizens of the

18  Republic of Kazakhstan and currently reside in Switzerland.  Upon information

19  and belief, Elvira is a citizen of the Republic of Kazakhstan and of Switzerland,

20  and currently resides in Studio City, California.  Upon information and belief,

21  Dmitri is a citizen of the Russian Federation and currently resides with Elvira in

22  Studio City, California.

23       12.   Upon information and belief, Iliyas is married to Defendant Madina,

24  while Elvira is married to Defendant Dmitri.  Upon information and belief,

25  Defendants Maro Design LLC, Haute Hue LLC, and 628 Holdings LLC are

26  corporations organized and existing under the laws of the State of California.

27  Upon information and belief, Defendants RPM USA LLC and RPM-Maro LLC are

28  corporations organized and existing under the laws of the State of New York.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

4

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   Upon information and belief, Defendant Candian International Ltd. is an offshore

2   corporation organized under the laws of the British Virgin Islands.  Upon

3   information and belief, Defendants Elvira Kudryashova as Trustee of The Kasan

4   Family Trust and Dmitri Kudryashov as Trustee of The Kasan Family Trust have

5   beneficial ownership and control over a property used by Iliyas and/or Elvira in

6   furtherance of the racketeering scheme described below.

7         13.    Upon information and belief, Maro Design LLC, Haute Hue LLC, 628

8   Holdings LLC, RPM USA LLC, RPM-Maro LLC, Candian International Ltd., and

9   The Kasan Family Trust (collectively, the "Entity Defendants") all are owned or

10   controlled by Iliyas and/or Elvira, and were misused by them and the other

11   Individual Defendants in order to carry out the racketeering scheme described

12   below.

13         14.    Almaty is ignorant of the true names of defendants Does 1 through 10

14   (the "Doe Defendants"), inclusive, and therefore sues those defendants by such

15   fictitious names.  Almaty is informed and believes, and on that basis alleges, that

16   the Doe Defendants, inclusive, are responsible for the acts alleged in this

17   Complaint.  When the true names of such fictitious defendants are ascertained,

18   Almaty will seek leave of this Court to amend this Complaint to name those

19   individuals or entities.

20         15.    Almaty is informed and believes, and thereon alleges, that the

21   Defendants, including those named as Doe Defendants, were at all times relevant

22   herein the agents, servants, and/or employees of Defendants, and each of them, and

23   in doing the things herein alleged, were acting at least in part within the course and

24   scope of their authority as such agents, servants, and/or employees of Defendants,

25   and each of them.

26   **III.    JURISDICTION AND VENUE**

27         16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331(a)

28   and 18 U.S.C. § 1964(c) over the First and Second Claims for Relief of this

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

5

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

Complaint for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* and for conspiracy to violate RICO. The Third through Seventh Claims for Relief allege violations of state law and of federal common law. This Court has pendent jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a) because those claims are joined with substantially related claims under RICO and because those claims are so related to the RICO claims in the action that they form part of the same case or controversy under Article III of the United States Constitution and arise from a common nucleus of operative facts.

17. Venue is proper in this District and before this Court pursuant to 28 U.S.C. § 1391(b)(2) because events giving rise to Almaty's claims occurred in this District, including, among other things, Defendants' purchase, in violation of U.S. law, of real estate and other assets located in Beverly Hills and Studio City, California.

18. This Court has personal jurisdiction over Defendants because each of them knowingly committed acts that form the basis of this Complaint in this District, directed or conspired with others to commit acts in this District, and purposely availed themselves of the privileges of doing business in this District, as fully set forth herein.

## IV. FACTUAL ALLEGATIONS

### A. Overview of the Khrapunov Racketeering Enterprise and Conspiracy

19. In 1991, Kazakhstan declared its independence from the former Soviet Union and initiated the process of becoming a free society. Rather than assist their country in embracing this move towards freedom, Viktor and his co-conspirators exploited Viktor's position of trust and authority, stole hundreds of millions of dollars from the people of Almaty and tried to launder, hide and spend this money in the United States.

LATHAM&WATKINS LLP   DC\3629727.2

ATTORNEYS AT LAW
LOS ANGELES

6

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

20.     The Khrapunov Racketeering Enterprise comprised of two interrelated parts.  First, the Individual Defendants conspired together to have Viktor abuse his position of trust as mayor of Almaty to steal from the people of Almaty various state-owned assets cumulatively valued at over $300 million.  Second, the Individual Defendants conspired together to transport and to launder those stolen assets out of Kazakhstan and to the United States, among other places, in order to escape the reach of the Kazakh authorities.  The transportation and laundering of the stolen assets was essential to the success of the enterprise because it would enable the Individual Defendants to use the assets that had been stolen for their own personal benefit.

21.     Viktor became mayor of Almaty on or about June 16, 1997, and remained in that position until approximately December 2004.  Before Viktor assumed the office of the mayor of Almaty, he took an oath of office to strictly obey the Constitution and laws of the Republic of Kazakhstan.  Among other things, Viktor expressly and impliedly promised and represented that he would fulfill his fiduciary duties to the people of Almaty, would honor his obligation to provide honest services, and would not convert money, property, or assets belonging to Almaty for his own use or that of his family, friends, or associates.

22.     In fact, over the span of more than six years, Viktor repeatedly and systematically violated those promises and abused his position of power and authority to steal millions of dollars of real property and assets from the people of Almaty and to launder and conceal that money in the United States and elsewhere in the hopes of escaping prosecution.  Aided and abetted by his wife, children, associates, accomplices, and other co-conspirators, Viktor plundered the city's wealth and industry to enrich himself, his family, and his co-conspirators, at the expense of Almaty and its people, and Defendants now seek to conceal and enjoy their ill-gotten gains in the United States.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

7

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

23.    Defendants carried out the scheme through various means, including: (a) secretly acquiring property owned by Almaty through fictitious and sham entities for a fraction of what the property was worth, then selling the property for tens of millions of dollars in illicit profits; (b) acquiring property without even paying for it through sham transactions; and (c) secretly acquiring property at a discount then taking illicit government action that vastly increased the value of the property solely to benefit Viktor and his co-conspirators.

24.    As mayor, Viktor was entrusted with the right to cause state-owned real estate to be sold to private parties at auction pursuant to established legal procedures, the right to cause privately-owned real estate to be taken for purported state use, and the right to control who could do business in Almaty through the granting of licenses, concessions, and permits.

25.    In his capacity as mayor of Almaty, Viktor caused certain state-owned real estate parcels to be put up for auction.  However, in violation of Kazakh law, and in violation of his duties to the people of Almaty, Viktor, aided and abetted by others involved in the Khrapunov Racketeering Enterprise, corrupted those auctions by: (a) improperly influencing and directing the actions of the individuals responsible for administering the auctions; and (b) improperly causing confidential bid information to be disclosed to entities controlled by his co-conspirator Leila to allow these entities to adjust their bids.

26.    Through these corrupt activities, Viktor and Leila succeeded in purchasing real estate and other assets put up for auction by Almaty, often at artificially suppressed prices.  In some instances, Viktor thereafter caused development permits to be issued in connection with the purchased sites, vastly increasing the market value of the real estate, which Viktor, Leila, and/or their co-conspirators then re-sold at a significant profit.  In other instances, entities controlled by Leila simply ignored restrictions placed on parcels sold at auction in order to resell the parcels at a significant profit.  In addition, in some instances,

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

8

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    entities controlled directly or indirectly by Viktor and Leila simply failed to pay for

2    the assets they acquired and subsequently re-sold.

