1    LATHAM & WATKINS LLP
     David J. Schindler (Bar No. 130490)
2      *david.schindler@lw.com*
     Jonathan M. Jackson (Bar No. 257554)
3      *jonathan.jackson@lw.com*
     Kendall M. Howes (Bar No. 294285)
4      *kendall.howes@lw.com*
     355 South Grand Avenue, Suite 100
5    Los Angeles, California  90071-1560
   Telephone:  (213) 485-1234
6    Facsimile:  (213) 891-8763

7    *Attorneys for Plaintiff the City of Almaty*

8

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11

12   CITY OF ALMATY,

           Plaintiff,

13

14      v.

15   VIKTOR KHRAPUNOV, *et al.*,

16           Defendants.

|  |  |
|---|---|
| Case No. 14-cv-03650-FMO | |
| *Consolidated with Case No. 15-cv-02628-FMO* | |
| Assigned To: Hon. Fernando M. Olguin | |

**PLAINTIFF CITY OF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

*Declaration of Jonathan M. Jackson; Declaration of Alexander Korobeinikov; Request for Judicial Notice; and Exhibits Filed Under Seal Pursuant to Court's Prior Order Filed Currently Herewith*

Action Filed:   May 13, 2014

Hearing Date:   December 21, 2017
Hearing Time:   10:00 a.m.
Courtroom:       6D

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND..................................................................................3

    A.     Statement of Facts.....................................................................3

    B.     Additional Actions Against the Khrapunovs............................4

III.    DEFENDANTS' MOTION SHOULD BE DENIED............................5

    A.     Plaintiff's RICO Claim is Not Barred by *Res Judicata*.....................................................................................5

        1.     There was no "Final Judgment on the Merits" ..............6

        2.     There is no "Identity of Claims," and Defendants Have Long Since Waived any Argument to the Contrary ...............................................7

        3.     The *Bascuñán* Decision was Reversed on Appeal ..........................................................................9

    B.     Almaty has Alleged a "Domestic Injury"...............................10

        1.     Almaty Suffered Domestic Injury Because it was Harmed by Unlawful Conduct that Occurred in the U.S. ..................................................11

        2.     Almaty Also Suffered Domestic Injury Because Defendants' Unlawful Acts Caused Almaty and Almaty's Property Interests Harm in the U.S. .....................................................................14

        3.     *Tatung* Affirms that Almaty Suffered a "Domestic Injury" .......................................................16

    C.     Almaty's Claims are Timely...................................................17

    D.     This Court Has Personal Jurisdiction Over All Defendants ..............................................................................20

        1.     Defendants Purposely Directed Their Activities at California .................................................22

        2.     Almaty's Claims Arise out of Defendants' California-Related Activities.........................................24

LATHAM&WATKINS┴┴┴
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

3.   The Exercise of Personal Jurisdiction is Reasonable .................................................... 25

4.   At a Minimum, Jurisdictional Discovery is Warranted ................................................... 27

E.   This Court Should Retain Jurisdiction Over the State Law Claims ........................................... 28

IV.   CONCLUSION ........................................................... 28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

ii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akishev v. Kapustin*,
  No. 13-7152, 2016 U.S. Dist. LEXIS 169787 (D.N.J. Dec. 8, 2016) ............... 13

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ................................................................................. 18

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) ........................................................................ 20

*Bascuñán v. Elsaca*,
  No. 16-3626, 2017 U.S. App. LEXIS 21519 (2d Cir. 2017) .......... 13, 14, 15, 16

*Bojorquez v. Abercrombie & Fitch, Co.*,
  193 F. Supp. 3d 1117 (C.D. Cal. 2016) ............................................................ 8

*Carnegie–Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ...................................................................................... 28

*Carter v. United States*,
  973 F.2d 1479 (9th Cir. 1992) ......................................................................... 9

*Caruth v. Int'l Psychoanalytical Ass'n*,
  59 F.3d 126 (9th Cir. 1995) .......................................................................... 26

*City of Almaty v. Ablyazov*,
  226 F. Supp. 3d 272 (S.D.N.Y. 2016) .............................................................. 9

*City of Almaty v. Khrapunov*,
  685 F. App'x. 634 (9th Cir. 2017) ................................................................. 26

*Cleveland v. Internet Specialties West, Inc.*,
  171 Cal. App. 4th 24 (2009) .......................................................................... 18

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ....................................................................... 27

*Deirmenjian v. Deutsche Bank, A.G.*,
  No. 06-774, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ............................. 18

LATHAM&WATKINS<sup>LLP</sup>   US-DOCS\96629573
ATTORNEYS AT LAW
LOS ANGELES
iii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*Dole Food Co., Inc. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) ................................................................... 21, 22

*Exec. Comm. Representing the Signing Petitioners of the Archdiocese
   of the Western U.S. v. Kaplan,*
   No. 03-8947, 2004 U.S. Dist. LEXIS 31799 (C.D. Cal. Sept. 16,
   2004) ...................................................................................................................... 13

*Federated Dep't Stores, Inc. v. Moitie,*
   452 U.S. 394 (1981) ............................................................................................ 6

*Flowers v. Carville,*
   310 F.3d 1118 (9th Cir. 2002) ........................................................................ 20

*Fox v. Ethicon Endo-Surgery, Inc.,*
   35 Cal. 4th 797 (2005) ....................................................................................... 18

*Grimmett v. Brown,*
   75 F.3d 506 (9th Cir. 1996) .............................................................................. 20

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
   328 F.3d 1122 (9th Cir. 2003) ........................................................................ 27

*Hassen v. Nahyan,*
   No. 09-1106, 2010 WL 9538408 (C.D. Cal. Sept. 17, 2010) ............................. 27

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
   485 F.3d 450 (9th Cir. 2007) ............................................................................ 27

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1989) ............................................................................................ 23

*Lewis v. Superior Court,*
   175 Cal. App. 3d 366 (1985) ............................................................................ 19

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
   431 F.3d 353 (9th Cir. 2005) ............................................................................ 20

*Maiz v. Virani,*
   253 F.3d 641 (11th Cir. 2001) .................................................................. 13, 24

*Marei von Saher v. Norton Simon Museum of Art at Pasadena,*
   No. 07-2866, 2015 U.S. Dist. LEXIS 188627 (C.D. Cal. Apr. 2,
   2015) ............................................................................................................... 15, 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

iv

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*McCool v. Strata Oil Co.*,
   972 F.2d 1452 (7th Cir. 1992) .................................................................. 20

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) .................................................................. 22

*Mir v. Deck*,
   No. 12-1629, 2013 WL 4857673 (C.D. Cal. Sept. 11, 2013) ........................... 20

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) .................................................................. 27

*Planned Parenthood of Columbia/Williamette, Inc. v. Am. Coal. of*
   *Life Activists*,
   945 F. Supp 1355 (D. Or. 1996) ............................................................... 24

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
   882 F.2d 364 (9th Cir. 1989) ..................................................................... 6

*Read v. De Bellefeuille*,
   No. 12-2662, 2012 WL 12888326 (C.D. Cal. June 27, 2012) .......................... 5

*Riggio v. Serv. Corp. Int'l*,
   476 F. App'x 135 (9th Cir. 2012) ................................................................ 6

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016) .................................................................. 10, 11, 12

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   348 F.3d 1116 (9th Cir. 2003) .................................................................... 8

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................... 25

*Sec. & Exch. Comm'n v. Private Equity Mgmt. Grp., Inc.*,
   No. 09-2901, 2012 U.S. Dist. LEXIS 195213 (C.D. Cal. Sept. 28,
   2012) ................................................................................................... 15

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
   Nos. 13-1946, 13-1947, 2014 WL 5112057 (S.D. Cal. Oct. 10,
   2014) ................................................................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

v

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ................................................................... 25

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
   495 F. Supp. 2d 1052 (S.D. Cal. 2007) ...................................................... 8

*Soc'y of Cal. Pioneers v. Baker*,
   43 Cal. App. 4th 774 (1996) ....................................................................... 19

*Stoll v. Runyon*,
   165 F.3d 1238 (9th Cir. 1999) ................................................................... 19

*Stulberg v. Intermedics Orthopedics, Inc.*,
   997 F. Supp. 1060 (N.D. Ill. 1998) ........................................................... 10

*Super Van Inc. v. City of San Antonio*,
   92 F.3d 366 (5th Cir. 1996) ................................................................... 8, 9

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) ..................................................................... 18

*Tatung Co., Ltd. v. Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) .................................................... 16

*Tatung Co., Ltd. v. Hsu*,
   43 F. Supp. 3d 1036 (C.D. Cal. 2014) ...................................................... 23

*Trujillo v. City of Ontario*,
   269 F. App'x 683 (9th Cir. 2008) ............................................................... 9

