BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALMATY,<br><br>Plaintiff,<br><br>v.<br><br>VIKTOR KHRAPUNOV, et al.,<br><br>Defendants. | Case No. 14-cv-03650-FMO (FFM)<br>*Consolidated with case no. 15-cv-02628-FMO (CW)*<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST CONSOLIDATED AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**<br><br>Date:   March 22, 2017<br>Time:  10:00 am<br>Ctrm:  6D |

## NOTICE OF MOTION

PLEASE TAKE NOTICE  that, on March 22, 2018, at 10:00 a.m., in Courtroom 6D of the United States Courthouse for the Central District of California, located at 350 W. 1st Street in Los Angeles, California, defendants Madina Ablyazova, Iliyas Khrapunov, Leila Khrapunov, Viktor Khrapunov, Elvira Khrapunov a/k/a Elvira Kudryashova; Dmitry Kudryashov; RPM USA, LLC; RPM-Maro LLC; Maro Design LLC; Haute Hue LLC; 628 Holdings LLC; Candian International Ltd.; Elvira Kudryashova as Trustee of The Kasan Family Trust; Dmitry Kudryashov as Trustee of The Kasan Family Trust; and Thirtyeight Enterprises, will and hereby do move this Court for an order dismissing Plaintiff City of Almaty's First Consolidated Amended Complaint in its entirety.

The Motion will seek dismissal of Plaintiff's First Consolidated Amended Complaint in its entirety with prejudice for failure to state a claim under Rule 12(b)(6), and for lack of subject-matter jurisdiction under 12(b)(1).

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Lara Kollios and the exhibits thereto; and such additional evidence or argument as may be presented at or before the hearing on this matter.

Pursuant to the Court's January 16, 2018 Order Granting Plaintiff's Motion for Leave to Amend Complaint (Dkt. No., 197), the parties are excused, for this motion only, from the meet and confer requirement.

Dated:  February 7, 2018

BOERSCH SHAPIRO LLP

 _/s/Martha Boersch_____
Martha Boersch

Attorneys for Defendants

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Consolidated Amended Complaint ................................................2

    B.    Almaty Files Identical Claims in the Southern District of New York ............3

III.  THE CONSOLIDATED COMPLAINT SHOULD BE DISMISSED .................6

    A.    Almaty's RICO Claims are Impermissibly Extraterritorial ............................6

    B.    Almaty's RICO Claims are Barred by the Doctrine of Claim Splitting ........12

    C.    Almaty's Claims are Barred by the Applicable Statute of Limitations .........17

    D.    Almaty Fails to Plead RICO with Specificity as Required by Rule 9(b).......20

    E.    The Pendant State Claims Must be Dismissed.............................................25

IV.   CONCLUSION....................................................................................29

# TABLE OF AUTHORITIES

## Cases

*1-800Contacts, Inc. v. Steinberg*,
   107 Cal. App. 4th 568 (2003) ........................................................26, 27

*Adams v. California Department of Health Services*,
   487 F.3d 684 (9th Cir. 2006) .........................................................12, 13

*Agency Holding Corp. v. Malley–Duff & Associates.*,
   483 U.S. 143 (1987) ..............................................................................17

*Akishev v. Kapustin*,
   2016 WL 7165714 (D.N.J. Dec. 8, 2016) .............................................11

*Allstate Insurance Co. v. Hague*,
   449 U.S. 302 (1981) ..............................................................................27

*American Master Lease LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (2014) ..............................................................18

*AmerUS Life Insurance Co. v. Bank of America, N.A.*,
   143 Cal. App. 4th 631 (2006) ................................................................19

*April Enterprises, Inc. v. KTTV*,
   147 Cal. App. 3d 805 (1983) .................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................20, 24, 27

*AT&T Mobility LLC v. AU Optronics Corp.*,
   707 F.3d 1106 (9th Cir. 2013) ...............................................................27

*Ayzoukian v. Washington Mutual Bank*,
   2009 WL 1808390 (C.D. Cal. June 24, 2009).......................................22

*Bascuñán v. Elsaca*,
   873 F.3d 806 (2d Cir. Oct. 30, 2017) ...............................................passim

*City of Almaty v. Ablyazov*,
   226 F. Supp. 3d 272 (S.D.N.Y. 2016) ................................................5, 9

*City of Almaty, et al. v. Ablyazov, et al.*,
    No. 15-cv-05345 (S.D.N.Y., Oct. 12, 2015) ...........................................................4

*Cline v. CBSK*,
    No. SACV 13-1720, 2015 W.L. 1005520 (C.D. Cal. March 5, 2015) ...............14, 15

*Commissioner v. Sunnen*,
    333 U.S. 591 (1948) ..........................................................................................12

*Constantini v. Trans World Airlines*,
    681 F.2d 1199 (9th Cir. 1982) .......................................................................13, 14

*Cook v. C.R. England, Inc.*,
    2012 WL 2373258 (C.D. Cal. June 21, 2012).................................................12, 13

*Diamond Multimedia System, Inc. v. Superior Court*,
    19 Cal. 4th 1036 (1999).........................................................................................28

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ...............................................................................20

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014) ....................................................................26

*Flores v. Emerich & Fike*,
    416 F. Supp. 2d 885 (E.D. Cal. 2006) ...................................................................23

*Fogo De Chao (Holdings) Inc. v. United States Department of Homeland Security*,
    769 F.3d 1127 (D.C. Cir. 2014)..............................................................................24

*Giest v. Sequoia Ventures, Inc.*,
    83 Cal. App. 4th 300 (2000) ..................................................................................18

*Goulatte v. CitiMortgage, Inc.*,
    2013 WL 12132060 (C.D. Cal. Feb. 27, 2013) ......................................................20

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ............................................................................17, 20

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010) ..................................................................................................21

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ..............................................................................................21

iii

*Hourani v. Mirchev*,
   943 F. Supp. 2d 159 (D.D.C. 2013) ......................................................................22

*In re Gottheiner*,
   703 F.2d 1136 (9th Cir. 1983) ..............................................................................15

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011)............................................................20, 22

*Jackson v. Hayakawa*,
   605 F.2d 1121 (9th Cir. 1979) ..............................................................................15

*Kazakhstan v. Ketebaev, et al.*,
   No. 17-cv-00264 LHK (N.D. Cal. 2017) ................................................................4

*Kennedy v. Full Tilt Poker*,
   No. 09-cv-07964 MMM (AGRx), 2010 WL 3984749 (C.D. Cal. Oct. 12, 2010).....25

*Kenworthy v. Brown*,
   248 Cal.App.2d 298 (1967) ...................................................................................19

*Kim v. Westmoore Partners, Inc.*,
   201 Cal. App. 4th 267 (2011) ...............................................................................26

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ..............................................................................................17

*Lan Li v. Walsh*,
   2017 W.L. 3130388 (S.D. Fla. July 24, 2017) .......................................................9

*Leitner v. Sadhana Temple of New York, Inc.*,
   2014 WL 12588645 (C.D. Cal. June 10, 2014).....................................................18

*Mathon v. Feldstein*,
   303 F. Supp. 2d 317 (E.D.N.Y. 2004)...................................................................25

*Moore v. Regents of the University of California*,
   51 Cal.3d 120 (1990)..............................................................................................26

*North Alaska Salmon Co. v. Pillsbury*,
   174 Cal. 1 (1916)....................................................................................................28

*Nunag-Tanedo v. East Baton Rouge Parish School Board*,
   790 F. Supp. 2d 1134 (C.D. Cal. 2011).........................................................24, 25

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

*Oki Semiconductor Co. v. Wells Fargo Bank, National Association*,
298 F.3d 768 (9th Cir. 2002) ........................................................21

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
150 Cal. App. 4th 384 (2007) .....................................................26

*Rice v. U.S. Bank National Association*,
2012 WL 10423291 (C.D. Cal. Jan. 23, 2012)............................20

*RJR Nabisco, Inc. v. European Community*,
136 S. Ct. 2090 (June 20, 2016) ...........................................passim

*Rosenberg v. Bank of America, N.A.*,
2016 WL 7446942 (C.D. Cal. April 7, 2016).............................20

*Rotella v. Wood*,
528 U.S. 549 (2000) ....................................................................17

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .....................................................25