3          27.    Viktor thus conspired with the other Individual Defendants to use his

4    position of power and authority to convert and cause to be converted, to his use

5    and that of his family, friends and associates, money, funds and property rightfully

6    belonging to Almaty and its people.

7          28.    After wrongfully appropriating assets belonging to Almaty and its

8    people, Viktor, Leila, Elvira, and Iliyas, along with their families, friends,

9    associates, and accomplices in the Khrapunov Racketeering Enterprise, devised

10   and executed schemes to systematically and secretly transfer their ill-gotten gains

11   out of Kazakhstan in an effort to escape the reach of the Kazakh authorities.  To

12   that end, the Individual Defendants ultimately transferred millions of dollars of

13   stolen funds into the United States in violation of U.S. law through accounts, sham

14   companies, and disguised entities owned or ultimately controlled by Elvira, Dmitri,

15   Iliyas, and/or Madina.

16         29.    The Individual Defendants first transferred the stolen funds to

17   Switzerland, where Iliyas and Elvira were residing, using accounts and sham

18   entities owned or ultimately controlled by Leila, Iliyas, Elvira, and/or their co-

19   conspirators.  Leila, Iliyas, and Elvira received in Switzerland hundreds of millions

20   of dollars transferred out of Kazakhstan by Viktor and Leila and laundered through

21   various offshore holding companies to appear legitimate.

22         30.    Shortly thereafter, Leila, Iliyas, and Elvira began transferring portions

23   of the ill-gotten proceeds out of Switzerland.  They again laundered stolen funds

24   through various offshore holding companies, and ultimately transferred those

25   stolen funds into the United States in violation of U.S. law via accounts and

26   entities owned or ultimately controlled by Elvira, Dmitri, Iliyas, and/or Madina.

27   Iliyas, Madina, Elvira, and Dmitri conspired with the other Individual Defendants

28   to use the stolen funds they brought to the United States to purchase real estate and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

9

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

assets in California and New York, to fund U.S. holding companies owned or controlled by Leila, Iliyas, Madina, Elvira, and/or Dmitri, and to invest in United States businesses.  Upon information and belief, the Individual Defendants increased their efforts to transfer stolen funds to the United States following the Swiss authorities' investigation of Viktor and Leila in 2012, which led to the Swiss authorities freezing Swiss bank accounts held by the Individual Defendants.

31.     Viktor and Leila took numerous steps to conceal their looting for years from Almaty and the Kazakh authorities.  Among other things, Viktor and Leila each filed false annual tax returns with the Tax Committee of the Ministry of Finance of Kazakhstan, Kazakhstan's taxation authority, which concealed the millions of dollars in monies, properties, and assets acquired through the Khrapunov Racketeering Enterprise. According to their 2007 tax returns, which required Viktor and Leila to list their entire net worth accumulated through all sources as of December 31, 2007, Viktor and Leila reported a combined net worth of approximately $113,298 (13,671,665 ₸), in addition to three vehicles, five modest pieces of real estate, and two parking stalls.

32.     Despite claiming to have a total net worth of less than $120,000, by systematically looting and plundering assets belonging to the people of Almaty, Viktor and Leila amassed a fortune that reportedly exceeds $300 million.  Indeed, according to public news reports, in 2009 Viktor was one of the richest people in Switzerland with a fortune of over $300 million.  Similarly, in 2012 Viktor was among Switzerland's 300 richest people with a fortune of approximately $324 – $432 million (300 – 400 million Swiss francs).

**B.      Pending Investigations:  The Kazakh and Swiss Authorities Are Proceeding Against the Individual Defendants for Crimes Committed in Those Countries**

33.     In approximately late 2007, Viktor became aware that the Kazakh government had begun investigating him and his family, friends, and associates for

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

criminal violations.  On or about November 9, 2007, Viktor and Leila fled Kazakhstan via private jet to Switzerland, where Iliyas and Elvira resided at the time.

34.     On or about May 27, 2011, the Investigation Department of the Agency for Economic and Corruption-Related Crimes of Kazakhstan (the "Financial Police") filed two criminal cases against Viktor on suspicion of abuse of power and fraudulent acts.  On or about July 21, 2011, the Financial Police obtained a court-ordered arrest warrant for Viktor.  In 2011 and 2012, additional charges were brought in Kazakhstan against Viktor, Leila, Iliyas, and Elvira stemming from the theft of public property and the ultimate laundering of funds.

35.     On or about February 20, 2012 and September 14, 2012, the Financial Police applied to the Federal Office of Justice in Switzerland for legal assistance in connection with the effort to prosecute Viktor, Leila, Iliyas, and Elvira for their crimes in Switzerland and Kazakhstan against Almaty and its people.  In or about mid-2012, the Public Prosecutor of Geneva opened an investigation into Viktor, Leila, Iliyas, and Elvira on suspicion of money laundering in violation of Swiss law.  In or about November 2012, the Public Prosecutor of Geneva ordered Swiss accounts and assets belonging to Viktor, Leila, Iliyas, and Elvira frozen, including accounts held at Swiss banks Sarasin & Co. Ltd., Credit Suisse, and Schroeder & Co.  The investigation by the Swiss authorities is ongoing.

36.     There currently are 24 criminal cases pending against Viktor in Kazakhstan for embezzlement, fraud, money laundering, establishing and directing an organized criminal group for criminal purposes, abuse of power, and bribery. There currently are five criminal cases pending against Leila in Kazakhstan for money laundering and establishing and directing an organized criminal group for criminal purposes.  There also currently is a criminal case pending against Elvira in Kazakhstan for money laundering.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

11

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

**C.     The Theft of Property:  The Individual Defendants Unlawfully Converted Almaty Property and Ultimately Sold it to Third Parties at Enormous Profit**

37.     Over the life of the Khrapunov Racketeering Enterprise, the Defendants carried out multiple acts all directed at the same goal: to convert property rightfully belonging to the people of Almaty, sell it for a profit, then launder the proceeds to conceal their origin and convey the proceeds out of Kazakhstan in order to escape the reach of the Kazakh authorities and thereby get away with their crimes.  As a result, Viktor, Leila, Iliyas, Elvira and their co-conspirators looted Almaty of hundreds of millions of dollars and transported millions in stolen funds into and within the United States in violation of U.S. law.

38.     Four examples of Defendants' illegal acquisition of property belonging to Almaty and its people are set forth below.  Through the four transactions detailed below, Viktor, Leila, Iliyas, Elvira, their family and their co-conspirators generated approximately $28.57 million in illicit profits resulting from the illegal conversion and re-sale of four pieces of property.  In total, the Khrapunov Racketeering Enterprise is believed to have illegally acquired over 80 pieces of real estate, valued at approximately $300 million, from Almaty and its people.  They now seek to further their wrongdoing by hiding stolen funds in the United States.