*United States v. $4,224,958.57*,
   392 F.3d 1002 (9th Cir. 2004) ................................................................... 15

*United States v. Brimberry*,
   779 F.2d 1339 (8th Cir. 1985) ................................................................... 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ................................................................... 24

*Yamauchi v. Cotterman*,
   84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................ 19

*Ziegler v. Indian River Cty.*,
   64 F.3d 470 (9th Cir. 1995) ................................................................. 24, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

vi

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

# STATUTES

18 U.S.C. § 1964(c) ............................................................................. 11

28 U.S.C. § 1367 ................................................................................. 28

Cal. Code Civ. Proc. § 2223 .............................................................. 15

# RULES

Fed. R. Civ. P. 4(k)(2) ...................................................................... 27

Fed. R. Civ. P. 54(b) ......................................................................... 10

# TREATISES

Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2661 (3d ed. 2017) ........................... 7

Restatement (Second) of Judgments ............................................... 9

Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial, § 3:83 (2017) ................. 21

LATHAM&WATKINS^LLP  US-DOCS\96629573
ATTORNEYS AT LAW
LOS ANGELES

vii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

## I.  INTRODUCTION

Defendants' Motion to Dismiss (the "Motion") is based on a fundamental mischaracterization of the claims at issue in the Consolidated Amended Complaint ("CAC").  As alleged in the CAC, Defendants engaged in two related, but distinct, racketeering schemes:  first, Viktor Khrapunov ("Viktor"), Leila Khrapunova ("Leila), Iliyas Khrapunov ("Iliyas"), Madina Ablyazova ("Madina"), Elvira Kudryashova ("Elvira") and Dmitry Kudryashov ("Dmitry") (the "Khrapunovs") embezzled a vast fortune from the residents of the City of Almaty ("Plaintiff" or "Almaty") through the abuse of Viktor's position as mayor; and, second, the Khrapunovs, using a host of shell entities and U.S. corporations that are also named in the CAC (with the Khrapunovs, "Defendants"), systematically laundered and converted Almaty's stolen assets *in the United States*, including through the purchase and sale of more than $32 million in real estate *in California*.

Defendants' initial embezzlement of funds in Kazakhstan, while part of the story, is not the basis for this lawsuit.  Rather, the claims alleged in the CAC are focused on Defendants' domestic acts of money laundering, all of which were designed to conceal Almaty's stolen property and thwart Almaty's efforts to trace its stolen funds and recover assets located within the U.S.  Defendants' Motion ignores that domestic focus.

Having fled criminal investigations in Kazakhstan and elsewhere, attempted to conceal Almaty's stolen funds through a dizzying web of sham entities and international money transfers, and having laundered tens of millions of dollars into California real estate for the specific purpose of preventing foreign authorities from seizing these stolen funds, Defendants brazenly assert that *Almaty* is "forum shopping" by seeking to recover its stolen property in this district, where Defendants chose to hide it.  Defendants invite this Court to hold either that Almaty must pursue its claims in Switzerland (even though the Ninth Circuit just rejected that very contention) or that Almaty may only pursue its claims in

LATHAM&WATKINS⸌⸌⸌
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Kazakhstan (even though Defendants refuse to appear in Kazakhstan and have long

2   since funneled all of the stolen funds out of Kazakhstan).  Neither position has

3   merit.  To the contrary, Almaty is entitled to seek a remedy in U.S. courts for

4   Defendants' actions in (and directed into) the U.S. in violation of U.S. law.

5        Defendants' contention that Almaty's RICO claim should be dismissed for

6   lack of a "domestic injury" is likewise meritless.  This is not a case where, in the

7   course of criminal acts elsewhere, a defendant's funds merely sat passively in or

8   flowed through a U.S. bank account.  Here, Defendants broke the law in the U.S.

9   and in so doing harmed Almaty in the U.S., and those domestic actions and harms

10  are the focus of this case.  Specifically, Defendants engaged in extensive domestic

11  transactions involving real estate and other tangible property in California, illegally

12  converting Almaty's property in California and rendering it far more difficult and

13  costly for Almaty to trace and recover its assets in the U.S.  The Supreme Court's

14  recent decision in *RJR Nabisco* and its progeny do not preclude a RICO action in

15  these circumstances.  To the contrary, those precedents make clear that the CAC

16  alleges sufficient "domestic injury" on at least two alternative bases:

17  (1) Defendants' injury-producing conduct occurred in the U.S., and (2) Defendants

18  harmed Almaty's property interests, and Almaty itself, in the U.S.  The contrary

19  district court decision in *Bascuñán v. Elsaca* on which Defendants rely was

20  *reversed on appeal* shortly after Defendants filed the Motion.

21       Defendants' contention that Almaty's RICO claim should be dismissed on

22  *res judicata* grounds based on a recent opinion (the "SDNY Opinion") in a case

23  pending in the Southern District of New York, Case No. 15-cv-05345 (the "SDNY

24  Action") likewise fails.  Defendants do not and cannot satisfy the necessary *res*

25  *judicata* requirements, as there has been no "final judgment" and there is no

26  "identity of claims" in the SDNY Action.  Moreover, there has been a substantial

27  change in applicable law, because (as noted) the SDNY Opinion was explicitly

28  based on the same *Bascuñán v. Elsaca* decision that was later reversed by the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Second Circuit.  In any event, Defendants have long since waived any claim that

2   *res judicata* should apply here.

3        Defendants' contention of untimeliness is likewise meritless.  None of

4   Almaty's claims are time-barred, and Defendants' arguments to the contrary are

5   both incorrect and premature, as they seek *factual* determinations that the Court

6   may not properly make at this stage.  Finally, this Court has personal jurisdiction

7   over the so-called "Swiss Defendants," based on both their intentional misconduct

8   targeted at California, and their direct involvement in unlawful activity conducted

9   within California.  At a minimum, jurisdictional discovery is warranted.[1]

10       Having chosen to direct their money laundering and other unlawful activities

11  to the U.S., Defendants cannot now complain that they are being held to answer for

12  those wrongs in this Court.  The Motion should be denied in its entirety.

13  **II.    BACKGROUND**

14       **A.    Statement of Facts**

15       Almaty is the most populous city in Kazakhstan.  (CAC, ¶ 7.)  Viktor was

16  the mayor of Almaty from June 1997 until December 2004.  (*Id.*, ¶ 21.)  While in

17  office, Viktor abused his authority to steal hundreds of millions of dollars from the

18  people of Almaty by (among other things) rigging auctions of state-owned real

19  estate for the benefit of himself, his friends and his family, including Defendants

20  and co-conspirators Leila (his wife), Iliyas (his step-son), Elvira (his step-

21  daughter), Madina (his daughter-in-law), and Dmitry (his son-in-law).  (*Id.*, ¶¶ 8-

22  11, 20-27.)  In total, the Khrapunovs misappropriated more than 80 pieces of

23  public land and reaped approximately $300 million in illicit profits.  (*Id.*, ¶ 41.)

24

---

25  [1]     Defendants' attempt to "incorporate by reference" arguments regarding Rule
    9(b) that were raised in a prior motion to dismiss is wholly improper.  (*See* Mot.,
26  at 1.)  Not only does this violate applicable page-limit requirements, but the prior
    motion to dismiss addressed a *different* complaint, which has now been superseded
27  by the CAC.  To the extent the Court considers Defendants' improper Rule 9(b)
    arguments, Plaintiff incorporates by reference all arguments and case law cited in
28  Plaintiff's prior opposition (No. 15-cv-02628, Dkt. 26).

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    In order to conceal their unlawful conduct and escape the reach of

2  governmental authorities, the Khrapunovs began transferring the stolen funds out

3  of Kazakhstan through a series of sham entities and international bank accounts.

4  (*Id.*, ¶¶ 29-30.)  The Khrapunovs initially transferred these stolen funds to a variety

5  of different countries, including Switzerland, where Iliyas and Elvira were

6  residing.  (*Id.*, ¶ 29.)  By 2007, all of the Khrapunovs had fled to Switzerland, and

7  all of Almaty's stolen money had been taken out of Kazakhstan.  (*Id.*, ¶ 36.)

8    In 2010, Elvira and Dmitry relocated to California, and the Khrapunovs

9  began systematically moving significant portions of the stolen funds into the U.S.

10  in a further attempt to conceal the source of those funds and make them appear

11  legitimate.  (*Id.*, ¶¶ 31-32, 83-158.)  In particular, the Khrapunovs utilized various

12  sham holding companies and entities to surreptitiously purchase and re-sell more

13  than $32 million worth of real estate in California, including:  2578 Hutton Drive,

14  Beverly Hills ($4.97 million); 606 N. Alta Drive, Beverly Hills ($6.975 million);

15  628 N. Alta Drive, Beverly Hills ($7.2 million); 11986 Lockridge Road, Studio

16  City ($6.5 million); and 2 Narbonne, Newport Beach ($6.375 million).  (*Id.*,

17  ¶¶ 109-158.)  Each of these "unlawful purchase[s] of property caused additional

18  harm to Almaty in the U.S. by preventing Almaty [from accessing] its property and

19  [making] it more difficult and costly for Almaty to trace and recover its U.S.-based

20  assets."  (*Id.*, ¶¶ 113, 118, 125, 136, 145.)