*Shapiro v. Hasbro, Inc.*,
2016 WL 9113993 (C.D. Cal. Oct. 13, 2016) ...........................12

*Single Chip System Corp. v. Intermec IP Corp.*,
495 F. Supp. 2d 1052 (S.D. Cal. 2007) .....................................12

*Spector v. El Ranco, Inc.*,
263 F.2d 143 (9th Cir. 1959) .....................................................16

*Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*,
298 F.3d 1137 (9th Cir. 2002) ...................................................16

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
322 F.3d. 1064 (9th Cir. 2003) .........................................12, 13, 15

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (C.D. Cal. 2016)..................................10, 11

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966) ...................................................................26

*United States ex rel. Barajas v. Northrop Corp.*,
147 F.3d 905 (9th Cir. 1998) ...............................................13, 14

*United States v. Lazarenko*,
  564 F.3d 1026 (9th Cir. 2009) .................................................................6, 19, 24

*United States v. Rutgard*,
  116 F.3d 1270 (9th Cir. 1997) .......................................................................24

*United States v. Sidorenko*,
  102 F. Supp. 3d 1124 (N.D. Cal. 2015).........................................................6

*Uthe Technology Corp. v. Harry Allen*,
  2016 W.L. 4492580 (Aug. 26, 2016) .........................................................12

*Viviani v. Vahey*,
  2012 WL 688433 (D. Nev. Mar. 2, 2012).....................................................23

*Western Systems, Inc. v. Ulloa*,
  958 F.2d 864 (9th Cir. 1992) ..................................................................13, 14

*Zendel v. Circle Location Services*,
  2012 W.L. 12876540 (C.D. Cal. Feb. 2, 2012) ...........................................14

**Statutes**

18 U.S.C. § 371 ...................................................................................................25

18 U.S.C. § 1956(c)(7)..........................................................................................9

18 U.S.C. § 1957 ................................................................................................22

18 U.S.C. § 1961 ................................................................................................25

18 U.S.C. § 1962 ..........................................................................................13, 20

18 U.S.C. § 1964(c) .....................................................................................6, 7, 21

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................passim

Cal. Civ. P. Code § 338...............................................................................18, 19

Cal. Civ. P. Code § 361...................................................................................18

# I.   <u>INTRODUCTION</u>

Defendants move to dismiss with prejudice Almaty's First Consolidated Amended Complaint ("FCAC") for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1). Almaty's RICO claims are impermissibly extraterritorial and barred by the doctrine of claim splitting; all claims are barred by the statute of limitations; the RICO claims are not pled with specificity as required by Rule 9(b); there is no subject matter jurisdiction over Almaty's state claims; and Almaty has failed to plead any plausible state law claim.

This case is yet another attempt by the Kazakh government to bypass its own judicial system in hopes of using RICO's treble damages as a weapon against political opponents. Almaty and the Kazakh government have filed cases against the Khrapunovs for the same alleged conduct—Viktor Khrpaunov's alleged transfer of public property for his personal use in violation of Kazakh laws—across the globe, including in Kazakhstan, Switzerland, and several proceedings the United States. This, and the other cases, are not designed to attain justice. Rather, they are designed to oppress political opponents and waste vast amounts of judicial and personal resources. This dispute has no place here, halfway around the globe from where the alleged wrongful conduct took place, filed more than a decade later.

Almaty has filed *identical* RICO claims against Viktor and Iliyas Khrapunov, based on *identical* allegations in the Southern District of New York. That court already dismissed Almaty's RICO claims with prejudice as impermissibly extraterritorial. Nothing in the FCAC ties Almaty's injuries to the United States, and yet, Almaty continues to forum shop to this district in hopes of a more favorable ruling. That is not permitted and Almaty's RICO claims are barred as extraterritorial and by the doctrine of claim splitting.

As explained in detail below, each of Almaty's claims have several other deficiencies that require dismissal with prejudice of all claims.

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

## II.   BACKGROUND

### A.   Consolidated Amended Complaint

On July 17, 2017, the Ninth Circuit Court of Appeals issued the Mandate on its order reversing this Court's dismissal of Almaty's Second Amended Complaint (Dkt. No. 58) on *forum non conveniens* grounds.[1]   Dkt No. 137.   Thereafter, pursuant to this Court's direction, Almaty filed a Consolidated Amended Complaint, which consolidated Almaty's claims against defendants located in the United States and those located in Switzerland.   Dkt. No. 144.   The Court later granted Almaty's leave to file the First Consolidated Amended Complaint ("FCAC"), which adds two defendants, Daniel Khrapunov and Thirtyeight Enterprises, LLC.   Almaty's current claims are the same as those in the Second Amended Complaint, and include violations of RICO and four pendent state law claims.   FCAC, ¶¶ 163-216.

The gravamen of Almaty's allegations also remains the same—that from 1997-2004, Viktor Khrapunov, as the politically appointed mayor of Almaty, Kazakhstan, and his alleged co-conspirator family members, engaged in a series of real estate transactions to convert public assets for their personal use that purportedly violated Kazakh law.   FCAC, ¶¶ 1-2.   Funds from the alleged improper real estate transactions were then allegedly sent to Switzerland.   *Id.*, at ¶ 29.   The FCAC then alleges that in or around 2010, Viktor and his wife Leila, their children Iliyas, Elvira, and Daniel, and Iliyas and Elvira's spouses Madina and Dmitry, engaged in "racketeering activities in the United States by engaging in money laundering," transporting stolen property, mail fraud, and wire fraud.   *Id.* at ¶ 4.   This activity was allegedly done to "obscure the funneling of" funds allegedly obtained from illegal real estate transaction in Almaty,

---

[1]   Defendants recognize this Court's order that they not move to dismiss on *forum non conveniens* grounds.   Dkt. No. 138.   Defendants maintain that this case should be dismissed on that ground and reserve their right to raise the issue at a later date, particularly in view of recent events.   For example, all individual defendants have now been served or summoned in Switzerland for Swiss proceedings instigated by Kazakhstan.

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

Kazakhstan.  *Id*. at ¶ 30.  All of the racketeering activity is based on and flows directly from Viktor's alleged illegal real estate transfers in Almaty from 1997-2004.

**B.    Almaty Files Identical Claims in the Southern District of New York**

Almaty's claims in this District are not new.  Instead, this case is one of many actions the current government of Kazakhstan has brought against political dissidents, such as the individual defendants here.  This context is important to understand because, as explained in more detail below, it directly effects the legal validity of Almaty's claims under the doctrine of claim splitting.

*i.    Kazakhstan uses litigation to suppress political dissidents*

The current government of Kazakhstan, formerly part of the Soviet Union, is well-recognized as a brutally repressive one.  Kollios Decl., Ex. 1, pp. 1-2.[2]  The United States State Department found that the "most significant human rights problems were limits on citizens' ability to choose their government in free and fair elections; selective restrictions on freedoms of expression, press, assembly, religion, and association; and lack of an independent judiciary and due process, especially when dealing with pervasive corruption and abuses by law enforcement and judicial officials."  *Id*., p. 1; Ex. 2 (Human Rights Watch notes "Kazakhstan heavily restricts freedom of assembly, speech, and religion, and torture remains a serious problem.")

A common tactic of President Nazarbayev's regime (ruling Kazakhstan since 1989) used to repress political dissidents, such as the individual defendants here, is to fabricate civil and criminal cases.  The Council of Europe has declared that:

> Kazakhstani authorities have used a regular practice of fabrication of criminal cases, for example the pretence of financial crimes, terrorism or social discord against peaceful protesters, bloggers, journalists, oppositionists and their associates mentioned in the written declaration No. 630. A threat to be prosecuted both in Kazakhstan and abroad is used even against their family members as a form of punishment like in the case of the **Khrapunovs** or in the case

---

[2] All Exhibits are attached to the Kollios Declaration, unless stated otherwise.

MOTION TO DISMISS FIRST CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

of the Tokmadis, in order to obtain false confessions against the opposition.

Ex. 3 (emphasis added); *see also* Ex. 4 (The Financial Times recognized the "strategy, common in former Soviet states, of deploying commercial litigation to crush political opponents – using the world's most respected courts to confer legitimacy."); *see also* Ex. 5 (the Council of Europe notes that, since early 2017, "the number of political prisoners [in Kazakhstan] has only grown," and that "there are at least 35 cases of politically motivated prosecution in Kazakhstan.").