**Real Estate 1**

39.     In or about 2000, Viktor abused his position as Mayor of Almaty to cause a large tract of state-owned land near two rivers in Almaty ("Real Estate 1") to be transferred to Leila for a total price of approximately $121,000.  The transfer was accomplished via a series of fraudulent transactions and front companies controlled by Leila and Iliyas.  Through several more transfers designed to conceal the illegal conduct, Leila and Iliyas ultimately sold Real Estate 1 for a total of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

12

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  $15.57 million, yielding more than $15 million in illicit profit as a result of this
2  single transaction.

3        40.    Viktor's transfer of Real Estate 1 violated the Land Code of the
4  Republic of Kazakhstan, which requires that public property be sold via auction, as
5  well as the Water Code, which mandates that land in water conservation zones may
6  only be provided to private individuals and entities for temporary use.

7        41.    To carry out the illegal conversion of Real Estate 1, Viktor, Leila, and
8  Iliyas utilized at least six Kazakhstan entities controlled by Leila and Iliyas,
9  including: (a) Almaty-Demalys; (b) Viled Establishment; (c) KazRealIncom LLP
10 ("KRI"); (d) Karasha Plus LLP ("Karasha"); (e) Building Services Company
11 ("BSC"); and (f) Asia Holding Development LLP ("Asia Holding").  Through a
12 series of transfers and sales engineered by Viktor, Leila, and Iliyas, Real Estate 1
13 was first transferred to Almaty-Demalys, which in turn ultimately was transferred
14 to Viled.

15       42.    On or about August 25, 2003, Leila caused Viled to sell Almaty-
16 Demalys to KRI for approximately $121,000 (18,800,000 ₸).  Less than six
17 months later, Leila caused KRI to sell Almaty-Demalys to Karasha for the same
18 amount.  Next, Leila caused Karasha to transfer ownership of Real Estate 1 directly
19 to her.  As a result of this series of transfers, Leila obtained full ownership of Real
20 Estate 1.

21       43.    On or about October 6, 2003, Leila contributed a portion of Real
22 Estate 1 to BSC, which she then sold to an unrelated third party in a transaction
23 that valued that portion of Real Estate 1 at approximately $8 million
24 (1,179,999,980 ₸).  Leila caused the remaining portion of Real Estate 1 to be
25 conveyed directly to Iliyas.  Iliyas, in turn, contributed it to Asia Holding, and then
26 sold Asia Holding to a separate unrelated third party for approximately $7.57
27 million.  Of the $7.57 million, Iliyas transferred approximately $2.21 million to

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

13

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  Elvira's Swiss bank accounts, including accounts at Sarasin & Co. Ltd., Credit

2  Suisse, and Schroeder & Co., and retained the remainder for himself.

3       44.    Thus, Leila paid approximately $121,000 for Real Estate 1, which she

4  and Iliyas later re-sold for a total of $15.57 million.

5       **Real Estate 2**

6       45.    On or about April 16, 2001, Viktor used his position as mayor to

7  cause a public building in Almaty to be sold to Leila's company, KRI, for

8  approximately $347,000 (52,155,100 ₸).  Viktor did so by manipulating a public

9  auction to ensure that KRI won the auction.

10      46.    Under the laws of Kazakhstan, potential buyers of state-owned

11 property are obligated to state how they intend to invest in and develop the

12 property.  In an attempt to make KRI's bid appear legitimate, during the bidding

13 process Leila caused KRI to fraudulently represent that KRI would invest a

14 significant amount in Real Estate 2 to build a health center for the benefit of the

15 people of Almaty.  That representation was false at the time it was made and, in

16 fact, KRI never intended to and never did build any such health center.  Instead, on

17 or about October 1, 2003, Leila caused KRI to sell Real Estate 2 to Karasha and,

18 two days later, Leila caused Karasha to sell Real Estate 2 directly to her.  Shortly

19 thereafter, Leila contributed Real Estate 2 to BSC, which she then sold to an

20 unrelated third party in a transaction that valued Real Estate 2 at approximately

21 $4.1 million (611,445,206 ₸).  Leila and Viktor thus obtained illegal profit of over

22 $3.7 million as a result of their illicit acquisition and re-sale of Real Estate 2.

23      **Real Estate 3**

24      47.    In addition to manufacturing the sale of state-owned assets to Leila

25 and other family members and co-conspirators, Viktor also abused his authority as

26 mayor to seize privately-owned land and transfer it to Leila and others for re-sale.

27      48.    On or about August 25, 2003, Viktor caused Almaty to seize land

28 owned by privately-owned third party Shadid Engineering LLP ("Real Estate 3").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

14

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1  Approximately one month later, Viktor caused Real Estate 3 to be sold to Leila's

2  company Karasha for approximately $105,000 (15,600,000 ₸).  Leila then caused

3  Karasha to sell Real Estate 3 directly to her.  Leila next contributed Real Estate 3

4  to BSC, and sold BSC to an unrelated third party in a transaction that valued Real

5  Estate 3 at approximately $2 million.  As a result, Leila obtained nearly $1.9

6  million in illicit profit at the expense of Almaty and its people.

7  **Real Estate 4**

8  49.  In or about November 2004, Viktor caused Almaty to sell land ("Real

9  Estate 4") to two additional Kazakhstan companies owned and controlled by Leila,

10  Victoriya-KMK LLP and Ademytau-KMK LLP.  Real Estate 4 was located in a

11  water conservation zone and, therefore, under Kazakh law, could be provided to

12  private persons or entities only for temporary use.  Nevertheless, in violation of the

13  law and his obligations as mayor of Almaty, Viktor caused Real Estate 4 to be sold

14  to Leila's companies for approximately $1.3 million (18,870,100 ₸).  On or about

15  December 23, 2005 and January 25, 2006, Leila sold Real Estate 4 to an unrelated

16  third party for approximately $8.6 million (1,223,950,000 ₸) – resulting in illicit

17  profit to Leila and Viktor of approximately $7.3 million.

18  50.  Together, the illegal conversion of Real Estate 1-4, and ultimate sale

19  of those properties to unrelated third parties, resulted in profit to Viktor, Leila,

20  Iliyas, Elvira, their family members and their co-conspirators of over $28.57

21  million.  These are merely four examples of Viktor and his family and co-

22  conspirators' wrongdoing.  In total, approximately 80 parcels of real estate

23  rightfully belonging to Almaty and its people were illegally alienated by the

24  Individual Defendants for their own personal gain.  On information and belief, the

25  Individual Defendants profited by over $300 million from these illegal

26  transactions, all at the expense of the people of Almaty, and now are seeking to use

27  the United States as a haven in which to enjoy their ill-gotten gains.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

15

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

**D.      The Laundering of Stolen Funds:  The Individual Defendants Laundered Illegally Obtained Funds in Switzerland and the United States**

51.      The Individual Defendants laundered the proceeds of their crimes in Switzerland and the United States in order to hide the assets from authorities and reap the rewards of their wrongdoing.  Once the Swiss authorities began to investigate the Individual Defendants and to freeze their assets, the Individual Defendants increased their illegal laundering activities in the United States to further conceal the proceeds.  Upon information and belief, the Individual Defendants selected the United States as one jurisdiction in which to hide the stolen funds because they felt they would be immune from redress for their crimes here.  The United States does not have a mutual legal assistance treaty or extradition treaty with Kazakhstan.