21    The Kazakh government did not discover the Khrapunovs' unlawful conduct

22  until years after it occurred.  Kazakhstan's "Financial Police" filed two criminal

23  cases against Viktor on suspicion of abuse of power and fraud on May 27, 2011,

24  and ultimately opened 24 criminal cases against Viktor, Leila and Elvira for

25  embezzlement, fraud and related offenses.  (*Id.*, ¶ 37.)

26  **B.    Additional Actions Against the Khrapunovs**

27    In an attempt to portray the Khrapunovs as "victims" of government

28  persecution, Defendants recite a host of allegations regarding the Kazakh

LATHAM&WATKINS
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

government's purported use of litigation to pursue "political dissidents." (Mot., at 3-4.)  These allegations are not properly before the Court,[2] are irrelevant to the resolution of the Motion, and are factually incorrect in any event.  The Khrapunovs' unlawful conduct (and that of the other supposed "dissidents" cited by Defendants) has been independently recognized in a number of jurisdictions.  In 2012, the Swiss government began investigating the Khrapunovs on suspicion of money laundering in violation of Swiss law, and ordered their Swiss accounts and assets frozen.  (CAC, ¶ 38.)  Viktor, Iliyas and Leila are currently on INTERPOL's public "red notice" list.  (Request for Judicial Notice ("RJN"), Exs. A-C.)  BTA bank obtained a nearly $4 billion dollar judgment and worldwide freezing order against Mukhtar Ablyazov in the United Kingdom in 2012 (CAC, ¶ 30; RJN Ex. D, ¶¶ 4, 11), and Ablyazov himself was imprisoned in France and has been sentenced to 22 months' imprisonment in the United Kingdom for various acts of contempt (RJN Ex. D, ¶¶ 5-6).  Far from persecuted political "dissidents," Defendants are members of an internationally recognized organized crime ring.

In the later-filed SDNY Action on which Defendants erroneously base their *res judicata* defense, moreover, the court *granted* Almaty and BTA Bank's request for an attachment order in the amount of $69.3 million, after holding an extensive evidentiary hearing and concluding they were likely to succeed on the merits of their claims against Triadou (an entity controlled by Iliyas), based on a host of adverse factual and credibility findings against Triadou.  (RJN Exs. F, G.)

## III.   DEFENDANTS' MOTION SHOULD BE DENIED

### A.   Plaintiff's RICO Claim is Not Barred by *Res Judicata*

To succeed on their defense of *res judicata* (sometimes referred to as "claim preclusion"), Defendants must establish:  "(1) an identity of claims, (2) a final

---

[2]    *Read v. De Bellefeuille*, 2012 WL 12888326, at *2 (C.D. Cal. June 27, 2012) ("In evaluating a motion to dismiss, the Court generally cannot consider material outside the complaint, such as facts presented in briefs, affidavits, or discovery materials, unless such material is alleged in the complaint or judicially noticed.").

1   judgment on the merits, and (3) privity between parties" with respect to the SDNY

2   Action.  (Mot., at 9.)[3]  Defendants not only have failed to satisfy these basic *res*

3   *judicata* requirements, but they have long since waived any argument that *res*

4   *judicata* should apply.  Moreover, the *Bascuñán v. Elsaca* decision on which the

5   SDNY Opinion was based was subsequently *reversed on appeal* by the Second

6   Circuit.  Defendants' *res judicata* defense fails on this basis as well.

### 1.   There was no "Final Judgment on the Merits"

8          As an initial matter, Defendants' *res judicata* defense fails because there has

9   been no "final judgment" in the SDNY Action.  While the SDNY Opinion

10  concluded that the cross-plaintiffs' RICO claim should be dismissed, the court

11  entered no separate judgment to that effect and otherwise denied the cross-

12  defendants' motions to dismiss in several key respects.  (RJN Ex. L.)  The SDNY

13  Action remains active, with fact discovery set to close in early 2018.[4]

14         The SDNY Opinion is thus an unappealable interlocutory order.  The SDNY

15  cross-defendants opposed the cross-plaintiffs' efforts to certify it as a "final

16  judgment" under Rule 54(b) (RJN Ex. J), and the court denied the motion for

17  certification (*id.*, Ex. K).  The SDNY Opinion thus cannot support a *res judicata*

18  finding here.  *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369

19  n.5 (9th Cir. 1989) (because order was not certified under Rule 54(b), "it has no

20  preclusive effect"); *Riggio v. Serv. Corp. Int'l*, 476 F. App'x 135, 136 (9th Cir.

21  2012) ("The district court erred in applying *res judicata* to dismiss this case

22  because the [prior] action . . . had not yet reached final judgment.  Even assuming

---

[3]      In addition to the numerous other defects in Defendants' *res judicata* defense (discussed below), this defense cannot be applied to any parties other than Viktor and Iliyas, as none of the other Defendants were involved in the SDNY Action, and Defendants have failed to establish privity.  (*Cf.* Mot., at 11-14.)

[4]      Defendants' Motion cites *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) for the unremarkable proposition that a Rule 12(b)(6) dismissal may qualify as a "judgment on the merits," but ignores the finality requirement altogether.  (Mot., at 11.)  In *Moitie*, unlike the SDNY Action, "[t]he District Court dismissed all of the actions 'in their entirety,'" resulting in a final appealable judgment.  *Id.* at 396.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1  the order . . . constituted an adjudication on the merits, it would have been an

2  interlocutory order that – absent certification under Rule 54(b) – was not yet

3  entitled to *res judicata* effect."); Wright & Miller, 10 Fed. Prac. & Proc. Civ.

4  § 2661 (3d ed. 2017) ("[I]f no certificate issues, the court's decision or order

5  remains interlocutory and the above [*res judicata*] effects will not take place.").

6
7  **2.     There is no "Identity of Claims," and Defendants Have
          Long Since Waived any Argument to the Contrary**

8          Defendants contend there is an "identity of claims," because the SDNY

9  Action purportedly arose out of "the same transactional nucleus of facts," and

10  Almaty thus "could have brought" the instant RICO claim in the SDNY Action.

11  (Mot., at 10-11.)  This contention fails on both counts.

12          First, the SDNY Action is not based on "the same transactional nucleus of

13  facts."  There, cross-plaintiffs Almaty and BTA Bank (not a party here) seek to

14  recover funds stolen by Mukhtar Ablyazov (not a party here), laundered through

15  Triadou and other entities (not parties here), and invested in at least two New York

16  real estate projects (not at issue here).  As the SDNY court has observed:

17          [T]here is a "bona fide connection" between this lawsuit and the New
           York forum. . . .  Almaty and BTA Bank allege that Triadou
18          laundered embezzled funds stolen from Kazakhstan into New York
           real estate developments, including the Flatotel and Cabrini Medical
19          Center projects. . . .  Based on these allegations, they seek recovery of
           the property interests themselves . . . and any profits Triadou received
20          from the sale of those interests.

21  (RJN Ex. E, at 8.)

22          Here, in contrast, Almaty seeks to recover millions of dollars in stolen funds

23  (not at issue in the SDNY Action) that were laundered through real estate in

24  California (not New York), by a host of additional individuals and entities that are

25  not parties to the SDNY Action.  (*See* CAC, ¶¶ 111, 116, 123-24, 133-34, 139,

26  142, 150-51.)  While certain background allegations may be similar, the operative

27  RICO claims are not sufficiently identical to warrant the application of *res*

28  *judicata*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    Even if Almaty's RICO claim could be considered part of "the same

2  transactional nucleus of facts," Defendants have long since waived any argument

3  that *res judicata* should apply on that basis.  Any attempt by Almaty to assert

4  claims in the later-filed SDNY Action based on the "the same transactional nucleus

5  of facts" as the claims in this case would have constituted impermissible "claim

6  splitting."  *See Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052,

7  1058 (S.D. Cal. 2007).[5]  But neither the SDNY defendants nor Defendants here

8  *ever* objected to such purported claim splitting.  Instead, having litigated both cases

9  for several years, Defendants are belatedly attempting to "cherry pick" a single

10  favorable ruling – in an interlocutory order that did not dismiss any of the other

11  pending claims – and argue this order must be given *res judicata* effect.  The law

12  forbids this sort of gamesmanship.  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d

13  1116, 1119 (9th Cir. 2003) ("There is no reason to allow litigants to delay

14  objecting to dual proceedings until they receive a favorable judgment in one

15  proceeding.  We believe that permitting such conduct could only encourage

16  mischief."); *Super Van Inc. v. City of San Antonio*, 92 F.3d 366, 371 (5th Cir.