Nazarbayev has been especially dogged in his pursuit of Mukhtar Ablyazov (an alleged co-conspirator (FCAC, ¶ 30)), a one-time wealthy Nazarbayev ally who secretly began funding opposition groups around 2004, fled Kazakhstan in 2009, and has since been accused by Kazakhstan of stealing billions of dollars from BTA Bank, a Kazakhstan bank, as well as defendant Viktor Khrapunov, who was appointed to run Kazakhstan's largest city, Almaty, before he too fled the country after running afoul of Nazarbayev.  Ex. 4.  Kazakhstan understands the burden and cost of American civil litigation, using it as a weapon against the Khrapunovs since 2014.[3]

### ii. *Almaty brings a RICO suit in the Southern District of New York*

After this case was dismissed on *forum non conveniens* grounds, on October 12, 2015, Almaty and the Kazakh-owned BTA Bank sued Ablyazov, Viktor Khrapunov, Iliyas Khrapunov, and an entity named Triadou SPV S.A. for violations of RICO and other pendent New York state claims.  *City of Almaty, et al. v. Ablyazov, et al.*, No. 15-cv-05345 (S.D.N.Y., Oct. 12, 2015) (hereinafter "SDNY Action").  The allegations in the SDNY Action are strikingly similar to those here.  Both complaints allege:

- Between 1997-2004, Viktor Khrapunov and his family members acquired, allegedly in violation of Kazakhstan laws, state owned assets valued at

---

[3] Kazakhstan currently has three lawsuits pending against Iliyas Khrapunov in the United States alone. *Almaty v. Ablyazov, et al.,* No. 15-CV-05345 (S.D.N.Y 2015); *Kazakhstan v. Ketebaev, et al.,*No. 17-CV-00264 (N.D. Cal. 2017)

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

approximately $300 million.  *Compare* FCAC ¶¶ 19-27 *with* Ex. 6, ¶¶ 45-49;

- This theft allegedly occurred by acquiring valuable state-owned assets at a nominal fee or by seizing property and transferring it to entities controlled by the Khrapunovs.  *Compare* FCAC, ¶¶ 41-74 *with* Ex. 6, ¶¶ 51-55;

- To escape law enforcement, the defendants moved the alleged ill-gotten funds to Switzerland, and then ultimately laundered them to the United States.  *Compare* FCAC, ¶¶ 75-162 *with* Ex. 6, ¶¶ 56-59, 68-72, 77-97.

In addition to the same causes of action and themes, the complaints use many of the same examples of the Khrapunov's alleged illegal conduct.  For instance, each complaint identifies three identical alleged fraudulent real estate transactions that occurred in Almaty.  *Compare* FCAC, ¶¶ 42-52 *with* Ex. 6, ¶¶ 51-52; *compare* FCAC, ¶¶ 53-55 *with* Ex. 6, ¶ 53; *compare* FCAC, ¶¶ 56-58 *with* Ex. 6, ¶¶ 54-55.[4]  The only real difference between the SDNY Action and this matter is that the FCAC provides more detail regarding transactions in California, while the SDNY Action focuses on New York financial transactions.  However, the FCAC also alleges that the same New York transactions form a basis for Almaty's RICO claims here.  *See, e.g.,* FCAC, ¶ 122.  The SDNY Action has been in active litigation since 2014.  *See* Ex. 7.

### iii.    S.D.N.Y. dismissed Almaty's RICO claims with prejudice

On December 23, 2016, the Southern District of New York dismissed Almaty's RICO claims with prejudice because, pursuant to *RJR Nabisco, Inc. v. European Community*, —— U.S. ——, 136 S. Ct. 2090 (June 20, 2016), Almaty failed to allege domestic injury, making its claims impermissibly extraterritorial.  *City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 274, 281-82 (S.D.N.Y. 2016).  Approximately a year later, the Second Circuit issued an opinion in *Bascuñan v. Elsaca*, further defining the "domestic injury" requirement, concluding "that an injury to tangible property is

---

[4] The FCAC identifies two additional alleged fraudulent transactions, both occurring in Almaty, and both similar to the alleged scheme of appropriating state assets for personal use in violation of Kazakh law.  FCAC, ¶¶ 59-73.

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

generally a domestic injury only if the property was physically located in the United States." 874 F.3d 806, 819 (2d Cir. 2017). Almaty has filed a motion for relief from the Southern District's dismissal with prejudice based on the *Bascuñan* ruling.

## III.   THE CONSOLIDATED COMPLAINT SHOULD BE DISMISSED

### A.   Almaty's RICO Claims are Impermissibly Extraterritorial

Almaty's RICO claims are barred as extraterritorial based on the Supreme Court's recent holding in *RJR Nabisco*. In *RJR Nabisco*, the Supreme Court held that RICO's private right of action, 18 U.S.C. § 1964(c), does not apply extraterritorially.[5] 136 S. Ct. at 2106. Rather, "[a] private RICO plaintiff . . . must allege and prove a *domestic* injury to its business or property." *Id* (emphasis in original). The Court observed that "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." *Id*. Thus, the Court was wary of civil RICO plaintiffs bypassing their home jurisdictions in favor of RICO's high treble damages. *Id*. at 2106-07. In closing, the Court acknowledged that application of its "rule in any given case w[ould] not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic'." The parties in *RJR Nabisco* stipulated that there was no domestic injury, so the Court did not provide guidance.

---

[5] The Supreme Court also noted that any alleged RICO predicate act must also apply extraterritorially when foreign conduct is alleged. *RJR Nabisco*, 136 S. Ct. at 2102 ("§1962 applies to foreign racketeering activity—but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially.") Almaty has failed to allege facts demonstrating that any of the alleged predicates apply extra-territorially. Nowhere does the FCAC allege a United States wire in furtherance of the alleged foreign fraud. The wire fraud statute does not apply extraterritorially, *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1127 (N.D. Cal. 2015), and Almaty has failed to allege facts demonstrating that its wire fraud claim is based on a domestic wire in furtherance of the fraud. *See United States v. Lazarenko*, 564 F.3d 1026, 1036-37 (9th Cir. 2009) (money transfers committed four years after fraud was complete "were not part of the scheme as it was originally conceived").

The Court's prediction has proven true, and there has been much litigation regarding application of the "domestic injury" requirement since *RJR Nabisco*. Countless district courts have weighed in on the issue, and the Second Circuit is the only appellate court to further define "domestic injury" for purposes of RICO. *Bascuñán v. Elsaca*, 873 F.3d 806 (2d Cir. Oct. 30, 2017).  As shown below, *Bascuñán* and the weight of authority from the district courts show that Almaty has failed to, and cannot, plead a domestic injury.  Almaty's RICO claims must be dismissed.

> i.    *Bascuñán v. Elsaca*

In *Bascuñán*, Bascuñán, a Chilean resident, alleged that his cousin and financial manager, Elsaca, stole millions of dollars through four separate fraudulent financial schemes.  873 F.3d at 809, 811-13:

(1) "The New York Trust Account Scheme," alleging the theft of Bascuñán's funds "held in New York in a J.P. Morgan bank account.";

(2) "The General Anacapri Investment Fraud Scheme," concerning Elsaca's misappropriation of Bascuñán's funds through a private investment fund in Chile which he then "laundered [] through bank accounts in New York and elsewhere;"

(3) "Theft of BCI Shares," alleging Elsaca's theft of bearer shares located in a safety deposit box in New York; and

(4) "The Dividend Scheme," concerning the diversion of Bascuñán's funds located in Chile to Elsaca's personal investment accounts at Morgan Stanley in New York.

*Id*. at 811-13.  Bascuñán sued Elsaca for violation of civil RICO in the Southern District of New York.  The district court dismissed Bascuñán's claims, lumping all of Bascuñán's alleged injuries together, and finding that he failed to allege domestic injury as required by *RJR Nabisco*.  Specifically, the district court focused on Bascuñán's residency, and held that "the location where the *plaintiff suffered* the

1   alleged injury dictates whether the plaintiff may pursue a private right of action under

2   § 1964(c)."  2016 W.L. 5475998, at *5 (S.D.N.Y. 2016).