52.      The Individual Defendants used numerous holding companies in order to hide and to launder the illicit funds they siphoned out of Kazakhstan through Switzerland and ultimately into and within the United States and other countries. These holding companies included at least two Swiss companies owned and controlled by Iliyas and Elvira, SDG Capital SA ("SDG") and Swiss Promotion Group SA ("SPG").  In total, Iliyas, Elvira, and Leila have transferred at least $125 million into these two Swiss companies alone.

53.      Between 2008 and 2012, Iliyas, Elvira, Leila, and sham companies they control have injected over $115 million into SDG.  SDG was formed in or about July 2008 and, until approximately May 2009, was owned and controlled by Harlem Securities, a British Virgin Islands corporation that was, in turn, owned by Iliyas.  In or about May 2009, Elvira purchased SDG from Harlem Securities for approximately $99,000.  Following that purchase, Iliyas continued to exert full control over SDG Capital.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
DC\3629727.2
16
SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

54.     Iliyas, Elvira, Leila, and sham companies they control also have contributed substantial assets, believed to be in excess of $10 million, to SPG. Iliyas is the ultimate beneficial owner of SPG via a variety of offshore holding companies.

55.     All of the funds contributed to SDG, SPG, and other front companies controlled by Iliyas, Elvira, and Leila represent and are traceable to the ill-gotten proceeds of Viktor and his family and co-conspirators' looting of real estate and other assets rightfully belonging to Almaty and its people.

56.     In an ongoing effort to launder and conceal the source of the funds they stole from the people of Almaty, after moving the funds to various accounts and holding companies in Switzerland, the Individual Defendants began transferring the stolen funds into the United States.  Below are merely three examples of the numerous transactions wrongfully engaged in by Defendants in furtherance of the Khrapunov Racketeering Scheme.

57.     For example, in or about July 2012, Elvira, with the knowledge and assistance of Viktor, Leila, Dmitri, Iliyas, and Madina, caused over $3 million to be transferred into a United States bank account owned or controlled by her, and at all times all Individual Defendants knew that money to have been stolen from the people of the City of Almaty.  Upon information and belief, before transferring these funds into the United States, the Individual Defendants caused the funds to be moved through various off-shore bank accounts, including accounts held by sham holding companies, for the sole purpose of illicitly concealing the source of the stolen funds and with the goal of making the stolen funds appear legitimate. Upon information and belief, this $3 million transferred into the United States by the Individual Defendants is traceable to the funds they looted from Almaty.  Upon information and belief, the Individual Defendants made use of the United States wires and United States mail in furtherance of this illegal transaction.  The Individual Defendants transferred these funds into the United States in furtherance

of the goals of the Khrapunov Racketeering Scheme, with the intent to conceal the illegitimate source of the funds and thereby prevent Almaty from recovering the funds they stole.

58.     As another example, in or about November 2012, Iliyas, with the full knowledge and assistance of the other Individual Defendants, caused approximately $1.3 million to be transferred from an off-shore bank account owned or controlled by him into a United States bank account owned by Defendant RPM USA LLC and controlled by Iliyas.  At all times all Individual Defendants knew that money to have been stolen from the people of the City of Almaty.  Upon information and belief, before transferring these funds into the United States, Iliyas and the other Individual Defendants caused the funds to be moved through various off-shore bank accounts, including accounts held by sham holding companies, for the sole purpose of illicitly concealing the source of the stolen funds and with the goal of making the stolen funds appear legitimate.  Upon information and belief, this $1.3 million transferred into the United States by the Individual Defendants is traceable to the funds they looted from Almaty.  Upon information and belief, the Individual Defendants made use of the United States wires and United States mail in furtherance of this illegal transaction.  The Individual Defendants transferred these funds into the United States in furtherance of the goals of the Khrapunov Racketeering Scheme, with the intent to conceal the illegitimate source of the funds and thereby prevent Almaty from recovering the funds they stole.

59.     As a third example, in or about June 2012, Elvira and Iliyas – again, with the full knowledge and assistance of the other Individual Defendants – caused approximately $25,000 to be transferred from a Swiss bank account owned or controlled by Iliyas into a United States bank account owned or controlled by Elvira.  At all times all Individual Defendants knew that money to have been stolen from the people of the City of Almaty.  Upon information and belief, before transferring these funds into the United States, the Individual Defendants caused

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

18

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

the funds to be moved through various off-shore bank accounts, including accounts held by sham holding companies, for the sole purpose of illicitly concealing the source of the stolen funds and with the goal of making the stolen funds appear legitimate.  Upon information and belief, this $25,000 transferred into the United States by the Individual Defendants is traceable to the funds they looted from Almaty.  Upon information and belief, the Individual Defendants made use of the United States wires and United States mail in furtherance of this illegal transaction. The Individual Defendants transferred these funds into the United States in furtherance of the goals of the Khrapunov Racketeering Scheme, with the intent to conceal the illegitimate source of the funds and thereby prevent Almaty from recovering the funds they stole.

60.     In or about December 2010, Elvira and Dmitri used funds illegally obtained through the Khrapunov Racketeering Enterprise's criminal activity in Kazakhstan and laundered through various off-shore bank accounts and entities to appear legitimate to purchase a luxurious single-family home located at 2578 Hutton Drive in Beverly Hills, California, for approximately $3.65 million.  Elvira and Dmitri knew that the money they used to engage in this transaction was stolen from the people of Almaty, and illegally laundered to appear legitimate.  They purchased this property with the intent to use the transaction to further conceal the illegitimate source of the funds, which are traceable to the funds the Individual Defendants embezzled from the people of Almaty.  Furthermore, upon information and belief, Elvira and Dmitry made use of the United States mail and wires, as well as United States financial institutions, to engage in this transaction.  As a result of the foregoing, Elvira and Dmitri violated, among other U.S. laws, 18 U.S.C. §§ 1956 (money laundering and conspiracy to commit money laundering), 1957 (transactions in property derived from unlawful activity), 2314 (transport of stolen money), 1341 (mail fraud), and 1343 (wire fraud).  Elvira and Dmitri acted with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

19

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1   the agreement and knowledge of Viktor, Leila, Iliyas, and Madina, and as a result,

2   all Individual Defendants also violated 18 U.S.C. § 371 (conspiracy).

3         61.    In March 2012, Iliyas and Madina, also using ill-gotten proceeds of

4   the looting scheme laundered through various off-shore bank accounts and entities

5   to appear legitimate, purchased a lavish single-family home located at 606 North

6   Alta Drive in Beverly Hills, California, for approximately $5.45 million.  Iliyas

7   and Madina knew that the money they used to engage in this transaction was stolen

8   from the people of Almaty, and illegally laundered to appear legitimate.  Indeed,

9   Iliyas and Madina attempted to further conceal the source of the stolen funds used

10  to make this purchase by using Defendant Candian International Ltd. to complete

11  the purchase, and they purchased this property with the intent to use the transaction

12  to further conceal the illegitimate source of the funds, which are traceable to the

13  funds the Individual Defendants embezzled from the people of Almaty.