17  1996) ("A contrary rule, one imposing *res judicata* despite a defendant's . . .

18  acquiescence in the splitting of the claim, would encourage litigants to engage in

19  dishonest (or at least less than forthright) behavior to gain tactical advantage.").

20    By failing at the outset to object to claim splitting, Defendants waived any

21  ability to claim *res judicata* here based on the SDNY Opinion.[6]

---

22  [5]    "To determine if the doctrine of claim splitting applies to bar a subsequent

23  case, the Ninth Circuit borrows from the test for claim preclusion [*i.e.*, *res judicata*]."  *Id.*  Thus, the "most important criterion . . . is whether the two suits

24  arise out of the same transactional nucleus of facts."  *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1123 (C.D. Cal. 2016).

25

26  [6]    As the Restatement (Second) of Judgments explains:

27    Where the plaintiff is simultaneously maintaining separate actions
     based upon parts of the same claim, and in neither action does the
     defendant make the objection that another action is pending based on

28    the same claim, judgment in one of the actions does not preclude the

### 3.      The *Bascuñán* Decision was Reversed on Appeal

Defendants' *res judicata* argument also fails because the decision on which the SDNY Opinion was based has since been reversed.  *Carter v. United States*, 973 F.2d 1479, 1482 (9th Cir. 1992) (holding *res judicata* is "unwarranted if there has been a significant change in the legal climate") (quotation marks omitted).

In denying the motion for certification, the SDNY court recognized "there exists a substantial ground for difference of opinion with respect to the December 23 Order," which "analyzed an emergent and potentially difficult issue presented by the Supreme Court's decision in *RJR Nabisco*," but it concluded an appeal of its decision was unnecessary, because it would be duplicative of the pending appeal in *Bascuñán*.  (RJN Ex. K, at 3, 6 (reasoning "the Court of Appeals is scheduled to hear argument at the end of the month in plaintiffs' appeal . . . in *Bascuñán v. Elsaca*," which "presents the opportunity to apply *RJR Nabisco's* domestic-injury rule to a set of alleged facts featuring many of the same elements on which the parties' arguments turn here").)  The SDNY Opinion itself similarly recognized that it was based on the "*Bascuñán* rule."  *See City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 284 (S.D.N.Y. 2016) ("This Court agrees that the *Bascuñán* rule is consistent with the Supreme Court's focus in assessing the extraterritoriality of Section 1964(c) on injuries 'suffered overseas.'").

As discussed below, the Second Circuit subsequently *reversed* the district court's decision in *Bascuñán* (*see infra* Section III.B.2), fatally undermining the

---

plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

*Id*. at § 26(1)(a), comment a; *Trujillo v. City of Ontario*, 269 F. App'x 683, 684 (9th Cir. 2008) ("As a matter of law, we have ruled that parties who agree to split claims may waive *res judicata* effect. . . .  We have adopted the Restatement (Second) of Judgments [§ 26(1)(a)]"); *see also, e.g.*, *Super Van Inc.*, 92 F.3d at 371 ("Despite being fully informed and having ample opportunity to do so, none of the defendants objected to the splitting of the claims. . . .  Because they acquiesced in the splitting of the claims, we hold that the district court erred in holding that the instant suit is barred by *res judicata*.").

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
LOS ANGELES
US-DOCS\96629573
9
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   legal basis of the SDNY Opinion, which presumably will be revised prior to final

2   judgment.  *See* Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any

3   time before the entry of a judgment").  *Res judicata* cannot be applied here.[7]

4   **B.     Almaty has Alleged a "Domestic Injury"**

5       The Supreme Court addressed the extraterritorial application of RICO in

6   *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016).  The Court held

7   that, while a RICO claim may be based on the commission of certain predicate acts

8   in foreign countries, *id*. at 2105, and the alleged RICO enterprise may comprise (in

9   whole or in part) foreign entities, *id*. at 2104, a civil plaintiff must allege some

10  form of "domestic injury to its business or property," *id.* at 2106.  Because the

11  plaintiffs had disclaimed any "domestic injury" in that case, the Court declined to

12  decide what might constitute a "domestic injury," observing only that this inquiry

13  would depend on the particular facts alleged in a given case.  *Id.* at 2111 ("The

14  application of this rule in any given case will not always be self-evident, as

15  disputes may arise as to whether a particular alleged injury is 'foreign' or

16  'domestic.'").  The Court further instructed, however, that the domicile of a foreign

17  plaintiff was not determinative.  *Id.* at 2110, n.12 (the domestic injury requirement

18  "does not mean that foreign plaintiffs may not sue under RICO").

19      Here, Defendants' contention that Almaty has not alleged a "domestic

20  injury" relies on the so-called "residency-based" test adopted in *Bascuñán* (*see*

21  Mot., at 15-16), which was inconsistent with *RJR Nabisco* and has now been

22  rejected by both the Second Circuit and a leading case in this district (*Tatung v.*

23

24  [7]     Defendants' Motion does not raise the issue of issue preclusion (sometimes
        referred to as collateral estoppel), which, while related to *res judicata*, is subject to
25  distinct legal requirements.  In any event, any claim of issue preclusion would fail
        for many of the same reasons set forth above, including:  (1) no "final judgment";
26  (2) no identity of issues; (3) the reversal of *Bascuñán*; and (4) waiver.  *See also*
        *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp. 1060, 1065 (N.D. Ill. 1998)
27  ("[B]y failing to timely object to separate actions, a defendant is deemed to
        acquiesce in the plaintiff's simultaneous suits and waives any *res judicata* or
28  collateral estoppel defense.") (collecting cases from 1st, 5th, 7th & 9th Circuits).

1  *Hsu*).[8]  Under the correct legal standard, *RJR Nabisco* and its progeny make clear

2  that the CAC properly alleges a "domestic injury" on at least two alternative bases:

3  (1) Defendants' injury-producing conduct occurred in the U.S.; and (2) Defendants

4  harmed Almaty and Almaty's property interests in the U.S.

### 1. Almaty Suffered Domestic Injury Because it was Harmed by Unlawful Conduct that Occurred in the U.S.

7  Because Defendants engaged in injury-producing racketeering activities in

8  the U.S., Almaty has alleged a "domestic injury" under *RJR Nabisco*.

9  The Court in *RJR Nabisco* mandated a two-step framework for evaluating

10  the potential extraterritorial application of a statute.  At step one, a court must

11  analyze the statute's text to determine whether Congress intended the statute to

12  apply extraterritorially.  *RJR Nabisco*, 136 S. Ct. at 2101.  If not, the court must

13  then determine (at step two) whether the case involves a permissible "domestic

14  application of the statute."  *Id.*  This second step is accomplished by examining the

15  statute's "focus."  *Id.*  "If the conduct relevant to the statute's focus occurred in the

16  United States, then the case involves a permissible domestic application, even if

17  other conduct occurred abroad."  *Id.*  As discussed above, the Court concluded (at

18  step one) that RICO's private right of action provision, 18 U.S.C. § 1964(c), does

19  not apply extraterritorially, *id.* at 2101, but the Court expressly declined to define

20  what (under step two) constitutes a "domestic injury" under the statute.  That issue

21  must be resolved in any particular case involving section 1964(c), as with all

22  federal laws, by reference to whether "conduct relevant to the statute's focus

23  occurred in the United States."  *Id.* at 2101.

---

26  [8]  Virtually all of the cases on which Defendants rely – including the SDNY Opinion on which they erroneously assert *res judicata* – explicitly adopted this now-defunct test.  (*See* Mot., at 5-9, 14-17 (citing *City of Almaty v. Ablyazov*, *Absolute Activist Value Master Fund Ltd. v. Devine*, *Dandong v. Hu*, *Li Lan v. Walsh*, *Exceed Indus., LLC v. Younis.*, *Bascuñán v. Elsaca* (district court opinion).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    The "focus" of section 1964(c) (and its treble damages provision) is

2    deterrence:  "The object of civil RICO is thus not merely to compensate victims

3    but to turn them into prosecutors, 'private attorneys general,' dedicated to

4    eliminating racketeering activity. . . . The provision for treble damages is

5    accordingly justified by the expected benefit of suppressing racketeering activity,

6    an object pursued the sooner the better."  *Rotella v. Wood*, 528 U.S. 549, 557-58

7    (2000).  The "conduct relevant to [section 1964(c)'s] focus" is thus the conduct it

8    was enacted to deter, *i.e.*, the racketeering activity itself.  Accordingly, where a

9    defendant engages in racketeering activities in the U.S. that injure the plaintiff, that

10   plaintiff has suffered a "domestic injury" under *RJR Nabisco*.[9]  *See RJR Nabisco*,

11   136 S. Ct. at 2104 ("Congress, after all, does not usually exempt foreigners acting

12   in the United States from U.S. legal requirements.").  No other conclusion would

13   make sense.  It is inconceivable that Congress intended to deny a remedy in the

14   U.S. for illegal acts committed here, regardless of where the victims are domiciled.

15   Almaty has amply alleged domestic injuries from crimes committed in the

16   U.S.  The CAC alleges two related, but distinct, RICO schemes:  the embezzlement

17   of funds in Kazakhstan *and* the extensive laundering and conversion of stolen

18   money *in the U.S.*  (CAC, ¶¶ 20; 83-157.)  The CAC further alleges that the latter

19   domestic acts of money laundering injured Almaty – on top of the injuries caused

20   by the underlying embezzlement – both by (1) concealing Almaty's property and

21   depriving Almaty of its use (*id.* at ¶ 113) and (2) causing Almaty to devote

22   substantial monies and time "in the United States" (including, *e.g.*, by sending

23   representatives to the U.S.) to trace and recover its stolen property (*id.* at ¶ 84).