3   The Second Circuit rejected this "residency-based test," and instead focused on

4   the location of the property that was stolen.  *Bascuñán*, 873 F.3d at 809, 814, 819.  The

5   Second Circuit also disapproved of the district court's approach insofar as it grouped

6   all of the alleged schemes into one for purposes of analysis.  Instead, the Second

7   Circuit held that "where a civil RICO plaintiff alleges separate schemes that harmed

8   materially distinct interests to property or business, each harm . . . should be analyzed

9   separately" for purposes of the domestic injury requirement.  *Id*. at 814.

10   The Second Circuit then examined each of the alleged schemes separately.  It

11   first looked at the Dividend Scheme and the General Anacapri Investment Fraud

12   Schemes.  For both of those schemes, Elsaca allegedly stole Bascuñán's property in

13   Chile and then either transferred funds to his personal accounts in New York or

14   laundered funds using accounts in the United States and elsewhere.  *Bascuñán*, 873

15   F.3d at 818-19.  The Second Circuit held this was insufficient, stating:

> We ultimately conclude that an injury to tangible property is
> generally a domestic injury only if the property was physically
> located in the United States, and that a defendant's use of the U.S.
> financial system to conceal or effectuate his tort does not, on its
> own, turn an otherwise foreign injury into a domestic one. We thus
> hold that the use of bank accounts located within the United States
> to facilitate or conceal the theft of property located outside of the
> United States does not, on its own, establish a domestic injury. To
> hold otherwise would subvert the intended effect of the "domestic
> injury" requirement articulated by the *RJR Nabisco* Court.

23   *Id*. at 819.  The Second Circuit also focused on the fact that "the only domestic

24   connections alleged here were acts of *the defendant*," and that the injuries "did not

25   arise from any preexisting connection between Bascuñán and the United States."  *Id*.

26   (emphasis in original).  Permitting Bascuñán to recover under RICO for these schemes

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

would violate *RJR Nabisco* by impermissibly allowing foreign "'citizens to bypass their own [nation's] less generous remedial schemes.'" *Id*. (citations omitted).

The court next examined the New York Trust Account Scheme and the Theft of BCI Shares.  Because this property "was located within the United States when it was stolen," Bascuñán sufficiently alleged a domestic injury.  *Bascuñán*, 874 F. 3d at 820-21.  The court reasoned this rule made sense because "[f]oreign persons and entities that own private property located within the United States expect that our laws will protect them in the event of damage to that property." *Id* at 821.

In closing, the Second Circuit made clear that the location of plaintiff's residence "may often be relevant—perhaps even dispositive—in determining whether certain types of business or property interests constitute a domestic injury." *Id.* at 824.  Thus, plaintiff's location is one of the factors a courts consider when making the domestic injury requirement.

ii.     *Almaty Fails to Plead Domestic Injury*

Almaty fails to plead a domestic injury under *RJR Nabisco*, *Bascuñán*, and the weight of district court authority because its RICO claims are solely based on allegedly unlawful real estate transactions in Kazakhstan.  *Bascuñán* held that "an injury to tangible property is generally a domestic injury only if the property was physically located in the United States." 874 F. 3d at 819.  Here there is no dispute that the property at issue was real property located in Almaty, Kazakhstan.  Almaty does not allege that it brought property here or had any property physically in the United States.  Thus, there is no domestic injury.

Almaty's money laundering allegations do not save its claims because the alleged transfer of foreign stolen funds to the United States does not turn a foreign injury into a domestic one.  *Bascuñán*, 874 F.3d at 819; *Lan Li v. Walsh*, 2017 W.L. 3130388 at *10 (S.D. Fla. July 24, 2017) (finding no domestic injury, despite movement of money in the United States); *City of Almaty*, 226 F. Supp. 3d at 285-87.

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

Any injury related to the Khrapunovs' alleged laundering activities first requires proof
of a *foreign injury*, specifically the theft (as defined by Kazakh law) of property
halfway around the globe in Kazakhstan.  *See* Ex. 8, 16:1-23, 17:3-24 (Almaty
admitting Almaty's claims require proof Viktor violated Kazakh law in Kazakhstan.)[6]

Moreover, just as in *Bascuñán*, "the only domestic connections alleged here
were acts of *the defendant*," thus making any link between Almaty's injuries and the
United States even more tenuous.  874 F.3d at 819 (emphasis in original).  Almaty did
nothing to avail itself of the protections of the United States, such as conduct business
or reside here.  *Tatung Co. v. Hsu*, 217 F. Supp. 3d 1138, 1155 (C.D. Cal. 2016).  For
example, in *Tatung,* Judge Carter held that plaintiff suffered a domestic injury because
"'defendants specifically targeted their conduct at California' with the aim of
'thwarting [plaintiff] Tatung's rights in California."  *Id.* at 1156.  Plaintiff Tatung was
a "foreign corporation doing business in the United States," maintaining a United
States "hub".  *Id.*  Tatung alleged that defendants prevented it from collecting a
California arbitration award.  *Id.*  Many of the alleged co-conspirators were American.
*Id.*  Under the court's reasoning, a foreign citizen should be permitted to sue "under
civil RICO for financial injuries incurred while they are working, traveling or doing
business in this country as a result of an American RICO operations."  *Id.*

This case is nothing like *Tatung*—there are no allegations that defendants here
"targeted" their conduct at California or "thwarted" Almaty's rights in California.
Indeed, there are no allegations that Almaty had any rights in California.[7]  Moreover,

---

   [6]  As discussed *infra*, Almaty's money laundering claims fail in any event
because it has not adequately pled a specified unlawful activity ("SUA") upon which a
money laundering charge could rest.  Real property transactions in Kazakhstan that
violate Kazakhstan's Water or Land Code (*see, e.g.,* FCAC ¶¶ 45, 59, 64) are not
SUAs under the money laundering statute.  *See* 18 U.S.C. § 1956(c)(7) (listing SUAs).

   [7]  Almaty does not allege that it has *any* "business or property" in the United
States that could be injured, outside of the proceeds allegedly derived from property
stolen in Kazakhstan and brought to the United States by the Khrapunovs.  *RJR
Nabisco*, 136 S. Ct. at 2106.

MOTION TO DISMISS FIRST
                                                CONSOLIDATED AMENDED COMPLAINT
                                                Case No.: 14-cv-03650-FMO (FFM)

there are no concerns here that dismissing Almaty's RICO claims will "amount[] to immunity for U.S. corporations who, acting entirely in the United States, violate civil RICO at the expense of foreign corporations doing business in this country." *Tatung*, 217 F. Supp. 3d at 1155.  The allegedly wrongful conduct occurred in Kazakhstan and was committed by Kazakh citizens.  Nor will dismissal prevent Almaty from recovering "for financial injuries incurred while [it was] working, traveling or doing business in this country as a result of an American RICO operations." *Id*.

Generally, courts that have found a domestic injury under *RJR Nabisco* involve facts in which the *plaintiff* took affirmative steps to conduct business in or otherwise avail itself of United States protections.  *See Bascuñán*, 874 F.3d at 821-22 (plaintiff placed property in the United States that defendant then stole in the United States); *Akishev v. Kapustin*, 2016 WL 7165714, at *6-8 (D.N.J. Dec. 8, 2016) ("plaintiffs 'traveled' [by way of internet] to the United States to purchase cars represented to be located in the United States and were defrauded in that process."); *Tatung*, 217 F. Supp. 3d at 1155 (plaintiff did business in the United States, including maintaining a hub in the United States, and defendants conspired to prevent plaintiff from obtaining an arbitration award that plaintiff obtained in California).  Almaty does not allege that it ever took any affirmative steps to avail itself of the protections of this forum in any manner, and all injuries to its property occurred in Kazakhstan.  According to the FCAC, Viktor's theft was not directed at California, much less the United States— instead, the allegations are that "from 1997-2004, Viktor, Leila, Iliyas, Elvira, and their co-conspirators systematically stole money from *Almaty* through Viktor's corrupt use of his political power."  FCAC, ¶ 2 (emphasis added)

Because Almaty's injuries "did not arise from any preexisting connection between [Almaty] and the United States" (*Bascuñán*, 874 F.3d at 819), allowing Almaty to recover here would create the very "international friction" the Supreme Court was trying to prevent in *RJR Nabisco* when it created the domestic injury

requirement.  136 S. Ct. at 2106.  Specifically, allowing Almaty to recover treble damages in the United States for theft of property located in Kazakhstan impermissibly permits Almaty "to bypass [its] own less generous remedial schemes, thereby upsetting the balance of competing considerations that their own domestic [] laws embody."  *Id.*

Here, Almaty's damages have "flowed only from a foreign conspiracy . . . that occurred a third of the way around the globe from our shore.  No injury occurred in the United States."  *Uthe Tech. Corp. v. Harry Allen*, 2016 W.L. 4492580 at *3 (Aug. 26, 2016).  Under these circumstances, Almaty has failed to allege a domestic injury under *RJR Nabisco*, and its RICO claims must be dismissed with prejudice.