14  Furthermore, upon information and belief, Iliyas and Madina made use of the

15  United States mail and wires, as well as United States financial institutions, to

16  engage in this transaction.  As a result of the foregoing, Iliyas and Madina violated,

17  among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  Iliyas

18  and Madina acted with the agreement and knowledge of Viktor, Leila, Elvira, and

19  Dmitri, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

20        62.    In or about mid-2012, the Public Prosecutor of Geneva opened an

21  investigation into Viktor, Leila, Iliyas, and Elvira on suspicion of money

22  laundering in violation of Swiss law.  In or about November 2012, the Public

23  Prosecutor of Geneva ordered frozen certain Swiss accounts and assets belonging

24  to Viktor, Leila, Iliyas, and Elvira.  After this action by Swiss government

25  authorities, the Individual Defendants continued and increased their laundering

26  activities in the United States.

27        63.    In January 2013, Iliyas and Madina purchased a second mansion in

28  Beverly Hills using illicit funds stolen from Almaty and laundered through various

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

20

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

off-shore bank accounts and entities to appear legitimate. Iliyas and Madina knew that the money they used to engage in this transaction was stolen from the people of Almaty, and illegally laundered to appear legitimate. Indeed, Iliyas and Madina, with Elvira's assistance, used another sham holding company, Defendant 628 Holdings LLC, to launder and conceal the source of the illicit funds. To that end, Iliyas and Madina caused 628 Holdings LLC to purchase for $6.2 million a five-bedroom single-family home located at 628 North Alta Drive in Beverly Hills, California for the benefit and use of Iliyas and Madina. Elvira is listed in public records as an officer of Defendant 628 Holdings LLC. Iliyas and Madina purchased this property with the intent to use the transaction to further conceal the illegitimate source of the funds, which are traceable to the funds the Individual Defendants embezzled from the people of Almaty. Furthermore, upon information and belief, Iliyas and Madina made use of the United States mail and wires, as well as United States financial institutions, to engage in this transaction. As a result of the foregoing, Iliyas, Madina, and Elvira violated, among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343. Iliyas, Madina, and Elvira acted with the agreement and knowledge of Viktor, Leila, and Dmitri, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

64.   In or about July 2013, Elvira and Dmitri sold the house at 2578 Hutton Drive for approximately $4.97 million and purchased an expansive, two-acre estate located at 11986 Lockridge Road in Studio City, California for approximately $5.7 million, again using funds stolen from Almaty and laundered through various off-shore bank accounts and entities to appear legitimate. Elvira and Dmitri knew that the money they used to engage in this transaction was stolen from the people of Almaty, and illegally laundered to appear legitimate. Indeed, shortly after they purchased this property, in a further attempt to conceal their possession and use of those funds, Elvira and Dmitri transferred it to The Kasan Family Trust, a trust for which they serve as trustees. They purchased this

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

21

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

property with the intent to use the transaction to further conceal the illegitimate source of the funds, which are traceable to the funds the Individual Defendants embezzled from the people of Almaty.  Furthermore, upon information and belief, Elvira and Dmitry made use of the United States mail and wires, as well as United States financial institutions, to engage in this transaction.  As a result of the foregoing, Elvira and Dmitri violated, among other U.S. laws, 18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  Elvira and Dmitri acted with the agreement and knowledge of Viktor, Leila, Iliyas, and Madina, and as a result, all Individual Defendants also violated 18 U.S.C. § 371.

65.    In or about September 2013, Iliyas and Madina sold the house at 606 North Alta Drive for approximately $6.975 million.  Upon information and belief, Iliyas and Madina sold this property less than 18 months after they purchased it in a further attempt to launder and conceal the source of the funds, which are traceable to the funds they and the other Individual Defendants looted from the people of the City of Almaty.

66.    The Individual Defendants' luxurious lifestyles in the United States were not limited to the purchase of Beverly Hills and Studio City mansions.  In or about April 2013, Elvira leased a 2013 Rolls Royce sedan valued at approximately $302,000.  In addition to the Rolls Royce, Elvira leased a 2013 Bentley sedan valued at approximately $320,000.  Elvira is the registered owner of a 2013 Mercedes Benz sport utility vehicle valued at approximately $114,000 and a 2011 Cadillac sport utility vehicle valued at approximately $75,000.  Elvira used funds stolen from Almaty and laundered through various off-shore bank accounts and entities to appear legitimate, while knowing those funds to be stolen, to acquire these vehicles.  Upon information and belief, the funds used to purchase or lease these vehicles are traceable to the funds stolen from Almaty.  Furthermore, upon information and belief, Elvira made use of the United States mail and wires, as well as United States financial institutions, to engage in these purchase and lease

LATHAM&WATKINS℠
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

22

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    transactions.  As a result of the foregoing, Elvira violated, among other U.S. laws,

2    18 U.S.C. §§ 1956, 1957, 2314, 1341, and 1343.  In doing so, Elvira acted with the

3    agreement and knowledge of Viktor, Leila, Dmitri, Iliyas, and Madina, and as a

4    result, all Individual Defendants also violated 18 U.S.C. § 371.

5         67.    Elvira, Dmitri, Iliyas, and Madina also have attempted to launder

6    funds obtained from the plundering of Almaty by making investments in multiple

7    U.S. companies, including Defendants Maro Design LLC, Haute Hue LLC, RPM

8    USA LLC, and RPM-Maro LLC.  Elvira, Dmitri, Iliyas, and/or Madina own or

9    control all of the Entity Defendants and, on information and belief, all of the

10   monies used to fund investments in the Entity Defendants were laundered through

11   various off-shore bank accounts and entities to appear legitimate and are derived

12   from, and traceable to, funds looted from the people of the City of Almaty.  Elvira,

13   Dmitri, Iliyas, and Madina injected funds into these and other sham holding

14   companies with the intent to use the holding companies to further conceal the

15   illegitimate source of the funds.  Furthermore, upon information and belief, Elvira,

16   Dmitri, Iliyas, and Madina made use of the United States mail and wires, as well as

17   United States financial institutions, to engage in these investments.  As a result,

18   Elvira, Dmitri, Iliyas, and Madina again acted in violation of 18 U.S.C. §§ 1956,

19   1957, 2314, 1341, and 1343.  They at all times acted with the agreement and

20   knowledge of Viktor and Leila, and as a result, all Individual Defendants also

21   violated 18 U.S.C. § 371.

22        68.    Further, Iliyas and Elvira have caused SDG and SPG to move

23   additional assets stolen from Almaty into the United States by, among other things,

24   using a chain of Luxembourg and Delaware entities to invest in real estate in New

25   York.  In or about July 2012, Defendant RPM USA LLC, which is owned or

26   controlled by Iliyas and is a wholly owned subsidiary of SPG, invested

27   approximately $6 million in a New York-based medical device company.  Upon

28   information and belief, that $6 million was laundered through various off-shore

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

23

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

bank accounts and entities to appear legitimate and is traceable to the funds the
Individual Defendants looted from Almaty. Iliyas used those funds to invest in the
medical device company with the intent to further conceal the illicit source of those
funds. Upon information and belief, Iliyas and Elvira made use of the United
States mail and wires, as well as United States financial institutions, to invest in the
medical device company. Additionally, RPM USA LLC and Defendant Maro
Design LLC, which is owned or controlled by Elvira, own 49% and 51%,
respectively, of Defendant RPM-Maro LLC.