24   Almaty has accordingly alleged the "domestic injury" required under *RJR Nabisco*.

25

26   [9]    While the Court in *RJR Nabisco* observed in passing that some predicate
      acts in that case were alleged to have occurred in the U.S., it did not address
27   whether those acts were sufficient to establish a "domestic injury."  The Court
      explicitly declined to address that issue because the plaintiffs had stipulated to the
28   district court that their injuries were foreign.  *RJR Nabisco*, 136 S. Ct. at 2111.

1  *See Maiz v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001) ("Defendants' money

2  laundering and related [] offenses injured the Plaintiffs by allowing Defendants to

3  continue to deprive the Plaintiffs of the use and benefit" of the misappropriated

4  funds); *Exec. Comm. Representing the Signing Petitioners of the Archdiocese of*

5  *the Western U.S. v. Kaplan*, 2004 U.S. Dist. LEXIS 31799, at *11 (C.D. Cal. Sept.

6  16, 2004) ("To the extent the predicate acts further the scheme of the defendant,

7  the defendant's actions are said to have caused the injury.").

8         The Motion ignores the CAC's allegations that, after committing crimes in

9  Kazakhstan, Defendants committed myriad illegal acts in violation of RICO *in the*

10 *U.S.*, and the Motion therefore fails even to consider this basis for domestic injury.

11 (Mot., at 16-17.)  But as the Second Circuit made clear in *Bascuñán*, each alleged

12 RICO scheme, and each alleged injury, must be analyzed *separately*, and even a

13 single domestic injury may support a valid RICO claim – "even if all of the other

14 injuries are foreign." *Bascuñán v. Elsaca*, 2017 U.S. App. LEXIS 21519, at *14,

15 23 (2d Cir. 2017).

16        Finally, providing a U.S. forum to remedy harms caused by injury-producing

17 conduct in the U.S. is particularly important where, as here, seeking relief in the

18 plaintiff's home country would be "an exercise in futility." *Akishev v. Kapustin*,

19 2016 U.S. Dist. LEXIS 169787, at *20-21 (D.N.J. Dec. 8, 2016) (holding the

20 plaintiff had alleged a "domestic injury," where the defendants "[chose] to operate

21 their fraudulent scheme" in the U.S. and had retained their "ill-gotten proceeds" in

22 the U.S.).  Defendants fled Kazakhstan and conspired to steal and launder money

23 in the U.S. for the very *purpose* of rendering the ongoing proceedings in

24 Kazakhstan and elsewhere an "exercise in futility."  (CAC, ¶¶ 75-157 .)  Having

25 forced Almaty to pursue them (and their "ill-gotten proceeds") in this forum,

26 Defendants cannot now claim there has been no domestic injury.  Foreclosing such

27 a foreign plaintiff from seeking redress in U.S. courts for crimes committed in the

28 U.S. would severely disrupt international comity, not foster it.

## 2.   Almaty Also Suffered Domestic Injury Because Defendants' Unlawful Acts Caused Almaty and Almaty's Property Interests Harm in the U.S.

As illustrated by the Second Circuit's recent decision in *Bascuñán v. Elsaca*, Almaty has also suffered a "domestic injury" because Defendants harmed Almaty, and misappropriated and harmed Almaty's property interests, in the U.S.

In *Bascuñán*, the district court applied the "residency-based" test in dismissing the plaintiff's RICO claim, reasoning that all of the alleged RICO injuries were "suffered" in Chile where the plaintiff resided. *Bascuñán*, 2017 U.S. App. LEXIS 21519, at *15. The Second Circuit flatly rejected this test, reasoning that "*RJR Nabisco* took care to make plain that its opinion should not be taken to 'mean that foreign plaintiffs may not sue under RICO.' That, of course, is exactly the effect of the District Court's residency-based test." *Id.* at *29. Instead, the Court of Appeals held that while the "mere use of a domestic bank account" does not "on its own, turn an otherwise foreign injury into a domestic one," *id.* at *26, the "misappropriation of tangible property located in the United States . . . causes a 'domestic injury' for purposes of civil RICO, even if the owner of the property resides abroad." *Id.* at *36. Analogizing to conversion law, which it deemed a "particularly appropriate comparison," *id.* at *28 n.56, the Court further reasoned that money is a form of property, and an injury to the plaintiff's money is thus "analogous to an injury to tangible property, by which we mean property that can be fairly said to exist in a precise location." *Id.* at *27. The Court thus made clear that the particular form of property interest harmed – *e.g.*, real property, chattels, or funds held in a "trust" – is irrelevant, so long as it "could be located within the jurisdiction of the United States." *Id.* at *32.

As part of their U.S. money laundering scheme, Defendants repeatedly transferred stolen assets between individual and entity co-conspirators within the U.S. (CAC, ¶¶ 83-103), and cycled these stolen assets through various forms, including money, chattels, multi-million dollar parcels of real estate and sham

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   domestic business ventures.  (*Id.*, ¶¶ 104-152.)  Analogizing to conversion law,

2   which *Bascuñán* instructs is a "particularly appropriate comparison," each act of

3   transferring Almaty's stolen funds to a co-conspirator in the U.S. constituted a

4   *separate* act of domestic conversion.  *Marei von Saher v. Norton Simon Museum of*

5   *Art at Pasadena*, 2015 U.S. Dist. LEXIS 188627, at *18 (C.D. Cal. Apr. 2, 2015)

6   ("Under California law, each time stolen property is transferred to a new possessor,

7   a new tort or act of conversion has occurred.").  Defendants have thus repeatedly

8   converted Almaty's property within the jurisdiction of the U.S., and thereby caused

9   Almaty "domestic injury."  *Bascuñán*, 2017 U.S. App. LEXIS 21519, at *6

10  ("Because this property was located within the United States when it was stolen,

11  we conclude that Bascuñán has plausibly alleged a domestic injury

12  notwithstanding the fact that he is a citizen and resident of Chile.").

13          Indeed, it is firmly established that, under California law, Almaty had a

14  domestic interest in property from the moment Defendants first acquired assets in

15  the U.S. with stolen funds:

16          It is hornbook law that, when a fraudster acquires property from a
17          victim by fraud, the fraudster holds the property in constructive trust
            for his victim.  Thus, "[i]t is an elementary mistake to suppose that a
18          court creates the trust.  The expression 'the court constructs the trust'
            is 'absurd.' [ ] The obligation on the fraudster is imposed by law and
19          arises immediately with his acquisition of the proceeds of the fraud.

20  *Sec. & Exch. Comm'n v. Private Equity Mgmt. Grp., Inc.*, 2012 U.S. Dist. LEXIS

21  195213, at *4 (C.D. Cal. Sept. 28, 2012) (quoting *United States v. $4,224,958.57*,

22  392 F.3d 1002, 1004 (9th Cir. 2004)); Cal. Code Civ. Proc. § 2223 ("One who

23  wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the

24  owner.").  In addition to harming Almaty by concealing its stolen funds in the U.S.

25  and thereby causing Almaty to incur substantial expenses "in the United States" to

26  trace and recover its stolen assets (CAC, ¶¶ 84, 113, 118, 125, 136, 145; *supra*

27  Section III.B.1), Defendants also harmed Almaty's California property rights by

28  (among other things) unlawfully liquidating real property in which Almaty had a

1  cognizable property interest, and absconding with the proceeds.  (*See* CAC,

2  ¶¶ 133-51.)[10]

3       Moreover, Almaty is separately entitled to the *appreciation* in value of the

4  property Defendants purchased with its stolen funds.  *See Private Equity Mgmt.*

5  *Grp.*, 2012 U.S. Dist. LEXIS 195213, at *6 ("[T]he beneficiary of the constructive

6  trust is generally entitled to the enhancement in value of the trust property.").