**B.    Almaty's RICO Claims are Barred by the Doctrine of Claim Splitting**

Almaty's RICO claims are also barred by the doctrine of claim splitting, "an aspect of *res judicata*," because the RICO claims pled here are the same that are currently pending in the SDNY Action.  *Single Chip Syst. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007); *see also Shapiro v. Hasbro, Inc.*, 2016 WL 9113993, at *5 (C.D. Cal. Oct. 13, 2016) ("'Some courts have referred to claim-splitting doctrine as an 'aspect' or 'facet' of claim-preclusion doctrine'") (citations omitted).  Claim splitting is designed "to 'protect the Defendant from being harassed by repetitive actions based on the same claim' and to promote judicial economy and convenience.'"  *Cook v. C.R. England, Inc.*, 2012 WL 2373258, at * 3 (C.D. Cal. June 21, 2012) (quotation omitted).

Claim preclusion borrows the test for *res judicata*, with one important exception—a defendant need not demonstrate "that 'a court of competent jurisdiction has entered a final judgement on the merits' in the first action.'"  *Cook*, 2012 WL 2373258, at * 3 (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).  Thus, claim splitting applies when there is an "identity of claims" and "privity between parties" in the two actions.  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d. 1064, 1077 (9th Cir. 2003); *Shapiro*, 2016 WL 9113993, at *5.

"[T]he appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2006). Because there is an identity of claims and privy among parties, dismissal is warranted under claim splitting.

### i.   Identity of claims

In the Ninth Circuit, to determine whether there is an identity of claims among two actions, courts consider the following factors

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). The most salient factor is the fourth, and the Ninth Circuit has "applied the doctrine of res judicata 'on the ground that the two claims arose out of the same transaction' without reaching the other factors." *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998) (citations omitted). Two claims arise out of the same transaction if "they are related to the same set of facts and [] could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992).

The identity of the RICO claims in the SDNY Action and here is evident—they are brought under the same statutory provisions (18 U.S.C. §§ 1962(a), (c) and (d)), allege the same predicate offenses (money laundering, money derived from specified unlawful activity, foreign transport of stolen funds, mail fraud, and wire fraud), and, importantly are based on the same transactional nucleus of facts (the real estate transactions in Kazakhstan). *Compare* FCAC ¶¶ 163-93 *with* Ex. 6, ¶¶ 127-61. All of the alleged RICO predicate acts in both cases require proof that Viktor Khrapunov engaged in the same alleged illegal activity in Kazakhstan over ten years ago. Thus, Almaty's RICO claims require proof of the exact same transactional nucleus of facts.

Requiring an identity of claims "does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra*, 322 F.3d at 1077-78; *see also Western Sys., Inc.*, 948 F.2d at 871 ("Different theories supporting the same claim for relief must be brought in the initial action."). The focus is whether the claims *could* have been asserted in the adjudicated action. *Adams*, 487 F.3d at 689; *Cook*, 2012 WL 2373258, at * 3. Here, Almaty's lawyers merely alleged different downstream financial transactions allegedly flowing from the same illegal acts in Kazakhstan. Such artful drafting does not avoid the conclusion that the claims in both actions arise out of the same nucleus of facts that occurred in Kazakhstan over a decade ago. *See id.* at 1079; *United States ex rel. Barajas*, 147 F.3d at 911 (finding identity of claims in two False Claims Act suits when both suits involved the same false claim, but different allegations of falsity); *Cline v. CBSK*, 2015 W.L. 1005520, at *4-5 (C.D. Cal. March 5, 2015) (although different claims were alleged, the "gravamen" of the complaints were the same and res judicata applied); *Zendel v. Circle Location Servs*, 2012 W.L. 12876540 at *5 (C.D. Cal. Feb. 2, 2012). To the extent Almaty included additional California financial transactions here, those could have just as easily been alleged in the SDNY Action.

Moreover, both here and in the SDNY Action, Almaty seeks to recover the same $300 million that Viktor allegedly obtained from improper real estate transactions in Kazakhstan. Both cases rest entirely on proof that Viktor violated Kazakh law and then impermissibly took funds obtained from illegal real estate transactions to Switzerland, and then to the United States. As a result, claims in these two actions "are related to the same set of facts and [] could conveniently be tried together." *Western Sys., Inc.*, 958 F.2d at 871. Because Almaty is seeking the same relief in both actions, and because both claims require proof that Viktor violated the same Kazakh laws regarding the same real estate transactions, the remaining factors regarding identity of claims are satisfied—namely that "rights or interests established in [the

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

SDNY Action] would be destroyed or impaired by prosecution of [this action]," "substantially the same evidence [would be] presented in [both] actions," and "the two suits involve infringement of the same right." *Constantini*, 681 F.2d at 1201-02. Thus, there is an identity of claims for the RICO claims pled here and in the SDNY Action.

### ii.   There is privity between the parties

There is privity between the parties here and in the SDNY Action because they are either identical or share a sufficient commonality of interests. Courts are not "bound by rigid definitions of the parties or their privies for the purposes of applying collateral estoppel or res judicata." *Jackson v. Hayakawa*, 605 F.2d 1121, 1126 (9th Cir. 1979). Rather, "privity may exist if 'there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.'" *Tahoe-Sierra*, 322 F.3d at 1081 (quotation omitted). When parties are identical between two actions, privity is "self-evident." *Cline*, 2015 W.L. 1005520 at *5.

Here, the City of Almaty is the plaintiff in both this action and the SDNY Action, so privity is "self-evident." The same is true for Viktor Khrapunov and Iliyas Khrapunov, who are defendants in both actions. Thus, the RICO claims should be dismissed against Viktor and Iliyas under the doctrine of claim splitting.

The remaining defendants in this action were not named in the SDNY Action.[8] Almaty's FCAC, however, demonstrates that each is in privity with Iliyas and/or

---

[8]   Specifically, Leila Khrapunov (Viktor's wife, FCAC ¶ 9), Elvira Khrapunov (Viktor's daughter, *id.* at ¶ 10), Madina Khrapunov (Iliyas' wife, *id.* at ¶ 11), Dmitry Kudryashov (Elvira's husband, *id.* at ¶ 11), Maro Design LLC (California corporation, *id.* at ¶12), Haute Hue LLC (California corporation, *id.* at ¶ 12), 628 Holdings LLC (California corporation, *id.* at ¶12), RPM USA LLC (New York corporation, *id.* at ¶12), RPM-Maro LLC (New York corporation, *id.* at ¶12), World Health Networks (Delaware corporation, *id.* at ¶12), Canadian International (British Virgin Islands corporation, *id.* at ¶ 12), Crownway (Belizean corporation, *id.* at ¶ 12), Vilder Company S.A. (Panamanian corporation, *id.* at ¶ 12), and Elvira Kudryashova as Trustee of The Kasan Family Trust (*id.* at ¶ 12) and Dmitry Kudryashov as Trustee of the Kasan Family Trust (*id.* at ¶ 12), Thirtyeight Enterprises, LLC (*id.* at ¶ 12) (collectively "The Unnamed Defendants").