69.    Upon information and belief, in 2013, Iliyas invested approximately
$67.5 million stolen from the people of Almaty to purchase a partial interest in a
luxury hotel in New York. Upon information and belief, that $67.5 million was
laundered through various off-shore bank accounts and entities to appear legitimate
and is traceable to the funds the Individual Defendants looted from Almaty. Iliyas
used those funds to purchase the hotel with the intent to further conceal the illicit
source of those funds. Additionally, in order to conceal the source of the funds
used to make this investment, Iliyas used a series of holding companies ultimately
owned by SDG and controlled by him. SDG is the owner of a Luxembourg entity,
Tridaou SPV SA. Triadou SPV SA owns 50% of a Delaware limited liability
company, CF 135 West Member LLC. CF 135 West Member LLC owns 75% of
another Delaware limited liability company, 135 West Street Holder LLC. 135
West Street Holder LLC owns another Delaware limited liability company, 135
West 52nd Street Mezz LLC. 135 West 52nd Street Mezz LLC owns yet another
Delaware limited liability company, 135 West 52nd Street Owner LLC. 135 West
52nd Street Owner LLC, in turn, is the owner of the hotel, which was purchased in
2013 for $180 million. Upon information and belief, Iliyas and the other
Individual Defendants use complicated networks of entities such as this with the
intent to conceal the source of the funds they inject into the United States, all of
which are traceable to the funds embezzled from the people of Almaty. Upon

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

24

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    information and belief, Iliyas made use of the United States mail and wires, as well

2    as United States financial institutions, to purchase a partial interest in this hotel.

3    The hotel currently is in the process of being converted into luxury condominiums.

4          70.     By this lawsuit, Almaty seeks to hold Defendants responsible for their

5    illegal conduct in the United States in violation of U.S. law.

6                          **FIRST CLAIM FOR RELIEF**

7          (For Violations of RICO, 18 U.S.C. §§ 1962(c), 1962(d), 1964(c), against all

8                                    Defendants)

9          71.     Almaty hereby incorporates by reference the allegations in paragraphs

10   1 through 70, as though fully set forth herein.

11         72.     From in or about 1997 and continuing to the present, by reason of its

12   organization, structure, and activities, the Khrapunov Racketeering Enterprise

13   constituted a RICO enterprise within the meaning of 18 U.S.C. § 1961(4).  The

14   Khrapunov Racketeering Enterprise was comprised of myriad individuals and

15   entities, all associated in fact as part of the Khrapunov Racketeering Enterprise,

16   including but not limited to the Individual Defendants and Entity Defendants

17   named herein.  The Khrapunov Racketeering Enterprise was engaged in, and the

18   activities of the Khrapunov Racketeering Enterprise affected, interstate and foreign

19   commerce.

20         73.     As alleged herein, the Khrapunov Racketeering Enterprise

21   participants, including Defendants and each of them, engaged and conspired to

22   engage in acts in the United States to further the goals of their criminal enterprise,

23   in violation of U.S. law.

24         74.     Defendants engaged and conspired to engage in money laundering in

25   violation of 18 U.S.C. § 1956 by conducting numerous financial transactions using

26   illegally obtained funds laundered through various off-shore accounts and entities

27   to, among other things, purchase real estate and other assets in Beverly Hills,

28   Studio City, and elsewhere and to fund business entities, including the Entity

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

25

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that such funds were stolen from the people of Almaty and with the intent of concealing the source of those funds.

75. Defendants further engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by transporting, transmitting, and/or transferring funds stolen from the people of Almaty and laundered through various off-shore accounts and entities into and within the United States in order to, among other things, purchase real estate and assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that such funds were stolen from the people of Almaty and with the intent of concealing the source of those funds.

76. Defendants further engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by conducting financial transactions using those stolen funds by, among other things, using stolen funds laundered through various off-shore accounts and entities to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that such funds were stolen from the people of Almaty and with the intent of concealing the source of those funds.

77. Defendants engaged and conspired to engage in money transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 by, among other things, knowingly transferring funds in excess of $10,000 stolen from Almaty into and within the United States via United States financial institutions to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, knowing that such funds were derived from and traceable to funds stolen from the people of Almaty.

LATHAM&WATKINS^LP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

26

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

78.     Defendants engaged and conspired to engage in the foreign transport of stolen money or property known to be stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314 by transferring funds derived from and traceable to funds stolen from the people of Almaty into and within the United States, in excess of $5,000, knowing those funds to have been stolen from the people of Almaty and/or obtained from the people of Almaty by means of false or fraudulent pretenses, representations, or promises by, among other things, transferring such funds from bank accounts in Switzerland into the United States via United States financial institutions and using those funds to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants.

79.     Defendants, and each of them, conspired to commit the violations of U.S. law described herein, and one or more of the Defendants acted to violate such laws.  Defendants, and each of them, thus also violated 18 U.S.C. § 371.

80.     Defendants engaged and conspired to engage in mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by knowingly using the United States mails and wires to transfer illegally obtained funds into and within the United States, for the purpose of furthering the Khrapunov Racketeering Scheme and, while concealing the funds' illegal source, used those funds to purchase real estate in Beverly Hills and Studio City, California and to fund business entities, including the Entity Defendants, to enable those entities to conduct business in the United States using the illegally-obtained funds.

81.     Defendants engaged and conspired to engage in the above violations of U.S. law in order to implement the objectives and accomplish the unlawful purposes of the Khrapunov Racketeering Enterprise as set forth herein, and thereby engaged in predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

27

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

82.     Each of the Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the Khrapunov Racketeering Enterprise through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5) in violation of 18 U.S.C. § 1962(c), consisting as applicable of multiple acts of money laundering, conducting money transactions in property derived from specified unlawful activity,  foreign transport of stolen money or property known to be stolen, converted or taken by fraud, mail fraud, and/or wire fraud, as specified herein.  Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO (*i.e.*, October 15, 1970).

83.     From in or about 1997, and continuing to the present, Defendants associated together, with one another and with others, and acted in concert for the common and unlawful purposes of the Khrapunov Racketeering Enterprise and in order to implement the schemes and employ the devices described herein.

84.     In so doing, Defendants unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other and with others to commit RICO violations under 18 U.S.C. § 1962(c) and, thereby, violated 18 U.S.C. § 1962(d).  In furtherance of the conspiracy and to effect the objects thereof, Defendants committed in the Central District of California and elsewhere the overt acts as described herein, among others.

85.     As a direct and proximate result of RICO violations by the Defendants of 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and/or 1962(d), Almaty has suffered damages in an amount to be determined at trial and presently estimated to be not less than $300 million.  Almaty has been injured in its business or property by reason of each such Defendant's violations and, pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), is thereby entitled to recover threefold the damages it has suffered, together with its costs of suit and reasonable attorneys' fees.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

28

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

## SECOND CLAIM FOR RELIEF

(For Violations of RICO, 18 U.S.C. §§ 1962(a), 1962(d), 1964(c), against all
Defendants)

86.     Almaty hereby incorporates by reference the allegations in paragraphs 1 through 85, as though fully set forth herein.