7  Here, Defendants made millions of dollars in profits by "flipping" California real

8  estate in which Almaty had (and has) enforceable property rights.[11]  Almaty has

9  suffered additional domestic injury through Defendants' ongoing refusal to

10  disgorge these profits, which were derived entirely from domestic real property.

11       **3.**     *Tatung* **Affirms that Almaty Suffered a "Domestic Injury"**

12       The holding in *Tatung Co. v. Hsu* further affirms that Almaty has alleged a

13  "domestic injury," based on both (1) Defendants' injury-producing conduct in the

14  U.S., and (2) the harm to Almaty's property rights (and Almaty itself) in the U.S.

15       Like the Second Circuit in *Bascuñán*, the district court in *Tatung* rejected the

16  "residency-based" test for domestic injury, reasoning it would be "ludicrous" to

17  prevent foreign plaintiffs from suing under RICO, even where "the actions causing

18  the injury took place in the United States," or where the injuries occurred "while

19  they [were] working, traveling, or doing business in this county[.]"  *Tatung Co.,*

20  *Ltd. v. Hsu*, 217 F. Supp. 3d 1138, 1155 (C.D. Cal. 2016).  There, the defendants

---

22  [10]     California law governs the property interests at issue here.  And in any
23  event, even courts that have construed the right to seek a constructive trust more
narrowly than mandated by California law, *see, e.g., United States v. Brimberry*,
779 F.2d 1339, 1348 (8th Cir. 1985) (reasoning "[u]ntil a court grants the victim
24  such a constructive trust remedy, however, the victim merely has a right to seek
such a remedy"), have nonetheless recognized that "[a] right to seek a constructive
25  trust over specific property is a property interest in itself."  *Id.*  This property
interest, on its own, is sufficient to support a "domestic injury" under *Bascuñán*.
26  *See Bascuñán*, 2017 U.S. App. LEXIS 21519, at *32 (holding the particular form
of property interest is irrelevant, so long as it can be deemed "located within the
27  jurisdiction of the United States").

28  [11]     Defendants, *e.g.*, purchased property at 606 N Alta, Beverly Hills for $5.45
million and sold it sixteen months later for $6.97 million.  (CAC, ¶¶ 116, 139.)

1  had conspired to siphon funds from a U.S.-based debtor of the plaintiff, leaving the

2  debtor an "empty shell" that was unable to pay an arbitration award in the

3  plaintiff's favor. *Id.* at 1156. Reasoning the arbitration award was a form of

4  "property" under California law, and "[a]t least one of the eventual transferees was

5  an American corporation," the court held that the plaintiff had suffered a domestic

6  injury under *RJR Nabisco*, because the "'defendants specifically targeted their

7  conduct at California' with the aim of 'thwarting [plaintiff's] rights in California.'"

8  *Id*. Distinguishing *Uthe Tech. Corp. v. Allen*, upon which Defendants rely here

9  (Mot., at 16-17), the court emphasized that "many of the actions that constitute part

10  of the RICO scheme took place in California." *Id.* at 1157.

11       Here, as in *Tatung*, "many of the actions that constitute part of the RICO

12  scheme took place in California" (CAC, ¶¶ 83-158); several conspirators are U.S.-

13  based individuals and entities (*id.*, ¶¶ 11-12); and Defendants specifically targeted

14  their conduct at California to thwart Almaty's rights in California (*see supra*

15  Section III.B.2), by siphoning money out of domestic entities and real property in

16  which Almaty had a cognizable property interest. (*Id.*, ¶¶ 108, 139, 141, 148-51.)

17  Indeed, Defendants sold several California properties *after* this action was filed

18  (siphoning roughly $14 million out of the state) in order to prevent Almaty from

19  recovering those funds by way of a constructive trust or otherwise. (*Id.*, ¶¶ 150-

20  51.) This transparent attempt to thwart Almaty's rights under U.S. and California

21  law, on its own, satisfies the domestic injury requirement.

22      **C.   Almaty's Claims are Timely**

23       Defendants' contention that Almaty's claims are time-barred is both

24  incorrect and premature, as it calls for factual determinations that cannot be made

25  at this stage.[12]

26  _____

27  [12]   Defendants' Motion seems to suggest that Kazakh law should govern the applicable statute of limitations (Mot., at 18-19), but it then acknowledges that the underlying limitations period is the same under both California and Kazakh law

28  (three years) (Mot., at 19 n.7), and affirms that the date on which Almaty's claims

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1       Almaty's claims accrued for statute of limitations purposes when it

2 "discover[ed] or should have discovered" the basis of those claims.  (Mot., at 19.)

3 The date on which this occurred is a "question of fact," *Fox v. Ethicon Endo-*

4 *Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005), that can be resolved on the pleadings

5 only if "it appears beyond doubt that the plaintiff can prove no set of facts that

6 would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United*

7 *States*, 68 F.3d 1204, 1207 (9th Cir. 1995).  Here, Defendants admit the "CAC

8 does not explicitly state when Almaty discovered Viktor's and his alleged co-

9 conspirators' [mis]conduct[.]"  (Mot., at 19.)  This admission is dispositive, and

10 Defendants' timeliness challenge fails on this basis alone.

11       Defendants nonetheless argue that since "Kazakh authorities" – not Almaty

12 – allegedly began investigating Defendants in 2007, Almaty's claims must be time-

13 barred.  (Mot., at 19.)  To the extent Defendants contend the national government's

14 investigation (that is not alleged to have been public) should have put Almaty on

15 notice of its claims, this too is a fact question that cannot be resolved at this time.

16 *Cleveland v. Internet Specialties West, Inc.*, 171 Cal. App. 4th 24, 31 (2009)

17 ("[W]hether [plaintiff] exercised reasonable diligence [for accrual purposes] is a

18 question of fact for the court or jury to decide.") (quotations omitted).

19       Defendants also ignore the CAC's core reliance on Defendants' ongoing

20 pattern of misconduct in the U.S. after the initial embezzlement of funds.  *Aryeh v.*

21 *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013) ("The continuing violation

22 doctrine aggregates a series of wrongs or injuries for purposes of the statute of

23

24 "accrued" for limitations purposes is governed by California and U.S. law.  (Mot.,
at 19); *see also, e.g.*, *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at

25 *32 n.163 (C.D. Cal. Sept. 25, 2006) (California law governs "when the claim
accrued," even when applying "borrow[ed]" limitations period).  In any event,

26 none of Almaty's claims are time-barred under Kazakh law, which provides
numerous bases to toll or otherwise suspend the operative limitations period

27 (including suspending the limitations period where, as here, related criminal
investigations are pending), and any attempt to argue otherwise would be

28 premature, as these issues may be resolved under Kazakh law only after a "hearing
on the merits."  (*See* Declaration of Alexander Korobeinikov.)

LATHAM&WATKINS\ LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    limitations, treating the limitations period as accruing for all of them upon

2    commission or sufferance of the last of them.").  Defendants' pattern of

3    misconduct continued well after the filing of this action, including as recently as

4    August 2016.  (CAC, ¶ 151.)  Almaty's claims are timely on this basis as well.

5          Even if Defendants' misconduct were not deemed a "continuing violation,"

6    the result would be the same, because each unlawful transfer of stolen property in

7    the U.S. would then constitute a separate violation of California law, for which the

8    statute of limitations began running anew.  *Marei*, 2015 U.S. Dist. LEXIS 188627,

9    at *18 ("Under California law, each time stolen property is transferred to a new

10   possessor, a new tort or act of conversion has occurred."); *Soc'y of Cal. Pioneers v.

11   Baker*, 43 Cal. App. 4th 774, 782-83 (1996) ("[T]he statute of limitations in an

12   action concerning stolen property [runs] anew against a subsequent purchaser.");

13   *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1014 (N.D. Cal. 2015) ("Separate,

14   recurring breaches of fiduciary duty may provide a basis for the application of

15   continuous accrual, where each violation triggers its own statute of limitations.");

16   *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2014 WL 5112057, at *6 (S.D.

17   Cal. Oct. 10, 2014) (duty not to commit fraud is "a continuing one, susceptible to

18   recurring breaches").  Almaty's conspiracy claim similarly did not accrue until

19   "the date of the commission of the last overt act in pursuance of the conspiracy"

20   (Mot., at 20), which occurred in August 2016 (at the latest), well after this action

21   was filed (*see* CAC, ¶ 151).