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

Viktor.  The Ninth Circuit applies a functional approach to privity.  For example, in *Jackson v. Hayakawa*, plaintiffs argued privity was lacking for *res judicata* purposes because there were different defendants in each action.  605 F.2d at 1126 n.6.  The court rejected the argument, noting that the "deletion of some defendants from the prior suit, where their interests and involvement were sufficiently similar to that of the named defendants in both suits, and where the rights sought to be vindicated remain the same, cannot serve as a bar to the application of res judicata."  *Id*.  *See also Cline*, 2015 W.L. 1005520 at *5 ("Given that the factual allegations and theories of liability asserted here against [the new defendant] are identical to those asserted against [defendant in the first action], the Court concludes that [the new defendants] is 'so identified in interest' with the [defendant in the first action] that it 'represents precisely the same right in respect to the subject matter involved.'") (citations omitted).  Here, Almaty's own allegations show that the interests and involvement of the Unnamed Defendants are sufficiently similar to the named parties, Viktor and Iliyas's, interests.

The FCAC does not allege any involvement or interest of any individual defendant that is different from Viktor's or Iliyas's—each had the same goal of allegedly laundering money supposedly taken by Viktor Khrapunov during his tenure as mayor of Almaty.  FCAC, ¶¶ 1-5.  Moreover, the rights Almaty seeks to be vindicated against Leila, Elvira, Madina, and Dmitry are the same as those against Iliyas and Viktor—to hold them liable for their alleged laundering of those funds and to return "money stolen from Almaty."  *Id*. at ¶ 6.  The same is true for the entity defendants.  The FCAC alleges that the entities were owned or controlled by Iliyas, Elvira, and/or Dmitry and were used by them solely to carry out the racketeering scheme.  *Id*. at ¶ 13.  Thus, the entities had the same interests as the individuals.  And, Almaty seeks the same relief from the entities and individuals.  *Id*. at ¶ 6.

Moreover, Almaty alleges that all defendants, including the entities, were at all times "Agents, servants, and/or employees of the Individual Defendants," including

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

Viktor and Iliyas.  FCAC, ¶ 15.  The agent or employee relationship is enough to establish privity because a verdict in favor of a principal may be used to bar future claims against the agent.  *Spector v. El Ranco, Inc.*, 263 F.2d. 143, 145 (9th Cir. 1959) ("Where, as here, the relations between two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the plaintiff's right of action against the other. ") (citations omitted).

Given that there is a "sufficient commonality of interests" between Viktor and Iliyas on the one hand, and the other individual defendants and entity defendants, on the other, there is privity of parties and Almaty's RICO claims must be dismissed.

## C.   Almaty's Claims are Barred by the Applicable Statute of Limitations

### i.   *Almaty's RICO claims are barred by the statute of limitations*

The statute of limitations for a civil RICO claim is four years.  *See Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156 (1987) (applying a four-year statute of limitations to RICO claims).  The limitations period begins to run when a plaintiff knew or should have known of the injury which is the basis for the action.  *See Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996) (affirming dismissal of civil RICO claims); *Rotella v. Wood*, 528 U.S. 549, 554-55 (2000) (holding that a RICO claim accrues upon plaintiff's discovery of its injury and specifically rejecting the "injury and pattern discovery rule" which held that a RICO claim accrued when the plaintiff discovered both the RICO injury and pattern); *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-91 (1997) (Supreme Court rejected the "last predicate act rule").

The FCAC alleges that Almaty discovered the facts relevant to its RICO claims in 2009, at the latest.  Almaty admits that in 2007, Kazakh authorities were actively investigating Viktor and his family.  FCAC, ¶ 36.  It also admits that there were public reports of Viktor's wealth as early as 2009.  *Id.* at ¶ 35.  Thus, according to Almaty's

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

1    own allegations, the latest date Almaty's claims accrued was 2009, five years before

2    they filed this action.  Almaty's RICO claims are therefore time barred.

3            *ii.*    *Almaty's state claims are barred by statute of limitations*

4            a.    <u>A Three-Year Limitations Period Applies</u>

5            Almaty's state claims for breach of fiduciary duty, conversion, fraud, and an

6    accounting are all barred by the applicable statute of limitations.  As a threshold

7    matter, the applicable limitations period for each of Almaty's state claims is

8    determined by California's "borrowing statute."  Cal. Civ. P. Code § 361.  California's

9    borrowing statute "adopt[s] the statute of limitations of the state in which the action

10   arose."  *Giest v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th 300, 303–04 (2000).  The

11   borrowing statute is designed to prevent forum shopping by plaintiffs whose claims

12   would otherwise be barred in their jurisdiction.  *Giest*, 83 Cal. App. 4th at 303.

13           California's borrowing statute applies here because Almaty's state claims all

14   arose in Almaty.  Almaty alleges that Viktor breached his fiduciary duty to *Almaty*

15   while he was the mayor of *Almaty*, in *Almaty*.  *See* FCAC, ¶¶ 41-74, 191-93.  For

16   conversion, Almaty alleges that *Almaty* property was illegally converted in *Almaty* for

17   Viktor's and his family's personal use.  *Id.* at ¶¶ 41-74, 195-97.  For fraud, Almaty

18   alleges that "Viktor and Leila made representations to *Almaty* and others, which

19   representations were false," and necessary to allegedly steal property in *Almaty*.  *Id.* at

20   ¶¶ 41-74, 200-05 (emphasis added).  And lastly, Almaty's demand for an accounting is

21   based on Viktor's alleged theft, fraud, and conversion that all occurred in *Almaty*.

22           Pursuant to Kazakh law, the statute of limitations for Almaty's claims here is

23   three years.  Ex. 9, ¶¶ 6-8.[9]  Almaty filed this action on May 13, 2014.  Dkt. No. 1.

24   _____

25       [9] Coincidentally, the California statute of limitations for each of Almaty's state

26   claims is also three years, thus Almaty's state claims would be time barred even if the California limitations periods applied.  *Am. Master Lease LLC v. Idanta Partners, Ltd.*,

27   225 Cal. App. 4th 1451, 1479, as modified (May 27, 2014) (fraudulent breach of fiduciary duty); Cal. Civ. P. Code, § 338(c) (conversion); Cal. Civ. P. Code, § 338(d)

28   (fraud and deceit).  Almaty's accounting claim is derivative of its other state law

Thus, the issue is whether any of Almaty's state claims accrued before May 13, 2011

and are therefore time barred.  As shown below, Almaty's claims are time barred.

b.      Almaty's State Claims Accrued Well Over Three Years Ago

Each of Almaty's state causes of action accrued when Almaty discovered or

should have discovered the facts giving rise to its claims.  The accrual date for a cause

of action for breach of fiduciary duty "accrues when the plaintiff discovers or should

have discovered all facts essential to his cause of action." *April Enters., Inc. v. KTTV*,

147 Cal. App. 3d 805, 826-27 (1983).  The same is true for an action of conversion

when plaintiff alleges, as Almaty does here, that defendant "fails to disclose [facts of

the conversion] in violation of his or her fiduciary duty to the plaintiff." *AmerUS Life

Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006).  Lastly, a cause

of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved

party, of the facts constituting the fraud or the mistake." Cal. Civ. P. Code § 338.

As explained above, Almaty learned of the facts relevant to its state claims in

2009, when knowledge of Viktor's wealth was public and Kazakhstan's investigation

was underway.  Almaty's claims are therefore time barred.

Almaty's conspiracy allegations do not save its claims because "[a] cause of

action based on civil conspiracy accrues on the date of the commission of the last overt

act in pursuance of the conspiracy." *Kenworthy v. Brown*, 248 Cal.App.2d 298 (1967).

The last overt act for conversion and fraud occurred in Almaty while Viktor was

mayor, as it was Viktor's abuse of that power that allegedly allowed him to convert the

property. *See, e.g.,* FCAC ¶ 21.  Viktor was mayor of Almaty from 1997-2004.[10]  Any

---

claims, and therefore the three-year limitations period applies to that as well. *Leitner
v. Sadhana Temple of N.Y, Inc*., 2014 WL 12588645, at *25 (C.D. Cal. June 10, 2014).

[10]  Defendants maintain that the last overt act occurred in 2004, when Viktor was
mayor of Almaty.  However, for purposes of this motion, at a maximum, the last
alleged transfer of property to take place in Almaty was on January 1, 2003, *i.e.,* the
leasing of advertising land that Viktor allegedly improperly sold to a private party in
November 2002.  FCAC, ¶¶ 69-72.  Using that date would still bar Almaty's claims.