87.     From in or about 1997 and continuing to the present, by reason of its organization, structure, and activities, the Khrapunov Racketeering Enterprise constituted a RICO enterprise within the meaning of 18 U.S.C. § 1961(4). The Khrapunov Racketeering Enterprise was comprised of myriad individuals and entities, all associated in fact as part of the Khrapunov Racketeering Enterprise, including but not limited to the Individual Defendants and Entity Defendants named herein. The Khrapunov Racketeering Enterprise was engaged in, and the activities of the Khrapunov Racketeering Enterprise affected, interstate and foreign commerce.

88.     Each of the Defendants was at the center of and was a principal perpetrator of a fraudulent scheme and is liable under 18 U.S.C. § 1962(a) as a direct and indirect beneficiary of the pattern of racketeering herein alleged.

89.     As alleged herein, the Khrapunov Racketeering Enterprise participants, including Defendants and each of them, engaged and conspired to engage in acts in the United States to further the goals of their criminal enterprise, in violation of U.S. law.

90.     Defendants engaged and conspired to engage in money laundering in violation of 18 U.S.C. § 1956 by conducting numerous financial transactions using illegally obtained funds laundered through various off-shore accounts and entities to, among other things, purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants, in furtherance of the Khrapunov Racketeering Scheme, knowing that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

29

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    such funds were stolen from the people of Almaty and with the intent of
2    concealing the source of those funds.

3         91.    Defendants further engaged and conspired to engage in money
4    laundering in violation of 18 U.S.C. § 1956 by transporting, transmitting, and/or
5    transferring funds stolen from the people of Almaty and laundered through various
6    off-shore accounts and entities into and within the United States in order to, among
7    other things, purchase real estate and assets in Beverly Hills, Studio City, and
8    elsewhere and to fund business entities, including the Entity Defendants, in
9    furtherance of the Khrapunov Racketeering Scheme, knowing that such funds were
10   stolen from the people of Almaty and with the intent of concealing the source of
11   those funds.

12        92.    Defendants further engaged and conspired to engage in money
13   laundering in violation of 18 U.S.C. § 1956 by conducting financial transactions
14   using those stolen funds by, among other things, using stolen funds laundered
15   through various off-shore accounts and entities to purchase real estate and other
16   assets in Beverly Hills, Studio City, and elsewhere and to fund business entities,
17   including the Entity Defendants, in furtherance of the Khrapunov Racketeering
18   Scheme, knowing that such funds were stolen from the people of Almaty and with
19   the intent of concealing the source of those funds.

20        93.    Defendants engaged and conspired to engage in money transactions in
21   property derived from specified unlawful activity in violation of 18 U.S.C. § 1957
22   by, among other things, knowingly transferring funds in excess of $10,000 stolen
23   from Almaty into and within the United States via United States financial
24   institutions to purchase real estate and other assets in Beverly Hills, Studio City,
25   and elsewhere and to fund business entities, including the Entity Defendants,
26   knowing that such funds were derived from and traceable to funds stolen from the
27   people of Almaty.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

30

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

94.     Defendants engaged and conspired to engage in the foreign transport of stolen money or property known to be stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314 by transferring funds derived from and traceable to funds stolen from the people of Almaty into and within the United States, in excess of $5,000, knowing those funds to have been stolen from the people of Almaty and/or obtained from the people of Almaty by means of false or fraudulent pretenses, representations, or promises by, among other things, transferring such funds from bank accounts in Switzerland into the United States via United States financial institutions and using those funds to purchase real estate and other assets in Beverly Hills, Studio City, and elsewhere and to fund business entities, including the Entity Defendants.

95.     Defendants, and each of them, conspired to commit the violations of U.S. law described herein, and one or more of the Defendants acted to violate such laws.  Defendants, and each of them, thus also violated 18 U.S.C. § 371.

96.     Defendants engaged and conspired to engage in mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by knowingly using the United States mails and wires to transfer illegally obtained funds into and within the United States, for the purpose of furthering the Khrapunov Racketeering Scheme and, while concealing the funds' illegal source, used those funds to purchase real estate in Beverly Hills and Studio City, California and to fund business entities, including the Entity Defendants, to enable those entities to conduct business in the United States using the illegally-obtained funds.

97.     Defendants engaged and conspired to engage in the above violations of U.S. law in order to implement the objectives and accomplish the unlawful purposes of the Khrapunov Racketeering Enterprise as set forth herein, and thereby engaged in predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B).

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

31

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

98.     Furthermore, each Defendant received income derived directly or indirectly from a pattern of racketeering in which each of said Defendants participated as a principal within the meaning of 18 U.S.C. § 2.

99.     During the period commencing in or about 1997 and continuing to the present, the Defendants, having received income derived, directly or indirectly, from a pattern of racketeering activity, used or invested, directly or indirectly, in violation of 18 U.S.C. § 1962(a), income or the proceeds of income from said illegal racketeering activity in the acquisition of an interest in, or the establishment or operation of the Khrapunov Racketeering Enterprise or one or more affiliated entities, including without limitation, the Entity Defendants.  Said uses and investments in enterprises affecting interstate or foreign commerce include without limitation the uses and investments described herein.

100.    In so doing, Defendants unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together, with each other and with others to commit RICO violations under 18 U.S.C. § 1962(c) and, thereby, violated 18 U.S.C. § 1962(d).  In furtherance of the conspiracy and to effect the objects thereof, Defendants committed in the Central District of California and elsewhere the overt acts as described herein, among others.

101.    As a direct and proximate result of RICO violations by the Defendants of 18 U.S.C. § 1962(a) and/or 18 U.S.C. § 1962(d), Almaty has suffered damages in an amount to be determined at trial and presently estimated to be not less than $300 million.  Almaty has been injured in its business or property by reason of each such Defendant's violations in that financial assets stolen or otherwise diverted from and thereby lost to Almaty have been used and invested, directly or indirectly, to acquire an interest in and to establish and operate numerous enterprises affecting interstate or foreign commerce without benefit to Almaty or its people.  Accordingly, pursuant to the civil remedy provisions of 18 U.S.C. §

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

32

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1964(c), Almaty is entitled to recover threefold the damages it has suffered, together with its costs of suit and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

(For Breach of Fiduciary Duty against Viktor)

102.   Almaty hereby incorporates by reference the allegations in paragraphs 1 through 101, as though fully set forth herein.

103.   As alleged above, Viktor owed a fiduciary duty to Almaty and its people to hold and control the assets of the Almaty government for the benefit of Almaty and its people, and not for his personal benefit or the personal benefit of his relatives, associates, and accomplices.

104.   By engaging in the acts alleged above, Viktor breached his fiduciary duty to Almaty and its people.  As a direct and proximate result of such breaches, Almaty has suffered damages in an amount to be determined at trial and presently estimated to be not less than $300 million.

105.   In committing the acts and perpetrating the schemes alleged herein, Viktor intended to injure Almaty and acted with malice and oppression and with a willful and conscious disregard for the rights of Almaty and its people.  In so doing, Viktor has acted toward Almaty and its people in such manner as to warrant disgorgement of his uses and investments of Almaty's money and property together with an award of punitive and exemplary damages in an amount no less than $300 million.

### FOURTH CLAIM FOR RELIEF

(For Conversion and Conspiracy to Convert against all Defendants)

106.   Almaty hereby incorporates by reference the allegations in paragraphs 1 through 105, as though fully set forth herein.