22         Almaty's claims are additionally timely under the doctrine of equitable

23   tolling, which "applies when the plaintiff is prevented from asserting a claim by

24   wrongful conduct on the part of the defendant[.]"  *Stoll v. Runyon*, 165 F.3d 1238,

25   1242 (9th Cir. 1999); *Lewis v. Superior Court*, 175 Cal. App. 3d 366, 372 (1985)

26   (same).  Here, Defendants fled Kazakhstan and engaged in a worldwide conspiracy

27   to steal and launder money for the very *purpose* of hiding their misconduct,

28   "concealing the source of the stolen funds" (CAC, ¶ 86), and preventing Almaty

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    from discovering (or pursuing) their claims in the U.S.  (*Id.*, ¶¶ 75-157.)

2          Finally, Defendants' arguments regarding the timeliness of Almaty's RICO

3    claim are likewise baseless.  "Because a RICO cause of action cannot accrue until

4    all the elements exist, . . . no statute of limitations can begin to tick until a pattern

5    exists[.]" *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996).  Here, Almaty's

6    RICO claim is predicated on Defendants' pattern of U.S. money-laundering

7    activities (*see* CAC, ¶¶ 159-169), which allegedly began in October 2010 (CAC,

8    ¶ 111).  Almaty filed this action on May 13, 2014, well before the earliest *possible*

9    expiration of the four-year limitations period (*i.e.*, in October 2014, four years after

10   the alleged pattern first came into existence).  As with Almaty's state law claims,

11   the date on which Almaty "knew or should have known" of its RICO injuries

12   (Mot., at 20) is a fact question that cannot be resolved at this stage.  *Living*

13   *Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005).

14   In any event, where "the alleged wrongful conduct is continuing in nature, . . . the

15   statute of limitations does not begin to run [on a RICO claim] until the wrongful

16   conduct ends." *Mir v. Deck*, 2013 WL 4857673, at *7 (C.D. Cal. Sept. 11, 2013)

17   (citing *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)).  Here, the

18   wrongful conduct continued through (at least) August 2016.  (CAC, ¶ 151.)[13]

19   Finally, Almaty's RICO claim is also timely under the doctrine of equitable tolling,

20   for the reasons discussed above.  *See, e.g.*, *McCool v. Strata Oil Co.*, 972 F.2d

21   1452, 1465 (7th Cir. 1992) (equitable tolling applies to RICO claims).

22       **D.**    **This Court Has Personal Jurisdiction Over All Defendants**

23         Defendants' contention that this Court lacks personal jurisdiction over

24   Viktor, Leila, Iliyas and Madina (whom they label "Swiss Defendants") because

25   these individuals reside in Switzerland (Mot., at 21) fails as a matter of law.

26   _____

27   [13]    Even if Defendants' racketeering activities were not deemed a continuing
RICO violation, each transaction alleged in the CAC would then constitute a new
and independent act, giving rise to a separate accrual period. *See Grimmett*, 75

28   F.3d at 510-14; *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

As an initial matter, Defendants do not and cannot challenge this Court's jurisdiction over any of the non-"Swiss Defendants," which include two individuals who reside in California (Elvira and Dmitry), and numerous U.S. and California shell entities that were used to carry out Defendants' U.S. money laundering scheme.  (CAC, ¶¶ 10-13.)  Nor do Defendants dispute that these California-based Defendants were acting as agents of the Swiss Defendants (CAC, ¶ 15) when they converted and laundered money in California (*id.*, at ¶¶ 111-20, 123-27, 133-39, 142, 144-47, 150-52).  To the contrary, Defendants expressly *rely* on these agency allegations in their Motion.  (Mot., at 13 ("[A]ll defendants, including the entities, were at all times '[a]gents . . . of the Individual Defendants,' including Viktor and Iliyas.").)  Swiss Defendants' jurisdictional challenge fails on this basis alone.  *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) ("uncontroverted allegations in the complaint must be taken as true" for personal jurisdiction analysis); Rutter Group Prac. Guide, Fed. Civ. Proc. Before Trial, § 3:83 (2017) ("Agent's acts imputed to principal" for personal jurisdiction analysis) (collecting cases).

In any event, courts may exercise personal jurisdiction over non-resident defendants where they "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole*, 303 F.3d at 1110 (citations omitted).  Courts thus may exercise "specific jurisdiction" where the following requirements are met:  "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1  and substantial justice, *i.e.* it must be reasonable." *Id*. at 1111.  All of these

2  requirements are met here.

3       **1.**    **Defendants Purposely Directed Their Activities at California**

4         "[P]urposeful availment is satisfied even by a defendant 'whose only

5  'contact' with the forum state is the 'purposeful direction' of a foreign act having

6  effect in the forum state.'" *Dole*, 303 F.3d at 1111 (citation omitted).  Personal

7  jurisdiction is thus appropriate under the so-called "effects test" where a non-

8  resident defendant "(1) committed an intentional act, (2) expressly aimed at the

9  forum state, (3) causing harm that the defendant knows is likely to be suffered in

10  the forum state." *Id*.  Even a "single forum state contact can support jurisdiction"

11  under this test. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

12         Here, Swiss Defendants do not and cannot dispute that they (1) committed

13  intentional acts (2) aimed at California.  (Mot., at 23.)  Swiss Defendants not only

14  transferred stolen funds from Switzerland into the U.S. in order to launder those

15  funds through California real estate (CAC, ¶¶ 116-20, 123-27) – which is sufficient

16  on its own to establish personal jurisdiction – but they also *personally participated*

17  in these California money laundering activities.  Iliyas and Madina, for example,

18  purchased two multi-million dollar homes in Beverly Hills, California (at 606 N.

19  Alta and 628 N. Alta) with stolen funds wired from Switzerland.  (CAC, ¶¶ 116-

20  20, 123-27; Declaration of Jonathan M. Jackson ("Jackson Decl."), Exs. 4-10.)

21  While they used various shell companies and co-conspirators to effectuate these

22  purchases, the limited discovery to date makes clear that they participated in and

23  controlled both transactions.  (CAC, ¶¶ 117-18, 124-25; Jackson Decl., Ex.1, at 5

24  (email from Iliyas and Madina's real estate agent, Zach Goldsmith, congratulating

25  Iliyas on acceptance of offer for 606 N. Alta; Iliyas instructing attorney Marc

26  Gillieron to wire purchase price); *id.* at Ex. 2 (Goldsmith referring to Iliyas as "the

27  boss" and "the main guy who controls the entity and makes the decisions"); *id.* at

28  Ex. 3 (Goldsmith referring to Iliyas as owner of 628 Holdings); *see also*

1  Consolidated Case No. 15-cv-02628, Dkt. 30, Exhibits 2, 3, 29[14] (exhibits showing,

2  respectively, (1) that Madina agreed to $6.2 million purchase price for 628 N. Alta;

3  (2) that Madina considered 606 N. Alta a "leading candidate;" and (3) Iliyas

4  confirming meeting at 606 N. Alta property with Goldsmith).)

5       So-called "Swiss Defendant" Leila not only participated in the laundering of

6  funds through California real estate, but she also received checks payable to her

7  *personal address in Studio City, California*.  (Jackson Decl., Ex.11, at 8-10.)

8  Indeed, subject to further discovery, Leila may well be subject to this Court's

9  "general jurisdiction" based on her California residence.  (*Cf.* Mot., at 22.)

10       Defendants' sole argument regarding the first prong of the jurisdictional

11  analysis is that, because Almaty does not reside in California, the harm caused by

12  Defendants was not "felt" in California and was instead "felt halfway around the

13  globe, in Kazakhstan."  (Mot., at 23.)  But any supposed "residency-based"

14  requirement has been rejected in the personal jurisdiction context, just as it has

15  been rejected in the RICO "domestic injury" analysis.  *See Tatung Co., Ltd. v. Hsu*,

16  43 F. Supp. 3d 1036, 1049 (C.D. Cal. 2014) ("[P]laintiff's residence in the forum

17  State is not a separate requirement, and lack of residence will not defeat

18  jurisdiction established on the basis of defendant's contacts.") (quoting *Keeton v.*

19  *Hustler Magazine, Inc*., 465 U.S. 770, 775 (1989)).  As discussed above,

20  Defendants' extensive acts of conversion and money laundering *in California*,

21  including the unlawful purchase and sale of millions of dollars of real estate *in*

22  *California*, caused Almaty harm *in California*.  (*See supra* Section III.B.1-3).

23       Indeed, even if Defendants were correct that most of the harm they caused

24  was "felt" in Kazakhstan, this would be legally irrelevant for jurisdictional

25

26  [14]    By this Court's Order entered August 24, 2015 (No. 15-cv-02628, Dkt. 29)
these exhibits were filed under seal (No. 15-cv-02628, Dkt. 30) as exhibits to the
27  Gerchik Declaration in Support of Plaintiff's Opposition to Motion to Dismiss (No.
15-cv-02628, Dkt 28-1).  For the convenience of the Court and the parties, Plaintiff
28  is re-submitting these exhibits under seal concurrently herewith.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES
US-DOCS\96629573
23
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

purposes.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (holding "the 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered" elsewhere).  The CAC alleges that Defendants' California money laundering activities "caused additional harm to Almaty in the United States by [among other things] preventing Almaty access to its property and [making] it more difficult and costly for Almaty to trace and recover its U.S.-based assets." (CAC, ¶ 113); *see also Maiz*, 253 F.3d at 674 ("Defendants' money laundering and related [] offenses injured the Plaintiffs by allowing Defendants to continue to deprive the Plaintiffs of the use and benefit" of stolen funds).