19

alleged domestic money laundering that occurred after that time does not amount to overt acts in furtherance of the conspiracy. *Cf. United States v. Lazarenko*, 564 F.3d 1026, 1036-37 (9th Cir. 2009) (money transfers committed four years after fraud was complete "were not part of the scheme as it was originally conceived"). If anything, such alleged transfers relate to a separate offense of money laundering, and there is no are private right of action for money laundering or conspiracy to launder money.

Because Almaty's state claims accrued and could have been filed, at the latest, in 2009, they are barred by the three-year statute of limitations.

### D. Almaty Fails to Plead RICO with Specificity as Required by Rule 9(b)

The heightened pleading standard of Federal Rule 9(b) applies to civil RICO claims when the predicate offenses involve fraud. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (Rule 9(b) "applies to civil RICO fraud claims."); *Goulatte v. CitiMortgage, Inc.*, 2013 WL 12132060, at * 5 (C.D. Cal. Feb. 27, 2013). "Accordingly, in addition to the ordinary elements of a RICO claim, Plaintiff must also state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Goulatte*, 2013 WL 12132060, at *5; *Rosenberg v. Bank of America, N.A.*, 2016 WL 7446942, at *3 (C.D. Cal. April 7, 2016). Moreover, Almaty must separately identify each defendant's alleged wrongdoing, and "may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011). Claims made "on information and belief" are usually not sufficient to satisfy Rule 9(b), unless there is an accompanying statement of facts on which the belief is founded. *Rice v. U.S. Bank Nat. Ass'n*, 2012 WL 10423291, at *5 (C.D. Cal. Jan. 23, 2012) (holding that plaintiff's "upon information and belief" allegations were insufficient to plead fraud).

To properly plead a civil RICO claim under 18 U.S.C. § 1962(c), Almaty must allege facts supporting the following elements with the required specificity: "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett*, 75 F.3d at 510.  Here, Almaty's claims are supported only by general, conclusory and vague terms—many alleged only on "information and belief"—that fail to satisfy the plausibility standards set by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or the specificity requirements of Rule 9(b).

### i.   *Almaty fails to plead RICO injury or proximate cause*

Almaty fails to plead a discernable RICO injury because the FCAC does not allege that the defendants' actions in Kazakhstan created any property interest in favor of Almaty.  Instead, Almaty summarily alleges that the process by which Leila Khrapunov *purchased* some property in Almaty violated Kazakh laws, such as the Land Code and the Water Code, and that the profits she made from subsequent sales were "illicit" for unidentified reasons and violated unidentified laws, resulting in alleged injury obviously in Kazakhstan.  FCAC, ¶¶ 40-74.  Fatally missing from Almaty's complaint is any allegation regarding why and how it has an identifiable property interest in these alleged profits.  This is fatal to Almaty's claim because RICO solely allows a plaintiff to recover to for injury to "his business or property by reason of violation of" RICO's prohibited activities, *i.e.*, predicate acts.  18 U.S.C. § 1964(c). Almaty does not allege how it has a property interest in the alleged "illicit" profits, and it does not allege what predicate law the Khrapunovs allegedly violated to obtain such profits.  Without a discernable RICO injury, Almaty's claims must be dismissed.

Even if Almaty adequately pled a RICO injury, which it did not, Almaty has also failed to plead the requisite proximate cause.  A plaintiff asserting a RICO claim must show that the predicate offenses proximately caused its injury. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[P]roximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient.") (quoting

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

*Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268, 271, 274 (1992)). Where a plaintiff is already injured by an alleged theft, subsequent use of the stolen funds or property does not constitute a new, additional injury to the plaintiff. *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) ("The direct and proximate cause of Oki's loss was not [Wells Fargo's employee's] money laundering at Wells Fargo; it was theft."); *Hourani v. Mirchev*, 943 F. Supp. 2d 159, 167 (D.D.C. 2013) ("Plaintiffs failed to allege that the domestic predicate act of post-extortion money laundering proximately caused their injuries") (citation omitted).

In this case, none of the handful of alleged domestic acts actually caused Almaty's alleged injury. The purported harm to Almaty was caused by the allegedly illegal property transactions from 1997–2004 in Almaty, Kazakhstan. By the time of the alleged acts in the U.S. many years later, and after the purported "illicit funds" were first moved to Switzerland, the purported damage to Almaty had already been done. Because the alleged RICO predicate acts were not the "direct and proximate" cause of any harm to Almaty, the RICO claims should be dismissed.

### ii.   Almaty does not plead the predicate acts with specificity

Pursuant to Rule 9(b), Almaty must plead each predicate act with specificity because each sound in fraud. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918–19 (C.D. Cal. 2011) (holding that predicate acts of mail fraud (§ 1341), wire fraud (§ 1343), money laundering (§ 1956), andtransportation of stolen funds (§ 2314) are "grounded in fraud" and subject to Rule 9(b) pleading requirements). The FCAC's allegations do not meet the heightened pleading standard required here.

### a.   Money Laundering (18 U.S.C. §§ 1956 (a), 1957(a))

Money laundering under 18 U.S.C. § 1956 is subject to the heightened pleading standard of Federal Rule 9(b). *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 918–19; *See Ayzoukian v. Wash. Mut. Bank*, 2009 WL 1808390, at *3 (C.D. Cal. June 24, 2009) ("Likewise, to the extent Plaintiff contends that Washington Mutual violated §

1957 because of the fraud, Plaintiff must plead with the specificity required by Rule 9(b).").  To properly allege money laundering, Almaty must plead, with specificity, (1) that each defendant knew the money at issue represented proceeds of a specified unlawful activity, *and* (2) that each defendant conducted the transaction with the intent to promote specified unlawful activity or knew the transaction was designed in whole or in part to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . ." 18 U.S.C. § 1956(a)(1).

Almaty's claims here fail at the threshold because Almaty does not identify the "specified unlawful activity" underlying any transaction conducted by any defendant. The money laundering statute generally prohibits certain financial transactions conducted with the proceeds of "specified unlawful activity."  *See* 18 U.S.C. §§ 1956(a), 1957(a).  The statute lists every offense that constitutes a "specified unlawful activity," but Almaty's FCAC fails to identify the "specified unlawful activity" underlying each alleged financial transaction.

Here, Almaty does nothing more than assert in a conclusory fashion—on information and belief—the elements of the crime of money laundering.  *See, e.g.,* FCAC, ¶ 86 ("Upon information and belief, before transferring these funds into the United States, the Individual Defendants and their coconspirators caused the funds to be moved through various offshore bank accounts, including accounts held by sham holding companies, for the sole purpose of illicitly concealing the source of the stolen funds to make the stolen funds appear legitimate.")  Almaty fails to offer plausible, specific *factual* allegations supporting the assertion that defendant knew the money at issue represented the proceeds of real estate transactions in Kazakhstan, much less the proceeds of specified unlawful activity.  Almaty also provides no specific factual allegations that any defendant conducted any of the subject transactions with the intent to conceal the proceeds of fraudulent or otherwise improper activity.  *See Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 912 (E.D. Cal. 2006) (dismissing for lack of

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

specificity in pleading a violation of Monetary Transactions in Property Derived From SUA); *Viviani v. Vahey*, 2012 WL 688433, at *3 (D. Nev. Mar. 2, 2012) (dismissing complaint for failure to allege RICO predicate acts, including § 1957). The RICO claim based on purported money laundering under §1956 should be dismissed.

Further, the money laundering statutes have a tracing requirement. A plaintiff must plead facts plausibly suggesting that any financial transaction in the United States actually involved the proceeds of the alleged real estate transaction, much less the proceeds of a specified unlawful activity. *See Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 980 (D.C. Cir. 2014); *United States v. Rutgard*, 116 F.3d 1270, 1292–93 (9th Cir. 1997). Here, again, Almaty summarily claims—mostly on information and belief—that the proceeds are traceable to allegedly illicitly acquired funds, but fails to articulate *any* facts to support these conclusory statements, much less facts sufficient to satisfy Rule 9(b). Almaty's RICO claim should be dismissed to the extent it relies on Sections 1956 and 1957.