107.   Defendants, and each of them, have wrongfully converted, aided and abetted, and caused to be converted, to their own use, and that of their friends, families, associates, and accomplices, money, funds, and property belonging to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

33

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

Almaty and its people.  Such conversions have been for the benefit of the Defendants and their friends, families, associates, and accomplices, and to the detriment of the true owners of the property, Almaty and its people.  Such acts of conversion include the acts alleged herein.

108.   Defendants unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other, and with others to convert money, funds, and property belonging to Almaty and its people to their own use, and that of their friends, families, associates, and accomplices.  In furtherance of the conspiracy and to affect the objects thereof, Defendants committed the overt acts, among others, referenced above.

109.   As a direct and proximate result of these acts of conversion by Defendants, Almaty has suffered damages in an amount to be determined at trial, and presently estimated to be not less than $300 million.

110.   In committing the acts and perpetrating the schemes alleged herein, Defendants intended to injure Almaty and acted with malice and oppression and with a willful and conscious disregard for the rights of Almaty and its people.  In so doing, Defendants acted toward Almaty and its people in such manner as to warrant disgorgement of their uses and investments of Almaty's money and property together with an award of punitive and exemplary damages in an amount no less than $300 million.

## FIFTH CLAIM FOR RELIEF

(For Fraud and Deceit and Conspiracy to Defraud against Viktor and Leila)

111.   Almaty hereby incorporates by reference the allegations in paragraphs 1 through 110, as though fully set forth herein.

112.   In the course of conducting and participating in the conduct of the affairs of the Khrapunov Racketeering Enterprise, Viktor and Leila made representations to Almaty and others, which representations were false and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

necessary to implement the unlawful looting, laundering, investment and obstruction schemes described above.

113.   As set forth above, Viktor, who owed a fiduciary duty to Almaty, and Leila failed to disclose and otherwise concealed facts from Almaty and others, the disclosure of which was necessary to make the representations made by them to Almaty not materially misleading.  Viktor and Leila knew that said facts were not being disclosed and were material, and they intended by concealment of these facts to facilitate continuation of their unlawful diversion of assets belonging to Almaty and its people.

114.   Almaty relied to its detriment on the representations of integrity by Viktor and Leila.  Viktor and Leila flagrantly breached the trust and confidence of Almaty by committing numerous acts of fraud, deceit, conversion, and racketeering alleged herein, through which they plundered the assets of Almaty.

115.   In the course of developing their elaborate scheme to defraud, Viktor and Leila secured the assistance, among others, of associates and accomplices, who with Viktor and Leila unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together, with each other and with others to facilitate, aid and abet, and conceal the scheme and artifice to defraud, and to obtain money and property by false representations and promises, thereby enabling the massive diversions and concealment of looted funds identified in this Complaint.

116.   As a direct and proximate result of the foregoing fraudulent conduct and conspiracy to defraud, Almaty has suffered damages in an amount to be determined at trial, and presently estimated to be not less than $300 million.

117.   In committing the acts and perpetrating the schemes alleged herein, Viktor and Leila intended to injure Almaty and acted with malice and oppression and with a willful and conscious disregard for the rights of Almaty and its people. In so doing, Defendants acted toward Almaty and its people in such manner as to warrant disgorgement of their uses and investments of Almaty's money and

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

35

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1 property together with an award of punitive and exemplary damages in an amount

2 no less than $300 million.

3 ## SIXTH CLAIM FOR RELIEF

4 (For an Accounting, and Imposition of a Constructive Trust and Equitable Lien

5 against all Defendants)

6     118.   Almaty hereby incorporates by reference the allegations in paragraphs

7 1 through 117, as though fully set forth herein.

8     119.   During Viktor's mayoralty of Almaty, he, acting as mayor, controlled

9 virtually all of the valuable assets of the Almaty government.  These assets

10 included money and real and personal property owned by the Almaty government,

11 the right to convey, for the benefit of the people of Almaty, real and personal

12 property owned by the Almaty government, and the right to decide who could do

13 business in Almaty through the granting of licenses, concessions, and permits.

14 Viktor further was entrusted with the ability to cause privately owned property to

15 be seized by the Almaty government, purportedly for the benefit of Almaty and its

16 people.

17     120.   Viktor owed a fiduciary duty to Almaty and its people to hold and

18 control these assets for the benefit of Almaty and its people, and not for his

19 personal benefit or the personal benefit of his friends, families, associates, and

20 accomplices.  As alleged above, Viktor, aided and abetted by the other Defendants,

21 converted the assets of the Almaty government to his personal benefit and the

22 personal benefit of his friends, families, associates, and accomplices. They did so

23 by looting money and property owned by the Almaty government and/or by private

24 parties and by accepting bribes, kickbacks, gratuities, and commissions in

25 exchange for the granting of the legal right to do business in Almaty.  All such

26 conversions of assets were done in violation of Viktor's duties to the beneficial

27 owners of such assets, Almaty and its people.  If Viktor or the other Defendants are

28 permitted to retain these assets, they will be unjustly enriched at Almaty's expense.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

36

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

121.   Defendants other than Viktor received money and property stolen from the Almaty government by Viktor and other economic benefits taken or conferred upon them by Viktor in violation of his fiduciary duty.  These Defendants received such money, property, and other economic benefits without giving value for them or with notice to Almaty that such assets had been stolen or otherwise acquired in violation of Viktor's duties to Almaty and its people.  If these Defendants are permitted to retain such assets, they will be unjustly enriched at Almaty's expense.

122.   As a result of the foregoing, Almaty is entitled to an accounting by each of the Defendants of all real and personal property held, acquired, or disposed of by them at any time since 1997.

123.   As a result of the foregoing, Almaty is entitled to a constructive trust and equitable lien upon all real and personal property of Defendants, wherever located worldwide.

124.   Defendants regularly misused and continue to misuse the corporate and other forms of business organization as a cloak for committing fraud and as a means of perpetrating injustice.  By reason of the elaborate and fraudulent schemes used by Defendants to conceal transfers of stolen money and property and to conceal ownership of Defendants' assets, it would be unjust and inequitable to require Almaty to trace the source of money used to acquire specific assets, or to prove that specific assets were acquired with money or property stolen from Almaty. Instead, the burden should be shifted to Defendants to prove that they had sources of income other than the unlawful looting and investment schemes described herein, and to prove that particular assets were acquired by them with such independent, lawful income.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   For compensatory damages;

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

37

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF

1    B.    For treble damages;

2    C.    For punitive damages;

3    D.    For prejudgment interest;

4    E.    For a constructive trust;

5    F.    For an accounting;

6    G.    For injunctive relief;

7    H.    For disgorgement;

8    I.    For all costs and fees incurred in prosecuting this Complaint;

9    J.    For such other and further relief as this Court deems just and proper.

10    Dated:  November 17, 2014

11                                        LATHAM & WATKINS LLP
                                         David J. Schindler
12                                        Manny A. Abascal
                                         Kristen M. Tuey
13                                        Brigitte E. Mills

14

15                                        By ____/s/ David J. Schindler___
                                         David J. Schindler
16                                        Attorneys for Plaintiff the City of
                                         Almaty

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DC\3629727.2

38

SECOND AMENDED COMPLAINT
FOR DAMAGES, INJUNCTIVE RELIEF
AND OTHER EQUITABLE RELIEF