## 2. Almaty's Claims Arise out of Defendants' California-Related Activities

With respect to the second prong of the personal jurisdiction analysis, "[t]he claims arise out of a defendant's forum-related activities if plaintiff would not have a cause of action 'but for' defendant's contacts with the forum." *Planned Parenthood of Columbia/Williamette, Inc. v. Am. Coal. of Life Activists*, 945 F. Supp 1355, 1368 (D. Or. 1996) (*citing Ziegler v. Indian River Cty.*, 64 F.3d 470, 474 (9th Cir. 1995)).  The "but for" test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum." *Id.*

Here, it is clear that *but for* Defendants' extensive California-based money laundering activities, Almaty would not be suffering harm in California.  Instead, Almaty already would have recovered (or, at a minimum, would be able to recover more easily) the tens of millions of dollars in stolen funds and assets that Defendants have unlawfully laundered through, and hidden in, California.  (CAC, ¶¶ 111, 116, 123-24, 128, 133-34, 139, 142, 150-51.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

24

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

3.      The Exercise of Personal Jurisdiction is Reasonable

With respect to the third prong, Defendants bear the burden of "'present[ing] a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Defendants have not met this heavy burden here.

In conducting the reasonableness analysis, courts weigh seven factors: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Ziegler*, 64 F.3d at 475.

As discussed above, Swiss Defendants' purposeful injection into California (Factor 1) has been extensive, and included numerous acts of conversion, real estate purchases and banking transactions in and to this state. (*See* s*upra* Section III.D.1.) Any purported burden of litigating in California (Factor 2) is minor. Swiss Defendants were not unduly "burdened" when they purchased homes in California, and they cannot now claim an excessive burden in having to defend this action based directly on those purchases. As noted above, numerous other Defendants and co-conspirators (including two of Swiss Defendants' family members) reside in California, and Swiss Defendants have already hired competent local counsel to defend them in this district. The minimal burden of litigating here cannot outweigh Almaty's interest in recovering its stolen property in this forum. *See, e.g.*, *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (recognizing that "modern advances in communications and transportation have significantly reduced the burden of litigating in another country").

While Defendants claim there is a risk of conflict with Swiss tribunals (Factor 3) "because the Swiss authorities have been investigating Almaty's

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

25

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1    allegations against the Swiss Defendants since 2012" (Mot. at 25), the Swiss

2    Government is investigating Defendants for acts of theft and money laundering *in*

3    *Switzerland* in violation of *Swiss law*.  Nothing in Defendants' Motion suggests

4    that Swiss authorities intend to investigate or prosecute the conduct at issue here,

5    which occurred *in the U.S.* in violation of *U.S. and California law*.

6         California's interest in this dispute (Factor 4) has already been recognized by

7    the Ninth Circuit.  *City of Almaty v. Khrapunov*, 685 F. App'x. 634, 636 (9th Cir.

8    2017) ("Almaty's challenge focuses on allegedly unlawful activities that occurred

9    within California, which vests California with an interest in the dispute.").

10   California also provides the most efficient forum in which to resolve this action

11   (Factor 5), which concerns California and U.S.-based conduct in violation of

12   California and U.S. law.  Key evidence regarding Defendants' property purchases

13   and other money laundering activities is located in California, including potential

14   witnesses (*e.g.*, Iliyas's real estate agent, Mr. Goldsmith, and accountant, Amnon

15   Mizrahi) and related documents (banking statements, escrow documents, etc.).  *See*

16   *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (when

17   determining which forum will provide the most efficient resolution, courts look to

18   where witnesses and evidence are likely to be located).

19        With respect to Factor 6, Defendants baldly assert there is "no credible

20   reason why Almaty has an interest in litigating here, as opposed to Kazakhstan or

21   Switzerland[.]" (Mot., at 26.)  To the contrary, Defendants *forced* Almaty to

22   pursue its claims here when they fled Kazakhstan and laundered millions of dollars

23   of stolen funds into California real estate.  (CAC, ¶¶ 75-157.)  Neither Swiss nor

24   Kazakh courts can provide Almaty the relief it seeks, nor do they have power over

25   Almaty's stolen property that remains in California and the U.S.

26        Finally, while Defendants assert that Switzerland is an adequate alternative

27   forum (Factor 7), they provide no factual or legal basis for this claim.  (Mot., at 26-

28   27.)  Indeed, the Ninth Circuit has already held that Defendants failed to

1  demonstrate Switzerland is an "adequate alternative forum" for this case.

2  *Khrapunov*, 685 F. App'x at 635.

3      **4.    At a Minimum, Jurisdictional Discovery is Warranted**

4        If the Court believes there is any question as to its exercise of personal

5  jurisdiction over the "Swiss Defendants," then it should permit Almaty to conduct

6  jurisdictional discovery.[15]  *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d

7  1280, 1285 n.1 (9th Cir. 1977) (jurisdictional discovery is warranted "where

8  pertinent facts bearing on the question of jurisdiction are controverted").

9        This Court's July 20, 2017 Order instructs that "**discovery shall not be**

10  **stayed** while any motion is pending, including any motion to dismiss," and "**[t]he**

11  **parties are directed to conduct any necessary discovery as soon as possible**[.]"

12  (Dkt. No. 138, at 2 (emphasis in original).)  Nonetheless, Swiss Defendants have

13  refused to provide a single, substantive response to Almaty's repeated discovery

14  requests, in direct violation of this Order.  (*See* Jackson Decl., Exs. 12-15; *id.* at

15  Ex. 12, at 1-2 ("Defendant objects to each discovery request on the grounds that

16  that [sic] the Court lacks personal jurisdiction over defendant, as set forth in detail

17  in Defendants' Motion to Dismiss . . . Defendant is not obligated to, and will not,

18  respond to discovery.").)  While Almaty has made progress in establishing each of

19  the Swiss Defendants' extensive California contacts (largely through third-party

20  discovery), Swiss Defendants cannot be permitted to seek dismissal of this action

21  based on their failure to comply with the Court's Order to provide the very

22  discovery that would defeat their claim.  *See, e.g., Harris Rutsky & Co. Ins. Servs.,*

---

23      [15]    Jurisdictional discovery is particularly appropriate with respect to Fed. R.

24  Civ. P. 4(k)(2), under which this Court may exercise personal jurisdiction over the
    Swiss Defendants based on their contacts with the U.S. as a whole, because (1) the

25  claims against Defendants arise under federal law, (2) Defendants have not
    affirmatively identified a state in which they are subject to personal jurisdiction,

26  and (3) the Court's exercise of personal jurisdiction based on the Swiss
    Defendants' national contacts would comport with due process.  *See Hassen v.*

27  *Nahyan*, 2010 WL 9538408, at *7 (C.D. Cal. Sept. 17, 2010) (*citing Pebble Beach
    Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)); *Holland Am. Line Inc. v.*

28  *Wartsila N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

US-DOCS\96629573

27

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1  *Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (dismissal

2  without allowing jurisdictional discovery was abuse of discretion).

3  **E.     This Court Should Retain Jurisdiction Over the State Law Claims**

4          If the Court dismisses Plaintiff's RICO claim, then it should nonetheless

5  retain supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C.

6  § 1367.  In determining whether to retain supplemental jurisdiction, courts consider

7  "judicial economy, convenience, fairness, and comity."  *Carnegie–Mellon Univ. v.

8  Cohill*, 484 U.S. 343, 349-50 (1988).  This action has been pending since May

9  2014, and the parties have been engaged in discovery (albeit with mixed results)

10  since 2015.  Given the lengthy history of this action, Almaty should not be sent

11  back to square one.  Judicial economy, convenience, fairness, and comity support

12  retaining supplemental jurisdiction over Plaintiff's state law claims.

13  **IV.   CONCLUSION**

14          For the foregoing reasons, Defendants' Motion should be denied in its

15  entirety.  In the event the Court concludes that the CAC is deficient in any way,

16  Almaty respectfully requests leave to amend.

17  Dated:  November 22, 2017              LATHAM & WATKINS LLP

18                                         By   /s/ David J. Schindler

19                                            David J. Schindler
                                              Jonathan M. Jackson
20                                            Kendall M. Howes

21                                         *Attorneys for Plaintiff the City of Almaty*

22

23

24

25

26

27

28