### b.   Foreign Transportation of Stolen Funds (18 U.S.C. § 2314)

Almaty also fails to sufficiently plead the predicate act of transporting stolen funds. Section 2314 prohibits the knowing transportation in interstate or foreign commerce of $5,000 or more of stolen funds. 18 U.S.C. § 2314. Section 2314 requires tracing. *See United States v. Lazarenko*, 564 F.3d 1026, 1040 (9th Cir. 2009). Again, Almaty fails to articulate any facts tracing any allegedly illicit money out of Kazakhstan into the United States, let alone facts supporting the *knowing* transportation of illicit money. Instead, the FCAC makes only conclusory statements, mostly plead on information and belief (*e.g.*, SAC ¶¶ 57–59, 65–69), which should be disregarded. *See Iqbal*, 556 U.S. at 664.

### c.   Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)

Plaintiff also fails to allege its mail and wire fraud predicate acts with sufficient particularity to satisfy Rule 9(b). *See Nunag-Tanedo v. E. Baton Rouge Parish Sch.*

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

*Bd.*, 790 F. Supp. 2d 1134, 1148–49 (C.D. Cal. 2011) (holding that mail and wire fraud predicates require the heightened pleading of Rule 9(b)).  To satisfy Rule 9(b), Almaty "must identify the number of telephone calls [or mailings] that were made, the dates on which they were made, the identity of the persons making them, and the nature of the alleged misrepresentation."  *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004); *see also Nunag-Tanedo*, 790 F Supp. 2d at 1149; *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (wire and mail fraud allegations failed to satisfy Rule 9(b) particularity requirement where plaintiffs did not allege which of the defendants made the telephone calls, and failed to allege any specific mailings).

Here, Almaty alleges only that unspecified defendants "knowingly us[ed] the United States mails and wires to transfer illegally obtained funds into and within the United States, for the purpose of furthering the Khrapunov Racketeering Enterprise . . ." (FCAC, ¶¶ 172, 188), and that certain defendants made use of the United States mail and wires in furtherance of or to engage in illegal transactions (FCAC, ¶¶ 106, 114, 119, 126, 131, 137, 146, 154, 159 (many of these on "information and belief").

Almaty provides no details—it does not identify the number of wires/mails, the dates on which they were made, the identity of persons making them, the nature of any alleged misrepresentation, or how each mail/wire was in furtherance of the scheme. Such deficiencies are fatal to here.  *Nunag-Tanedo*, 790 F. Supp. 2d at 1149.

### d.   Conspiracy (18 U.S.C. § 371)

Finally, Plaintiff alleges conspiracy (18 U.S.C. § 371) as a predicate act. *See, e.g.*, FCAC, ¶ 171.   However, a Section 371 conspiracy cannot be a RICO predicate. *See* 18 U.S.C. § 1961(1) (listing possible RICO predicates excluding conspiracy).

### E.   The Pendant State Claims Must be Dismissed

#### i.   *There is no subject matter jurisdiction over pendant state claims*

Assuming Almaty's state claims are not time barred, which they are, the state claims nevertheless should be dismissed.  Because Plaintiff's RICO claims fail, the

Court should dismiss the remaining state-law claims for lack of federal jurisdiction. *See Kennedy v. Full Tilt Poker*, 2010 WL 3984749, at *3 (C.D. Cal. Oct. 12, 2010) (declining to exercise jurisdiction over non-federal claims after dismissing RICO claim); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (same). The Supreme Court has held that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, we are merely at the pleading stage, and there is good cause for the Court to exercise its discretion and dismiss any remaining state claims.

ii.     *Almaty Fails to Plausibly Plead State Law Claims*

a.     <u>Conversion and Conspiracy to Convert</u>

Almaty's entire case is premised on the alleged "conversion" of property in Kazakhstan. FCAC ¶ 40. But Almaty has entirely failed to state a claim for conversion under California law, and has failed to plead its alleged conversion claim with sufficient specificity. Almaty's Fourth Claim for Relief (FCAC ¶¶ 198-202) vaguely alleges that the defendants "wrongfully converted" "money, funds, and property" belonging to Almaty. The claim does not allege which money, funds or property was allegedly converted, how or when that property was allegedly converted or by whom. It therefore fails to plead the claim with sufficient specificity.

Moreover, conversion is the wrongful exercise of dominion over the *personal property* of another. *Moore v. Regents of the Univ. of Calif.*, 51 Cal.3d 120, 137 (1990). In California, the tort of conversion does not apply to real property, equity, or money, unless the money converted is "a specific sum capable of identification." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 150 Cal. App. 4th 384, 395 (2007). A claim for conversion of money exists only where plaintiff alleges that the defendant "interfere[d] with the plaintiff's *possessory interest* in a specific, identifiable sum." *Kim v. Westmoore Partners, Inc.,* 201 Cal. App. 4th 267, 284 (2011). Almaty's Fourth Claim for Relief contains no such allegations.

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

Almaty's claim for conspiracy to convert fails for the same reasons. "Conspiracy is not an independent cause of action, but rather a doctrine imposing liability for a tort upon those involved in its commission." *1-800Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 590 (2003).  Moreover, Almaty is required, but has failed to, allege that the "conspiring defendants . . . [had] actual knowledge that [the] tort [of conversion was] planned and concur[ed] in the tortious scheme with knowledge of its unlawful purpose." *Id*. at 589.  Almaty does not plead plausible, factual allegations to support these elements, and this claim must be dismissed.

### b.   Breach of Fiduciary Duty

Almaty's third claim for breach of fiduciary against Viktor also must be dismissed for failure to state a claim. FCAC ¶¶ 194-97.  Almaty fails to identify the law under which Viktor allegedly owed the people of Almaty a fiduciary duty, and claims instead that Viktor broke some undefined express and implied "promises." FCAC ¶¶ 21, 22; *see 1-800Contacts*, 107 Cal. App. 4th at 588-90 (California's tort for breach of fiduciary duty only incorporates a breach of specific identifiable duties and that "[b]reach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons.").  Almaty's failure to identify the source of Viktor's alleged duties, or "promises," brings these claims far short of *Iqbal's* plausibility requirement.

This claim also fails because Almaty seeks extraterritorial application of a purely California tort.  Viktor's "promises" could not have arisen under California law for obvious reasons: Viktor, a Kazakh citizen residing at the time in Kazakhstan and acting as a politically-appointed leader of Almaty, was not bound by California law.  *See AT&T Mobility LLC v. AU Optronics Corp*., 707 F.3d 1106, 1111 (9th Cir. 2013) (recognizing that for a State's substantive law to be selected and applied in a constitutionally permissible manner to conduct occurring outside of the State's boundaries, "that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

fundamentally unfair."). California had no contact, let alone significant contact, with Almaty or Kazakhstan during the relevant time period, and Almaty has not alleged otherwise. Nor has Almaty alleged that Viktor had any contacts with California. On these bases the breach of fiduciary claim must be dismissed.

### c.  Fraud and Deceit and Conspiracy to Defraud

Almaty's Fifth Claim of Relief, that Viktor and Leila committed fraud and conspiracy to defraud, fails because (1) it is not pled with the required specificity, and (2) solely concerns conduct that occurred in Kazakhstan. For all the reasons stated in Section III (D), *infra*, Almaty's fraud claims are based, at best, on insufficient conclusory allegations. Moreover, California and the Federal Judiciary have no interest in resolving a claim that two individuals committed a tort in Kazakhstan by allegedly making false "representations to Almaty," in Almaty, allegedly in violation of Kazakh law. There is a presumption against the extraterritorial application of California law. *Cf. North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916); *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1058-59 (1999). Moreover, extraterritorial application of California tort law to conduct that occurred in Kazakhstan poses significant due process concerns under the Due Process Clause of Fourteenth Amendment to the United States Constitution.

Finally, because Almaty's Sixth Claim for Relief for an Accounting, Imposition of a Constructive Trust, and Equitable Lean is entirely based on the underlying claims of fraud, conversion, and breach of fiduciary duty, the Sixth Claim of Relief fails for the same reasons described above.

//
//
//
//
//

MOTION TO DISMISS FIRST CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First Consolidated Amended Complaint.  The dismissal should be with prejudice as Almaty has already had five prior opportunities in four years to plead a proper claim for relief.

Dated:  February 7, 2018

BOERSCH SHAPIRO LLP


_/s/Martha Boersch_____
Martha Boersch

Attorneys for Defendants

MOTION TO DISMISS FIRST
CONSOLIDATED AMENDED COMPLAINT
Case No.: 14-cv-03650-FMO (FFM)